# EXHIBIT 2

Routing # 40246

# STATE OF COLORADO
## Governor's Office of Information Technology
## MASTER TASK ORDER CONTRACT
### with
### innoWake International, Inc.

## TABLE OF CONTENTS

1. PARTIES ....................................................................................................................................... 1
2. EFFECTIVE DATE AND NOTICE OF NONLIABILITY ....................................................... 1
3. RECITALS ................................................................................................................................... 1
4. DEFINITIONS.............................................................................................................................. 2
5. TERM and EARLY TERMINATION......................................................................................... 3
6. STATEMENT OF WORK .......................................................................................................... 4
7. PAYMENTS TO CONTRACTOR............................................................................................. 6
8. REPORTING - NOTIFICATION ............................................................................................... 7
9. CONTRACTOR RECORDS ....................................................................................................... 8
10. CONFIDENTIAL INFORMATION-STATE RECORDS ........................................................ 8
11. CONFLICTS OF INTEREST ................................................................................................... 10
12. REPRESENTATIONS AND WARRANTIES ......................................................................... 10
13. INSURANCE.............................................................................................................................. 11
14. BREACH .................................................................................................................................... 12
15. REMEDIES ................................................................................................................................ 13
16. NOTICES and REPRESENTATIVES ..................................................................................... 15
17. RIGHTS IN DATA, DOCUMENTS, AND COMPUTER SOFTWARE ................................ 15
18. GOVERNMENTAL IMMUNITY ........................................................................................... 15
19. STATEWIDE CONTRACT MANAGEMENT SYSTEM....................................................... 15
20. GENERAL PROVISIONS ........................................................................................................ 16
21. COLORADO SPECIAL PROVISIONS ................................................................................... 18
EXHIBIT A – SAFEGUARDING FEDERAL TAX  INFORMATION ("FTI") ............................... A-1
EXHIBIT B – STATEMENT OF WORK ........................................................................................... B-1
EXHIBIT C – PRICES AND RATES ................................................................................................. C-1
EXHIBIT D – TASK ORDER LETTER ............................................................................................. D-1
EXHIBIT E – OPTION LETTER ........................................................................................................ E-1

## 1. PARTIES

This Master Task Order Contract ("Contract") is entered into by and between innoWake International, Inc. ("Contractor"), and the STATE OF COLORADO acting by and through the Governor's Office of Information Technology ("State" or "OIT").  Contractor and the State hereby agree to the following terms and conditions.

## 2. EFFECTIVE DATE AND NOTICE OF NONLIABILITY

This Contract shall not be effective or enforceable until it is approved and signed by the Colorado State Controller or designee ("Effective Date"). The State shall not be liable to pay or reimburse Contractor for any performance hereunder including, but not limited to, costs or expenses incurred, or be bound by any provision hereof prior to the Effective Date.

## 3. RECITALS

### A. Authority, Appropriation, and Approval

Authority to enter into this Contract exists in CRS §24-37.5-105.  Pursuant to CRS §24-110-201, this is a cooperative procurement agreement.  Funds have been budgeted, appropriated and otherwise made available

and a sufficient unencumbered balance thereof remains available for payment. Required approvals, clearance and coordination have been accomplished from and with appropriate agencies. The Contractor was selected in accordance with State law as a result of RFP-004-PVR-11.

**B. Consideration**

The Parties acknowledge that the mutual promises and covenants contained herein and other good and valuable consideration are sufficient and adequate to support this Contract.

**C. Purpose**

The State requires specialized technical services to Migrate to contemporary operating platforms certain legacy business application systems used by the State.

**D. References**

All references in this Contract to sections (whether spelled out or using the § symbol), subsections, exhibits or other attachments, are references to sections, subsections, exhibits or other attachments contained herein or incorporated as a part hereof, unless otherwise noted.

## 4. DEFINITIONS

The following terms as used herein shall be construed and interpreted as follows:

**A. Budget**

"Budget" means the budget for the Work described in a Task Order.

**B. Contract**

"Contract" means this Contract, its terms and conditions, attached exhibits, documents incorporated by reference under the terms of this Contract, and any future modifying agreements, exhibits, attachments or references incorporated herein pursuant to Colorado State law, Fiscal Rules, and State Controller Policies.

**C. Contract Funds**

"Contract Funds" means funds available for payment by the State to Contractor pursuant to this Contract and Task Orders, including funds available for payment by the State to Contractor pursuant to the Existing Task Order.

**D. Contract Term**

"Contract Term" means the Initial Term and the Renewal Term, if any, as provided in **§5**.

**E. Evaluation**

"Evaluation" means the process of examining Contractor's Work and rating it based on criteria established in **§6.**, **Exhibit B**, and and in each Task Order.

**F. Exhibits and Other Attachments**

The following are attached hereto and incorporated by reference herein: **Exhibit A** (Safeguarding Federal Tax Information), **Exhibit B** (Statement of Work), **Exhibit C** (Prices and Rates), **Exhibit D** (Form of Task Order Letter) and **Exhibit E** (Form of Option Letter).

**G. Fiscal Year**

"Fiscal Year" means the State's fiscal year, which begins on July 1 of each calendar year and ends on June 30 of the following calendar year.

**H. Goods**

"Goods" means tangible material acquired, produced, or delivered by Contractor either separately or in conjunction with the Services Contractor renders hereunder or under any Task Order.

**I. Initial Term**

"Initial Term" means the Initial Term of this Contract as provided in **§5.A**.

**J. Interagency Agreement (IA)**

"Interagency Agreement (IA)" means an agreement between OIT and another State agency and approved by the Colorado State Controller.

**K. Legacy System**

"Legacy System" means the current operating platform being used by the State that needs to be Migrated.

**L. Migrate**

"Migrate" means to redeploy a Legacy System or its functional equivalent on a contemporary operating platform.   "Migration" is the noun form of Migrate.

**M. Modernize**
"Modernize" means to reengineer an application into reusable software components employing the full feature richness available in current technologies . Modernization is the noun form of Modernize.

**N. Target Platform**
"Target Platform" means the contemporary operating platform that was redeployed from the Legacy System.

**O. Party or Parties**
"Party" means the State or Contractor and "Parties" means both the State and Contractor.

**P. Renewal Term**
"Renewal Term" means the extension of the Initial Term pursuant to an Option Letter as provided in **§5.C**.

**Q. Review**
"Review" means examining Contractor's Work to ensure that it is adequate, accurate, correct and in accordance with the criteria established in **§6** and **Exhibit B**.

**R. Services**
"Services" means the required services to be performed by Contractor pursuant to this Contract and the Task Orders.

**S. State Controller**
"State Controller" means the Colorado State Controller or authorized designee of the Colorado State Controller.

**T. Subcontractor**
"Subcontractor" means any third-party engaged by Contractor to aid in performance of Contractor's obligations.

**U. Task Order**
"Task Order" means a Task Order, substantially in the form of **Exhibit D**, issued under this Contract, in accordance with **§6.D**, its terms and conditions, attached exhibits, documents incorporated by reference under the terms thereof and any future modifying agreements, exhibits, attachments or references incorporated therein pursuant to Colorado State law, Fiscal Rules, and State Controller Policies.  The Existing Task Order shall be deemed to be a Task Order issued under and subject to the terms of this Contract.

**V. Task Order Effective Date**
"Task Order Effective Date", with respect to a Task Order, means the date such Task Order is approved and signed by State Controller.

**W. Work**
"Work" means the tasks and activities Contractor is required to perform to fulfill its obligations under this Contract, **Exhibit B**, and each Task Order, including the performance of the Services and delivery of the Goods.

**X. Work Product**
"Work Product" means the tangible or intangible results of Contractor's Work, including, but not limited to, software, research, reports, studies, data, photographs, negatives or other finished or unfinished documents, drawings, models, surveys, maps, materials, or work product of any type, including drafts.

## 5. TERM and EARLY TERMINATION

**A. Initial Term-Work Commencement**
The Parties' respective performances under this Contract shall commence on its Effective Date. This Contract shall terminate five (5) years from the Effective Date unless sooner terminated or further extended as specified elsewhere herein.  The term of a Task Order issued hereunder shall not exceed the remaining Contract Term and upon termination of this Contract, all Task Orders issued hereunder shall terminate.

**B. Two Month Extension**

The State, at its sole discretion and upon written notice to Contractor as provided in **§16**, may unilaterally extend the Contract Term for a period not to exceed two (2) months if the Parties are negotiating a replacement contract (and not merely seeking a term extension) at or near the end of the Initial Term or any Renewal Term. The provisions of this Contract and each Task Order in effect when such notice is given, including, but not limited to, prices, rates, and delivery requirements, shall remain in effect during the two (2) month extension. The two (2) month extension shall immediately terminate when and if a replacement contract is approved and signed by the Colorado State Controller.

### C. State's Option to Extend

The State may require continued performance of this Contract for two Renewal Terms of five (5) years each beyond the Initial Term at the same rates and same terms specified in the Contract. The second five (5) year Renewal Term shall only cover Migrations that include maintenance that exceed the ten (10) year term of the Contract. No new Migrations or Modernizations may occur during the second five (5) year Renewal Term. If the State exercises the options, it will provide written notice to Contractor at least thirty (30) days prior to the end of the Initial Term or Renewal Term in form substantially equivalent to **Exhibit E**, specifying the length of the Renewal Term. If exercised, the provisions of the Option Letter shall become part of and be incorporated into this Contract. The total duration of this Contract, including the exercise of any options under this clause, shall not exceed fififteen (15) years.

## 6. STATEMENT OF WORK

### A. Completion

Contractor shall complete the Work and its other obligations as described herein and in **Exhibit B** on or before the termination date of the Contact set forth in **§5.A**. The State shall not be liable to compensate Contractor for any Work performed prior to the Effective Date or after the termination of this Contract.

### B. Goods and Services

Contractor shall procure Goods and Services necessary to complete the Work under each Task Order. Such procurement shall be accomplished using the Contract Funds available under such Task Order and shall not increase the maximum amount payable thereunder by the State. Contractor shall not enter into separate or individual Contracts for the Goods and/or Services provided under this Contract or any Task Order with other State agencies during the term of this Contract without the express written consent of OIT.

### C. Employees

All persons employed by Contractor or Subcontractors to perform Work under this Contract shall be Contractor's or Subcontractor's employee(s) for all purposes hereunder and shall not be employees of the State for any purpose as a result of this Contract.

### D. Task Orders

**i. State agency ordering**

If a State agency needs Contractor's Services, the State agency shall contact OIT and submit a request for Contractor's Services. Within 60 days of receipt of a State agency's request for Contractor's Services, OIT will:

    **a)** work with Contractor to determine the Work to be completed and Services to be performed by Contractor;

    **b)** define, negotiate, and execute a Task Order and its associated Statement of Work for Contractor's Services and the Work the State agency is requesting be completed; and

    **c)** enter into an IA with the State agency to acquire Goods or Services for the agency under the Contract prior to OIT issuing a Task Order for the Goods or Services.

**ii. Issuance**

    **a)** Tasks shall be defined, negotiated, and ordered by agreement of the Parties in a Task Order, subject to the provisions of this Contract. No Task Order shall modify the provisions of this Contract. Changes to this Contract shall require a formal written amendment, in accordance with **§20.H**. The State is not committing to issue any minimum number of Task Orders by entering into this Contract.

b) Task Orders shall be processed as follows.  First, the State shall provide written notice to Contractor in accordance with **§16**, specifying the desired Services, Goods and requirements.  Within 45 days of the receipt of such notice, Contractor shall submit a proposal to the State, in a form acceptable to the State, which includes all pertinent information, including without limitation, price, statement of work, proposed time of performance, estimate number of hours, material costs, and warranties.  Once the Parties agree regarding the foregoing, they shall prepare and execute a Task Order, in a form substantially similar to **Exhibit D**.

c) Performance of the obligations set forth in each Task Order shall be subject to the provisions of this Contract.  Contractor shall complete the Work and its obligations described in each Task Order within the stated time and price.  The State shall not be liable to compensate or reimburse Contractor for any performance under a Task Order, including, but not limited to, costs or expenses incurred, or be bound by any provision hereof or thereof prior to the Task Order Effective Date or after the termination of such Task Order.

### iii. Modification

a) A modification to a Task Order that increases the scope of work, maximum amount payable, or date for final completion of the Task Order shall be agreed to in writing by the Parties in an formal Task Order amendment, properly executed by the Parties and approved by the State Controller, in accordance with applicable Colorado State law and State Fiscal Rules.  Modifications to Task Orders, other than Task Order amendments, shall conform to the Policies of the Office of the State Controller.

b) If the State wishes to modify the scope or completion date of, or maximum amount payable under, a Task Order, the State shall provide a written notice to Contractor, in accordance with **§16**, providing a detailed description of the requested modification.  Within 30 days of the receipt of such notice, Contractor shall submit to the State a written Task Order amendment proposal setting forth the changes required to accomplish such modifications to the Task Order, the revised scope of work, and the costs associated with such modification, including an amended not-to-exceed amount for such Task Order.

c) At the request of the State, Contractor shall meet with the State to discuss the Task Order amendment proposal and related costs.  If the Parties agree to the terms of the modification, the Parties shall execute a Task Order amendment.

d) A Task Order amendment will be approved only for modifications agreed upon by the Parties.  An increase in Contractor's cost for the performance of Services or delivery of Goods under a signed Task Order shall not constitute grounds for a Task Order amendment.

### iv. Termination

a) Each Task Order shall terminate on the date specified therein, unless sooner terminated or extended by a Task Order amendment.  All Task Orders shall terminate upon the termination of this Contract.  The State, at any time, may terminate a Task Order or decrease the scope of work under a Task Order, even it is ongoing and even if Contract Funds have been encumbered for such purpose.  The State shall notify Contractor of the termination of or decrease in the scope of work under a Task Order, by the delivery of written notice, in accordance with **§16**, which identifies the  Task Order, or portion thereof, to be terminated or decreased and the effective date of the termination or decrease.  The State shall reimburse Contractor for Work performed and for all reasonable charges arising from Contractor having made advance commitments for materials, services and supplies which cannot be cancelled.  If the State pays for such advance commitments, the State may take possession of all materials, supplies, and results and finish the Work by such means as it deems fit.

b) A Task Order may be terminated as permitted by the terms of the Contract or such Task Order, upon notice to the non-terminating Party, in accordance with **§16**, that such Task Order is being terminated.  Termination of a Task Order as provided hereunder or under such Task Order shall not constitute a termination of this Contract or any other Task Order.

    c) Requests for an extension of the time for the completion of any Task Order performance not requiring a Task Order amendment shall be submitted to the State in writing, in accordance with **§16**, and shall require the written consent of the State, which consent shall not be unreasonably withheld.

### v. Payment Terms

Each Task Order shall contain the terms of payment for the Work to be completed for such Task Order and shall be based on the pricing contained in **Exhibit C** of this Contract.  The State does not guarantee that a minimum number of hours or minimum quantity of Goods or Services will be ordered from Contractor pursuant to this Contract.  The Budget attached to each Task Order shall include all fees, costs and expenses, including, but not limited to, labor costs, travel expenses, parts, service, repair, removal, replacement, mileage charges, supplies, mailing charges, installation, testing, communications, order and order tracking, reporting, debugging, analysis, delivery charges and other expenses under such Task Order.  The Budget attached to each Task Order shall include all of Contractor's and Subcontractor's Goods, Services, license fees, and expenses.

### vi. Liquidated Damages

The Parties may provide for liquidated damages in any Task Order to the extent that the damages from a breach of such Task Order are difficult to prove or estimate. The amount of liquidated damages specified in a Task Order shall represent a reasonable estimation of damages that will be suffered by the State, including costs of additional inspection and oversight and lost opportunity for additional efficiencies that would have resulted from on-time completion of performance.

## 7. PAYMENTS TO CONTRACTOR

The State shall, in accordance with the provisions of this **§7,** pay Contractor in the amounts and using the methods set forth below:

### A. Maximum Amount

#### i. Maximum Contract Amount

The maximum Contract amount payable under this Contract to Contractor by the State is Thirty Million Dollars and 0/100 cents ($30,000,000.00), as determined by the State from available funds.  The cumulative amount payable to Contractor by the State under all Task Orders shall not exceed the maximum Contract amount.  Payments to Contractor are limited to the unpaid obligated balance of the Contract and Contractor shall not accept any Task Order resulting in a cumulative amount in excess thereof.  Increases or decreases to the maximum Contract amount shall require a contract amendment executed by the Parties in accordance with **§20.H.i** and approved by the State Controller.

#### ii. Maximum Task Order Amount

The maximum amount available for the purchase of Goods and Services under each Task Order shall be defined in such Task Order.

### B. Payment

#### i. Advance, Interim and Final Payments

Any advance payment allowed under this Contract or any Task Order shall comply with State Fiscal Rules and be made in accordance with the provisions of this Contract and such Task Order.  Contractor shall initiate any payment requests by submitting invoices to the State in the form and manner set forth and approved by the State.  Invoices shall be sent to Governor's Office of Information Technology, 601 E. 18th Avenue, Suite 250, Denver, CO, 80203.  Attn:  Accounting.

#### ii. Interest

The State shall fully pay each invoice within 45 days of receipt thereof if the amount invoiced represents performance by Contractor previously accepted by the State. Uncontested amounts not paid by the State within 45 days shall bear interest on the unpaid balance beginning on the 46th day at a rate not to exceed 1% per month until paid in full; provided, however, that interest shall not accrue on unpaid amounts that are subject to a good faith dispute. Contractor shall invoice the State separately for accrued interest on delinquent amounts. The billing shall reference the delinquent payment, the number of day's interest to be paid and the interest rate.

### iii. Retainage

The Parties may agree in any Task Order that the State shall withhold a percentage of the amount shown to be due to Contractor on any invoice until the Work required by such Task Order has been completed or as otherwise agreed by the Parties. The withheld percentage of each invoice shall be retained as provided in such Task Order or as otherwise provided by law.

### iv. Available Funds-Contingency-Termination

The State is prohibited by law from making commitments beyond the term of the State's current fiscal year. Therefore, Contractor's compensation beyond the State's current fiscal year is contingent upon the continuing availability of State appropriations as provided in the Colorado Special Provisions.  If federal funds are used to fund this Contract, in whole or in part, the State's performance hereunder is contingent upon the continuing availability of such funds. Payments pursuant to this Contract and each Task Order shall be made only from available funds encumbered for this Contract and the State's liability for such payments shall be limited to the amount remaining of such encumbered funds. If State or federal funds are not appropriated, or otherwise become unavailable to fund this Contract or any Task Order, the State may terminate this Contract or such Task Order immediately, in whole or in part, without further liability in accordance with the provisions hereof.

### v. Erroneous Payments

At the State's sole discretion, payments made to Contractor in error for any reason, including, but not limited to overpayments or improper payments, and unexpended or excess funds received by Contractor, may be recovered from Contractor by deduction from subsequent payments under this Contract, any Task Order,  or other contracts, grants or agreements between the State and Contractor or by other appropriate methods and collected as a debt due to the State. Such funds shall not be paid to any party other than the State.

## C. Use of Funds

Contract Funds shall be used only for eligible costs identified herein and/or in the Task Order Budget.

## 8. REPORTING - NOTIFICATION

Reports, Evaluations, and Reviews required under this **§8** shall be in accordance with the procedures of and in such form as prescribed by the State and in accordance with **§19**, if applicable.

### A. Performance, Progress, Personnel, and Funds

Contractor shall submit a report to the State upon expiration or sooner termination of each Task Order and this Contract, containing an Evaluation and Review of Contractor's performance and the final status of Contractor's obligations hereunder. In addition, Contractor shall comply with all reporting requirements, if any, set forth in this Contract or any Task Order.

### B. Litigation Reporting

Within ten (10) days after being served with any pleading in a legal action filed with a court or administrative agency, related to this Contract or any Task Order or which may affect Contractor's ability to perform its obligations hereunder, Contractor shall notify the State of such action and deliver copies of such pleadings to the State's principal representative as identified herein. If the State's principal representative is not then serving, such notice and copies shall be delivered to the Chief Information Officer of OIT.

### C. Noncompliance

Contractor's failure to provide reports and notify the State in a timely manner in accordance with this **§8** may result in the delay of payment of funds and/or termination as provided under this Contract or any Task Order.

### D. Subcontracts

Contractor, with the consent of the State, may enter into one or more written subcontracts for the performance of Contractor's obligations under this Contract or any Task Order.  Each subcontract shall comply with all applicable federal and state laws and provide that such subcontract shall be governed by the laws of the State of Colorado.  Contractor shall submit a copy of each subcontract to the State prior to the effective date of such subcontract.  The State shall accept or reject such subcontract within ten (10) business days of the State's receipt thereof.  Failure of the State to accept a subcontract within such period shall be

deemed to be a rejection thereof.  In the event Contractor engages a Subcontractor to perform Work in connection with a Task Order which contains a retainage provision, in accordance with **§7.B.iii**, Contractor and its Subcontractor shall incorporate such retainage provision as a part of the subcontract.  Contractor shall notify the State immediately, in writing by certified mail, of any action or suit filed and prompt notice of any claim made against Contractor by any Subcontractor or vendor which in the reasonable opinion of Contractor may result in litigation related in any way to the Contract with the State.  Contractor shall notify the State in writing, in accordance with **§16** below, within ten (10) days of discovering that a Subcontractor has been served with any pleading in a legal action filed with a court or administrative agency which may affect such Subcontractors ability to perform its obligation under a subcontract.

## 9. CONTRACTOR RECORDS
### A. Maintenance
Contractor shall make, keep, maintain, and allow inspection and monitoring by the State of a complete file of all records, documents, communications, notes and other written materials, electronic media files, and communications, pertaining in any manner to the Work or the delivery of Services or Goods hereunder or under any Task Order. Contractor shall maintain such records until the last to occur of: **(i)** a period of 3 years after the date this Contract expires or is sooner terminated, or **(ii)** final payment is made hereunder and under any Task Order, or **(iii)** the resolution of any pending Contract or Task Order matters, or **(iv)** if an audit is occuring, or Contractor has received notice that an audit is pending, until such audit has been completed and its findings have been resolved (collectively, the "Record Retention Period").

### B. Inspection
Contractor shall permit the State, the federal government and any other duly authorized agent of a governmental agency to audit, inspect, examine, excerpt, copy and/or transcribe Contractor's records related to this Contract and any Task Order during the Record Retention Period for a period of 3 years following termination of this Contract or final payment hereunder and under all Task Orders, whichever is later, to assure compliance with the terms hereof or to evaluate performance hereunder and thereunder. The State reserves the right to inspect the Work at all reasonable times and places during the Contract Term, including any extensions or renewals. If the Work fails to conform to the requirements of this Contract or any Task Order, the State may require Contractor to promptly bring the Work into conformity with Contract and Task Order requirements, at Contractor's sole expense. If the Work cannot be brought into conformance by re-performance or other corrective measures, the State may require Contractor to take necessary action to ensure that future performance conforms to Contract and Task Order requirements and exercise the remedies available under this Contract and such Task Order, at law or in equity, in lieu of or in conjunction with such corrective measures.

### C. Monitoring
Contractor shall permit the State, the federal government, and governmental agencies having jurisdiction, in their sole discretion, to monitor all activities conducted by Contractor pursuant to the terms of this Contract and each Task Order using any reasonable procedure, including, but not limited to: internal evaluation procedures, examination of program data, special analyses, on-site checking, formal audit examinations, or any other procedures. All monitoring controlled by the State shall be performed in a manner that shall not unduly interfere with Contractor's performance hereunder or under any Task Order.

### D. Final Audit Report
If an audit is performed on Contractor's records for any fiscal year covering a portion of the Contract Term, Contractor shall submit a copy of the final audit report to the State or its principal representative at the address specified herein.  Contractor shall ensure the provisions of this paragraph apply to any subcontract related to performance under the Contract.  Contractor shall, at Contractor's sole expense, reconstruct any records not preserved or retained as required by this paragraph.

## 10. CONFIDENTIAL INFORMATION-STATE RECORDS
Contractor shall comply with and shall cause each of its Subcontractors and any other party performing Work under this Contract or any Task Order to comply with the provisions of this **§10** if it becomes privy to confidential

information in connection with its performance. Confidential information includes, but is not necessarily limited to, any state records, personnel records, and information concerning individuals. Such information shall not include information required to be disclosed pursuant to the Colorado Open Records Act, CRS §24-72-101, et seq.

## A. Confidentiality

Contractor shall keep all State records and information confidential at all times and comply with all laws and regulations concerning confidentiality of information. Any request or demand by a third party for State records and information in the possession of Contractor shall be immediately forwarded to the State's principal representative.

## B. Notification

Contractor shall notify its agent, employees, Subcontractors and assigns who may come into contact with State records and confidential information that each is subject to the confidentiality requirements set forth herein, and shall provide each with a written explanation of such requirements before permitting them to access such records and information.

## C. Use, Security, and Retention

Confidential information of any kind shall not be distributed or sold to any third party or used by Contractor or its agents in any way, except as authorized by this Contract or a Task Order or approved in writing by the State. Contractor shall provide and maintain a secure environment that ensures confidentiality of all State records and other confidential information wherever located. Confidential information shall not be retained in any files or otherwise by Contractor or its agents, except as permitted in this Contract or approved in writing by the State.

## D. Protection

If Contractor provides physical or logical storage, processing or transmission of confidential or sensitive State data, Contractor shall provide physical and logical protection for State hardware, software, applications and data that meet or exceed industry standards and requirements as set forth in this Contract or a Task Order. Contractor shall provide the State with access, subject to Contractor's reasonable access security requirements, 7 days a week, 24 hours a day, for the purpose of inspecting and monitoring access and use of State data, maintaining State systems, and evaluating physical and logical security control effectiveness.

## E. Security-Notice

Contractor is responsible for the security of all information provided to it by the State. Contractor shall comply with the State's Cyber Security Policies, which the Governor's Office of Cyber Security has promulgated pursuant to CRS §§24-37.5-401 through 406 and 8 CCR §1501-5. The Policies are posted at http://www.colorado.gov/cs/Satellite/Cyber/CISO/1207820732279.

## F. Security Breach Remediation

If Contractor becomes aware of a data security breach, it shall notify the State immediately and cooperate with the State regarding recovery, remediation, and the necessity to involve law enforcement, if any. Contractor shall be responsible for the cost of notifying each Colorado resident and residents of other states whose personal information may have been compromised. Notice shall be made as soon as possible within the legitimate needs of law enforcement and according to the requirements of the State. Contractor shall be responsible for performing an analysis to determine the cause of the breach, and for producing a remediation plan to reduce the risk of incurring a similar type of breach in the future. Contractor shall present such analysis and remediation plan to the State within 10 days of notifying the State of the data security breach. The State reserves the right to adjust this plan, in its sole discretion. If Contractor cannot produce the required analysis and plan within the allotted time, the State, in its sole discretion, may perform such analysis, produce a remediation plan, and Contractor shall reimburse the State for the reasonable costs thereof.

## G. Disclosure-Liability

Disclosure of State records or other confidential information by Contractor for any reason may be cause for legal action by third parties against Contractor, the State or their respective agents. Contractor shall

indemnify, save, and hold harmless the State, its employees and agents, against any and all claims, damages, liability and court awards including costs, expenses, and attorney fees and related costs, incurred as a result of any act or omission by Contractor, or its employees, agents, Subcontractors, or assignees pursuant to this **§10**. Notwithstanding any other provision of this Contract or any Task Order, Contractor shall be liable to the State for all consequential and incidental damages arising from a data security breach. The Work under this Contract may require the State to supply data to the Contractor that contains Personal Indentifying Information (PII). The State, in its sole discretion may securely deliver such data directly to the facility where the data is used to perform the Work. The data is not to be maintained or forwarded to or from any other facility or location except for the authorized and approved purposes of backup and disaster recovery purposes. The Contractor shall ensure that the data is not retained beyond timeframes established by the State.

## 11. CONFLICTS OF INTEREST

Contractor shall not engage in any business or personal activities or practices or maintain any relationships which conflict in any way with the full performance of Contractor's obligations hereunder or any Task Order. Contractor acknowledges that with respect to this Contract, even the appearance of a conflict of interest is harmful to the State's interests. Absent the State's prior written approval, Contractor shall refrain from any practices, activities or relationships that reasonably appear to be in conflict with the full performance of Contractor's obligations to the State hereunder. If a conflict or appearance exists, or if Contractor is uncertain whether a conflict or the appearance of a conflict of interest exists, Contractor shall submit to the State a disclosure statement setting forth the relevant details for the State's consideration. Failure to promptly submit a disclosure statement or to follow the State's direction in regard to the apparent conflict constitutes a breach of this Contract.

## 12. REPRESENTATIONS AND WARRANTIES

Contractor makes the following specific representations and warrantiesfor the benefit of the State on the date hereof and as of each Task Order Effective Date, each of which was relied upon and will be relied upon by the State in entering into this Contract and each Task Order.

### A. Standard and Manner of Performance

Contractor shall perform its obligations hereunder in accordance with the highest standards of care, skill and diligence in Contractor's industry, trade, or profession and in the sequence and manner set forth in this Contract or in any Task Order.

### B. Legal Authority – Contractor Signatory

Contractor warrants that it possesses the legal authority to enter into this Contract and that it has taken all actions required by its procedures, and by-laws, and/or applicable laws to exercise that authority, and to lawfully authorize its undersigned signatory to execute this Contract, or any part thereof, and to bind Contractor to its terms. If requested by the State, Contractor shall provide the State with proof of Contractor's authority to enter into this Contract within 15 days of receiving such request.

### C. Licenses, Permits, Etc.

Contractor represents and warrants that as of the Effective Date it has, and that at all times during the term hereof it shall have and maintain, at its sole expense, all licenses, certifications, approvals, insurance, permits, and other authorizations required by law to perform its obligations hereunder and under each Task Order. Contractor warrants that it shall maintain all necessary licenses, certifications, approvals, insurance, permits, and other authorizations required to properly perform this Contract and each Task Order, without reimbursement by the State or other adjustment in Contract Funds. Additionally, all employees, agents, and Subcontractors of Contractor performing Services under this Contract or any Task Order shall hold all required licenses or certifications, if any, to perform their responsibilities. Contractor, if a foreign corporation or other foreign entity transacting business in the State of Colorado, further warrants that it currently has obtained and shall maintain any applicable certificate of authority to transact business in the State of Colorado and has designated a registered agent in Colorado to accept service of process. Any revocation, withdrawal or non-renewal of licenses, certifications, approvals, insurance, permits or any such similar

requirements necessary for Contractor to properly perform the terms of this Contract or any Task Order is a material breach by Contractor and constitutes grounds for termination of this Contract.

**D. Contractor Key Personnel**

 **i.** The following Contractor key positions are considered Key Personnel:
- Project Manager
- Senior Lead Developer

 **ii.** A change in Key Personnel identified in any Task Order may only be made with prior written approval by the State. The Contractor must submit for the State's approval, a replacement with the educational and relevant experience qualifications that meet or exceed that of the candidate proposed by the Contractor. The State shall accept or reject the change within 10 business days.

 **iii.** The number, classification and qualification of Key Personnel proposed by the Contractor are considered material elements of the performance required of this Contract. Positions may not be eliminated, combined, or shared among other contractual obligations the Contractor may have without prior written approval of the State.

## 13. INSURANCE

Contractor and its Subcontractors shall obtain and maintain insurance as specified in this section at all times during the Contract Term. All policies evidencing the insurance coverage required hereunder shall be issued by insurance companies satisfactory to Contractor and the State.

**A. Contractor**

 **i. Public Entities**

 If Contractor is a "public entity" within the meaning of the Colorado Governmental Immunity Act, CRS §24-10-101, et seq., as amended (the "GIA"), then Contractor shall maintain at all times during the term of this Contract such liability insurance, by commercial policy or self-insurance, as is necessary to meet its liabilities under the GIA. Contractor shall show proof of such insurance satisfactory to the State, if requested by the State. Contractor shall require each contract with a Subcontractor that is a public entity, to include the insurance requirements necessary to meet such Subcontractor's liabilities under the GIA.

 **ii. Non-Public Entities**

 If Contractor is not a "public entity" within the meaning of the GIA, Contractor shall obtain and maintain during the term of this Contract insurance coverage and policies meeting the same requirements set forth in **§13.B** with respect to Subcontractors that are not "public entities".

**B. Contractors - Subcontractors**

Contractor shall require each contract with Subcontractors other than those that are public entities, providing Goods or Services in connection with this Contract or any Task Order, to include insurance requirements substantially similar to the following:

 **i. Worker's Compensation**

 Worker's Compensation Insurance as required by State statute, and Employer's Liability Insurance covering all of Contractor or Subcontractor employees acting within the course and scope of their employment.

 **ii. General Liability**

 Commercial General Liability Insurance written on ISO occurrence form CG 00 01 10/93 or equivalent, covering premises operations, fire damage, independent contractors, products and completed operations, blanket contractual liability, personal injury, and advertising liability with minimum limits as follows: **(a)** $1,000,000 each occurrence; **(b)** $1,000,000 general aggregate; **(c)** $1,000,000 products and completed operations aggregate; and **(d)** $50,000 any one fire. If any aggregate limit is reduced below $1,000,000 because of claims made or paid, Subcontractor shall immediately obtain additional insurance to restore the full aggregate limit and furnish to Contractor a certificate or other document satisfactory to Contractor showing compliance with this provision.

 **iii. Automobile Liability**

Automobile Liability Insurance covering any auto (including owned, hired and non-owned autos) with a minimum limit of $1,000,000 each accident combined single limit.

**iv. Professional Liability**

The Contractor agrees to maintain in full force and effect a Professional Liability Insurance Policy in the minimum amount of $1,000,000 per occurrence and $1,000,000 in the aggregate, written on an occurrence form, that provides coverage for its work undertaken pursuant to this Contract. If a policy written on an occurrence form is not commercially available, the claims-made policy shall remain in effect for the duration of this State Contract and for at least two years beyond the completion and acceptance of the work under this Contract, or, alternatively, a two year extended reporting period must be purchased.

**v. Additional Insured**

The State shall be named as additional insured on all Commercial General Liability Insurance policies (leases and construction contracts require additional insured coverage for completed operations on endorsements CG 2010 11/85, CG 2037, or equivalent) required of Contractor and any Subcontractors hereunder.

**vi. Primacy of Coverage**

Coverage required of Contractor and Subcontractor shall be primary over any insurance or self-insurance program carried by Contractor or the State.

**vii. Cancellation**

The above insurance policies shall include provisions preventing cancellation or non-renewal without at least 30 days prior notice to Contractor and Contractor shall forward such notice to the State in accordance with **§16** (Notices and Representatives) within 7 days of Contractor's receipt of such notice.

**viii. Subrogation Waiver**

All insurance policies in any way related to this Contract and secured and maintained by Contractor or its Subcontractors as required herein shall include clauses stating that each carrier shall waive all rights of recovery, under subrogation or otherwise, against Contractor or the State, its agencies, institutions, organizations, officers, agents, employees, and volunteers.

**C. Certificates**

Contractor and all Subcontractors shall provide certificates showing insurance coverage required hereunder to the State within 7 business days of the Effective Date of this Contract. A Subcontractor providing Goods or Services in connection with a Task Order shall provide a certificate to Contractor showing insurance coverage required hereunder within seven (7) business days of the Task Order Effective Date of such Task Order. No later than 15 days prior to the expiration date of any such coverage, Contractor and each Subcontractor shall deliver to the State or Contractor certificates of insurance evidencing renewals thereof. In addition, upon request by the State at any other time during the term of this Contract or any subcontract, Contractor and each Subcontractor shall, within 10 days of such request, supply to the State evidence satisfactory to the State of compliance with the provisions of this **§13**.

## 14. BREACH

**A. Defined**

In addition to any breaches specified in other sections of this Contract, the failure of either Party to perform any of its material obligations hereunder or under any Task Order in whole or in part or in a timely or satisfactory manner, constitutes a breach. The institution of proceedings under any bankruptcy, insolvency, reorganization or similar law, by or against Contractor, or the appointment of a receiver or similar officer for Contractor or any of its property, which is not vacated or fully stayed within 20 days after the institution or occurrence thereof, shall also constitute a breach.

**B. Notice and Cure Period**

In the event of a breach, notice of such shall be given in writing by the aggrieved Party to the other Party in the manner provided in **§16**. If such breach is not cured within 30 days of receipt of written notice, or if a cure cannot be completed within 30 days, or if cure of the breach has not begun within 30 days and pursued with due diligence, the State may exercise any of the remedies set forth in **§15**. Notwithstanding anything to

the contrary herein, the State, in its sole discretion, need not provide advance notice or a cure period and may immediately terminate this Contract or any Task Order in whole or in part if reasonably necessary to preserve public safety or to prevent immediate public crisis.

**C. Delay or Nonperformance – Liquidated Damages**

If the State provides Contractor with written notice of delay or nonperformance under a Task Order, in accordance with **§16** below, and Contractor fails to cure such delay or nonperformance within the time specified in such notice, then to the extent such Task Order contains a liquidated damages provision, Contractor shall be liable for the liquidated damages in addition to any other applicable damages as provided therein.

## 15. REMEDIES

If Contractor is in breach under any provision of this Contract or any Task Order, the State shall have all of the remedies listed in this **§15.** in addition to all other remedies set forth in other sections of this Contract or such Task Order following the notice and cure period set forth in **§14.B**. The State may exercise any or all of the remedies available to it, in its sole discretion, concurrently or consecutively.

**A. Termination for Cause and/or Breach**

The State may terminate this entire Contract, any Task Order, or any part of this Contract. Exercise by the State of this right shall not be a breach of its obligations hereunder or under any Task Order. Contractor shall continue performance of this Contract or such Task Order to the extent not terminated, if any.

**i. Obligations and Rights**

To the extent specified in any termination notice, Contractor shall not incur further obligations or render further performance hereunder or under a terminated Task Order past the effective date of such notice, and shall terminate outstanding orders and subcontracts with third parties. However, Contractor shall complete and deliver to the State all Work, Services and Goods not cancelled by the termination notice and may incur obligations as are necessary to do so within the terms of this Contract or any terminated Task Order. At the sole discretion of the State, Contractor shall assign to the State all of Contractor's right, title, and interest under such terminated orders or subcontracts. Upon termination, Contractor shall take timely, reasonable and necessary action to protect and preserve property in the possession of Contractor in which the State has an interest. All materials owned by the State in the possession of Contractor shall be immediately returned to the State. All Work Product, at the option of the State, shall be delivered by Contractor to the State and shall become the State's property.

**ii. Payments**

The State shall reimburse Contractor only for accepted performance up to the date of termination. If, after termination by the State, it is determined that Contractor was not in breach or that Contractor's action or inaction was excusable, such termination shall be treated as a termination in the public interest and the rights and obligations of the Parties shall be the same as if this Contract and/or terminated Task Orders had been terminated in the public interest, as described herein.

**iii. Damages and Withholding**

Notwithstanding any other remedial action by the State, Contractor shall remain liable to the State for any damages sustained by the State by virtue of any breach under this Contract or any Task Order by Contractor and the State may withhold any payment to Contractor for the purpose of mitigating the State's damages, until such time as the exact amount of damages due to the State from Contractor is determined. The State may withhold any amount that may be due Contractor as the State deems necessary to protect the State against loss, including loss as a result of outstanding liens, claims of former lien holders, or for the excess costs incurred in procuring similar goods or services. Contractor shall be liable for excess costs incurred by the State in procuring from third parties replacement Work, Services or substitute Goods as cover.

**B. Early Termination in the Public Interest**

The State is entering into this Contract for the purpose of carrying out the public policy of the State of Colorado, as determined by its Governor, General Assembly, and/or Courts. If this Contract or any Task

Order ceases to further the public policy of the State, the State, in its sole discretion, may terminate this Contract or such Task Order in whole or in part. Exercise by the State of this right shall not constitute a breach of the State's obligations hereunder or under any Task Order. This subsection shall not apply to a termination of this Contract or any Task Order by the State for cause or breach by Contractor, which shall be governed by **§15.A.** or as otherwise specifically provided for herein or in a Task Order.

**i. Method and Content**

The State shall notify Contractor of such termination in accordance with **§16**. The notice shall specify the effective date of the termination and whether it affects all or a portion of this Contract or any Task Order.

**ii. Obligations and Rights**

Upon receipt of a termination notice, Contractor shall be subject to and comply with the same obligations and rights set forth in **§15.A.i**.

**iii. Payments**

If this Contract or any Task Order is terminated by the State pursuant to this **§15.B**, Contractor shall be paid an amount which bears the same ratio to the total reimbursement under this Contract or such Task Order as Contractor's obligations that were satisfactorily performed bear to the total obligations set forth in this Contract or such Task Order, less payments previously made. Additionally, if terminated Task Order is less than 60% completed, the State may reimburse Contractor for a portion of actual out-of-pocket expenses (not otherwise reimbursed under such Task Order) incurred by Contractor which are directly attributable to the uncompleted portion of Contractor's obligations hereunder; provided that the sum of any and all reimbursement shall not exceed the maximum amount payable to Contractor under such Task Order.

**C. Termination of Task Orders**

A termination of this Contract for any reason shall constitute a termination of all Task Orders issued and outstanding under this Contract.

**D. Remedies Not Involving Termination**

The State, in its sole discretion, may exercise one or more of the following remedies in addition to other remedies available to it:

**i. Suspend Performance**

Suspend Contractor's performance with respect to all or any portion of this Contract or any Task Order pending necessary corrective action as specified by the State without entitling Contractor to an adjustment in price/cost or performance schedule. Contractor shall promptly cease performance and incurring costs in accordance with the State's directive and the State shall not be liable for costs incurred by Contractor after the suspension of performance under this provision.

**ii. Withhold Payment**

Withhold payment to Contractor until corrections in Contractor's performance are satisfactorily made and completed.

**iii. Deny Payment**

Deny payment for those obligations not performed, that due to Contractor's actions or inactions cannot be performed or, if performed, would be of no value to the State; provided, that any denial of payment shall be reasonably related to the value to the State of the obligations not performed.

**iv. Removal**

Notwithstanding any other provision herein, the State may demand immediate removal of any of Contractor's employees, agents, or Subcontractors whom the State deems incompetent, careless, insubordinate, unsuitable, or otherwise unacceptable, or whose continued relation to this Contract or any Task Order is deemed to be contrary to the public interest or the State's best interest.

**v. Intellectual Property**

If Contractor infringes on a patent, copyright, trademark, trade secret or other intellectual property right while performing its obligations under this Contract or any Task Order, Contractor shall, at the State's option **(a)** obtain for the State or Contractor the right to use such products and services; **(b)** replace any

Goods, Services, or other product involved with non-infringing products or modify them so that they become non-infringing; or, (c) if neither of the foregoing alternatives are reasonably available, remove any infringing Goods, Services, or products and refund the price paid therefore to the State.

## 16. NOTICES and REPRESENTATIVES

Each individual identified below is the principal representative of the designating Party. All notices required to be given hereunder or under any Task Order shall be hand delivered with receipt required or sent by certified or registered mail to such Party's principal representative at the address set forth below. In addition to, but not in lieu of a hard-copy notice, notice also may be sent by e-mail to the e-mail addresses, if any, set forth below. Either Party may from time to time designate by written notice substitute addresses or persons to whom such notices shall be sent. Unless otherwise provided herein, all notices shall be effective upon receipt.

### A. State:

| |
|---|
| Todd Olson, CFO |
| Governor's Office of Information Technology |
| 601 East 18th Avenue, Suite 250 |
| Denver, CO 80203 |
| OITContracts@state.co.us |

### B. Contractor:

| |
|---|
| Arne Gerhard |
| innoWake International, Inc. |
| 580 California Street |
| San Francisco, CA 94104 |
| arne.gerhard@innowake.com |

## 17. RIGHTS IN DATA, DOCUMENTS, AND COMPUTER SOFTWARE

Unless provided to the contrary in a Task Order, any software, research, reports, studies, data, photographs, negatives or other documents, drawings, models, materials, or Work Product of any type, including drafts, prepared by Contractor in the performance of its obligations under this Contract or any Task Order shall be the exclusive property of the State and, all Work Product shall be delivered to the State by Contractor upon completion or termination hereof. The State's exclusive rights in such Work Product shall include, but not be limited to, the right to copy, publish, display, transfer, and prepare derivative works. Contractor shall not use, willingly allow, cause or permit such Work Product to be used for any purpose other than the performance of Contractor's obligations hereunder or under any Task Order without the prior written consent of the State.  The effect of any provision to the contrary in a Task Order shall be limited to software, research, reports, studies, data, photographs, negatives or other documents, drawings, models, materials, or Work Product prepared under such Task Order.

## 18. GOVERNMENTAL IMMUNITY

Liability for claims for injuries to persons or property arising from the negligence of the State of Colorado, its departments, institutions, agencies, boards, officials, and employees is controlled and limited by the provisions of the Governmental Immunity Act, CRS §24-10-101, et seq., and the risk management statutes, CRS §24-30-1501, et seq., as amended.

## 19. STATEWIDE CONTRACT MANAGEMENT SYSTEM

### A. Application

If the maximum amount payable to Contractor under this Contract is $100,000 or greater, either on the Effective Date or at anytime thereafter, this **§19.** applies.

### B. Agreement

Contractor agrees to be governed, and to abide, by the provisions of CRS §§24-102-205, 102-206, 103-601, 103.5-101 and 105-102 concerning the monitoring of vendor performance on state contracts and inclusion of contract performance information in a statewide contract management system.

**C. Evaluation and Review**

Contractor's performance shall be subject to Evaluation and Review in accordance with the terms and conditions of this Contract, Task Order, State law, including CRS §24-103.5-101, and State Fiscal Rules, Policies and Guidance. Evaluation and Review of Contractor's performance shall be part of the normal contract administration process and Contractor's performance will be systematically recorded in the statewide Contract Management System. Areas of Evaluation and Review shall include, but shall not be limited to quality, cost and timeliness. Collection of information relevant to the performance of Contractor's obligations under this Contract and any Task Orders shall be determined by the specific requirements of such obligations and shall include factors tailored to match the requirements of Contractor's obligations. Such performance information shall be entered into the statewide Contract Management System at intervals established herein in the Task Orders and a final Evaluation, Review and Rating shall be rendered within 30 days of the end of the Contract Term. Contractor shall be notified following each performance Evaluation and Review, and shall address or correct any identified problem in a timely manner and maintain work progress.  Should the final performance Evaluation and Review determine that Contractor demonstrated a gross failure to meet the performance measures established hereunder, the Executive Director of the Colorado Department of Personnel and Administration (Executive Director), upon request by OIT, and showing of good cause, may debar Contractor and prohibit Contractor from bidding on future contracts. Contractor may contest the final Evaluation, Review and Rating by: **(a)** filing rebuttal statements, which may result in either removal or correction of the evaluation (CRS §24-105-102(6)**)**, or **(b)** under CRS §24-105-102(6), exercising the debarment protest and appeal rights provided in CRS §§24-109-106, 107, 201 or 202, which may result in the reversal of the debarment and reinstatement of Contractor, by the Executive Director, upon showing of good cause.

**D. Notification**

   **vi. Evaluation and Review**

   Contractor shall be notified following each performance Evaluation and Review, and shall address or correct any identified problem in a timely manner and maintain work progress.

   **vii. Rebuttal/Protest and Appeal**

   Contractor may contest the final Evaluation, Review and rating by filing rebuttal statements, which may result in either removal or correction of the evaluation (CRS §24-105-102(6)).

## 20. GENERAL PROVISIONS

**A. Assignment and Subcontracts**

Contractor's rights and obligations hereunder and under each Task Order are personal and may not be transferred, assigned or subcontracted without the prior, written consent of the State. Any attempt at assignment, transfer, subcontracting without such consent shall be void. All assignments, subcontracts, or Subcontractors approved by Contractor or the State are subject to all of the provisions hereof and of any applicable Task Order. Contractor shall be solely responsible for all aspects of subcontracting arrangements and performance.

**B. Binding Effect**

Except as otherwise provided in **§20.A**, all provisions herein contained or in any Task Order, including the benefits and burdens, shall extend to and be binding upon the Parties' respective heirs, legal representatives, successors, and assigns.

**C. Captions**

The captions and headings in this Contract are for convenience of reference only, and shall not be used to interpret, define, or limit its provisions.

**D. Counterparts**

This Contract may be executed in multiple identical original counterparts, all of which shall constitute 1 agreement.

## E. Entire Understanding

This Contract represents the complete integration of all understandings between the Parties and all prior representations and understandings, oral or written, are merged herein. Prior or contemporaneous additions, deletions, or other changes hereto shall not have any force or effect whatsoever, unless embodied herein.

## F. Indemnification

Contractor shall indemnify, save, and hold harmless the State, its employees and agents, against any and all claims, damages, liability and court awards including costs, expenses, and attorney fees and related costs, incurred as a result of any act or omission by Contractor, or its employees, agents, Subcontractors, or assignees pursuant to the terms of this Contract or any Task Order; however, the provisions hereof shall not be construed or interpreted as a waiver, express or implied, of any of the immunities, rights, benefits, protection, or other provisions, of the Colorado Governmental Immunity Act, CRS §24-10-101 et seq., or the Federal Tort Claims Act, 28 USC §2671 et seq., as applicable, as now or hereafter amended.

## G. Jurisdiction and Venue

All suits or actions related to this Contract or any Task Order shall be filed and proceedings held in the State of Colorado and exclusive venue shall be in the City and County of Denver.

## H. Modification

### i. By the Parties

Except as specifically provided in this Contract, modifications of this Contract shall not be effective unless agreed to in writing by the Parties in an amendment to this Contract, properly executed and approved in accordance with applicable Colorado State law, State Fiscal Rules. Modifications permitted under this Contract, other than contract amendments, shall conform with the Policies of the Office of the State Controller, including, but not limited to, the policy entitled MODIFICATIONS OF CONTRACTS - TOOLS AND FORMS.

### ii. By Operation of Law

This Contract and all Task Orders are subject to such modifications as may be required by changes in Federal or Colorado State law, or their implementing regulations. Any such required modification shall automatically be incorporated into and be part of this Contract and such Task Orders on the effective date of such change, as if fully set forth herein.

## I. Order of Precedence

The provisions of this Contract shall govern the relationship of the Parties. In the event of conflicts or inconsistencies between this Contract and its exhibits and attachments, including, but not limited to, those provided by Contractor, such conflicts or inconsistencies shall be resolved by reference to the documents in the following order of priority:

i. Colorado Special Provisions,

ii. The provisions of the main body of this Contract,

iii. Exhibit A – Safeguarding Federal Tax Inforamtion ("FTI"),

iv. Exhibit B – Statement of Work,

v. Exhibit C – Pricing and Rates,

vi. The provisions of any Task Order.

## J. Severability

Provided this Contract can be executed and performance of the obligations of the Parties accomplished within its intent, the provisions hereof or of any Task Order are severable and any provision that is declared invalid or becomes inoperable for any reason shall not affect the validity of any other provision hereof, provided that the Parties can continue to perform their obligations under this Contract or such Task Order in accordance with its intent.

## K. Survival of Certain Contract Terms

Notwithstanding anything herein to the contrary, provisions of this Contract or of any Task Order requiring continued performance, compliance, or effect after termination hereof, shall survive such termination and shall be enforceable by the State if Contractor fails to perform or comply as required.

**L. Taxes**

The State is exempt from all federal excise taxes under IRC Chapter 32 (No. 84-730123K) and from all State and local government sales and use taxes under CRS §§39-26-101 and 201 et seq. Such exemptions apply when materials are purchased or services are rendered to benefit the State; provided however, that certain political subdivisions (e.g., City of Denver) may require payment of sales or use taxes even though the product or service is provided to the State. Contractor shall be solely liable for paying such taxes as the State is prohibited from paying or reimbursing Contractor for such taxes.

**M. Third Party Beneficiaries**

Enforcement of this Contract, Task Orders, and all rights and obligations hereunder are reserved solely to the Parties. Any services or benefits which third parties receive as a result of this Contract or any Task Order are incidental to the Contract, and do not create any rights for such third parties.

**N. Waiver**

Waiver of any breach under a term, provision, or requirement of this Contract or any Task Order, or any right or remedy hereunder, whether explicitly or by lack of enforcement, shall not be construed or deemed as a waiver of any subsequent breach of such term, provision or requirement, or of any other term, provision, or requirement.

**O. CORA Disclosure**

To the extent not prohibited by federal law, this Contract, each Task Order, and the performance measures and standards under CRS §24-103.5-101, if any, are subject to public release through the Colorado Open Records Act, CRS §24-72-101, et seq.

## 21. COLORADO SPECIAL PROVISIONS

These Special Provisions apply to all Contracts except where noted in italics. For purposes of this **§21**, the term "Contract" shall include all Task Orders issued hereunder.

**A. CONTROLLER'S APPROVAL. CRS §24-30-202 (1).**

This Contract shall not be valid until it has been approved by the Colorado State Controller or designee.

**B. FUND AVAILABILITY. CRS §24-30-202(5.5).**

Financial obligations of the State payable after the current fiscal year are contingent upon funds for that purpose being appropriated, budgeted, and otherwise made available.

**C. GOVERNMENTAL IMMUNITY.**

No term or condition of this Contract shall be construed or interpreted as a waiver, express or implied, of any of the immunities, rights, benefits, protections, or other provisions, of the Colorado Governmental Immunity Act, CRS §24-10-101 et seq., or the Federal Tort Claims Act, 28 USC §§1346(b) and 2671 et seq., as applicable now or hereafter amended.

**D. INDEPENDENT CONTRACTOR**

Contractor shall perform its duties hereunder as an independent contractor and not as an employee. Neither Contractor nor any agent or employee of Contractor shall be deemed to be an agent or employee of the State. Contractor and its employees and agents are not entitled to unemployment insurance or workers compensation benefits through the State and the State shall not pay for or otherwise provide such coverage for Contractor or any of its agents or employees. Unemployment insurance benefits will be available to Contractor and its employees and agents only if such coverage is made available by Contractor or a third party. Contractor shall pay when due all applicable employment taxes and income taxes and local head taxes incurred pursuant to this Contract. Contractor shall not have authorization, express or implied, to bind the State to any agreement, liability or understanding, except as expressly set forth herein. Contractor shall **(a)** provide and keep in force workers' compensation and unemployment compensation insurance in the amounts required by law, **(b)** provide proof thereof when requested by the State, and **(c)** be solely responsible for its acts and those of its employees and agents.

### E.  COMPLIANCE WITH LAW.

Contractor shall strictly comply with all applicable federal and State laws, rules, and regulations in effect or hereafter established, including, without limitation, laws applicable to discrimination and unfair employment practices.

### F.  CHOICE OF LAW.

Colorado law, and rules and regulations issued pursuant thereto, shall be applied in the interpretation, execution, and enforcement of this Contract. Any provision included or incorporated herein by reference which conflicts with said laws, rules, and regulations shall be null and void. Any provision incorporated herein by reference which purports to negate this or any other Special Provision in whole or in part shall not be valid or enforceable or available in any action at law, whether by way of complaint, defense, or otherwise. Any provision rendered null and void by the operation of this provision shall not invalidate the remainder of this Contract, to the extent capable of execution.

### G.  BINDING ARBITRATION PROHIBITED.

The State of Colorado does not agree to binding arbitration by any extra-judicial body or person. Any provision to the contrary in this Contact or incorporated herein by reference shall be null and void.

### H.  SOFTWARE PIRACY PROHIBITION. Governor's Executive Order D 002 00.

State or other public funds payable under this Contract shall not be used for the acquisition, operation, or maintenance of computer software in violation of federal copyright laws or applicable licensing restrictions. Contractor hereby certifies and warrants that, during the term of this Contract and any extensions, Contractor has and shall maintain in place appropriate systems and controls to prevent such improper use of public funds. If the State determines that Contractor is in violation of this provision, the State may exercise any remedy available at law or in equity or under this Contract, including, without limitation, immediate termination of this Contract and any remedy consistent with federal copyright laws or applicable licensing restrictions.

### I.  EMPLOYEE FINANCIAL INTEREST/CONFLICT OF INTEREST. CRS §§24-18-201 and 24-50-507.

The signatories aver that to their knowledge, no employee of the State has any personal or beneficial interest whatsoever in the service or property described in this Contract. Contractor has no interest and shall not acquire any interest, direct or indirect, that would conflict in any manner or degree with the performance of Contractor's services and Contractor shall not employ any person having such known interests.

### J.  VENDOR OFFSET. CRS §§24-30-202 (1) and 24-30-202.4.

**[Not applicable to intergovernmental agreements]** Subject to CRS §24-30-202.4 (3.5), the State Controller may withhold payment under the State's vendor offset intercept system for debts owed to State agencies for: **(a)** unpaid child support debts or child support arrearages; **(b)** unpaid balances of tax, accrued interest, or other charges specified in CRS §39-21-101, et seq.; **(c)** unpaid loans due to the Student Loan Division of the Department of Higher Education; **(d)** amounts required to be paid to the Unemployment Compensation Fund; and **(e)** other unpaid debts owing to the State as a result of final agency determination or judicial action.

### K.  PUBLIC CONTRACTS FOR SERVICES. CRS §8-17.5-101.

**[Not applicable to agreements relating to the offer, issuance, or sale of securities, investment advisory services or fund management services, sponsored projects, intergovernmental agreements, or information technology services or products and services]** Contractor certifies, warrants, and agrees that it does not knowingly employ or contract with an illegal alien who will perform work under this Contract and will confirm the employment eligibility of all employees who are newly hired for employment in the United States to perform work under this Contract, through participation in the E-Verify Program or the State program established pursuant to CRS §8-17.5-102(5)(c), Contractor shall not knowingly employ or contract with an illegal alien to perform work under this Contract or enter into a contract with a Subcontractor that fails to certify to Contractor that the Subcontractor shall not knowingly employ or contract with an illegal alien to perform work under this Contract. Contractor **(a)** shall not use E-Verify Program or State program procedures to undertake pre-employment screening of job applicants while this Contract is being performed, **(b)** shall notify the Subcontractor and the contracting State agency within three days if Contractor has actual

knowledge that a Subcontractor is employing or contracting with an illegal alien for work under this Contract, **(c)** shall terminate the subcontract if a Subcontractor does not stop employing or contracting with the illegal alien within three days of receiving the notice, and **(d)** shall comply with reasonable requests made in the course of an investigation, undertaken pursuant to CRS §8-17.5-102(5), by the Colorado Department of Labor and Employment. If Contractor participates in the State program, Contractor shall deliver to the contracting State agency, Institution of Higher Education or political subdivision, a written, notarized affirmation, affirming that Contractor has examined the legal work status of such employee, and shall comply with all of the other requirements of the State program. If Contractor fails to comply with any requirement of this provision or CRS §8-17.5-101 et seq., the contracting State agency, institution of higher education or political subdivision may terminate this Contract for breach and, if so terminated, Contractor shall be liable for damages.

**L.  PUBLIC CONTRACTS WITH NATURAL PERSONS. CRS §24-76.5-101.**

Contractor, if a natural person eighteen (18) years of age or older, hereby swears and affirms under penalty of perjury that he or she **(a)** is a citizen or otherwise lawfully present in the United States pursuant to federal law, **(b)** shall comply with the provisions of CRS §24-76.5-101 et seq., and **(c)** has produced one form of identification required by CRS §24-76.5-103 prior to the effective date of this Contract.

SPs Effective 1/1/09

Contract Routing Number

## THE PARTIES HERETO HAVE EXECUTED THIS CONTRACT

> \* Persons signing for Contractor hereby swear and affirm that they are authorized to act on Contractor's behalf and acknowledge that the State is relying on their representations to that effect.

| CONTRACTOR<br>innoWake International, Inc. | STATE OF COLORADO<br>John W. Hickenlooper GOVERNOR |
|---|---|
| By:     Arne Gerhard<br>Print Name of Authorized Individual<br><br>Title:   Co Founder<br><br><br>*Signature<br><br>Date:     June 1st, 2012 | Governor's Office of Information Technology<br>Kristin Russell, Secretary of Technology and State Chief Information Officer<br><br>By:<br>By: Todd Olson, Chief Financial Officer<br><br>Date:   6-7-12 |
|  | LEGAL REVIEW<br>John W. Suthers, Attorney General<br><br>By:<br>Signature - Assistant Attorney General<br><br>Date: |

## ALL CONTRACTS REQUIRE APPROVAL BY THE STATE CONTROLLER

> CRS §24-30-202 requires the State Controller to approve all State Contracts. This Contract is not valid until signed and dated below by the State Controller or delegate. Contractor is not authorized to begin performance until such time. If Contractor begins performing prior thereto, the State of Colorado is not obligated to pay Contractor for such performance or for any goods and/or services provided hereunder.

STATE CONTROLLER
David J. McDermott, CPA

By:

Date:   6/7/12

**EXHIBIT A – SAFEGUARDING FEDERAL TAX  INFORMATION ("FTI")**

Pursuant to Internal Revenue Service, Publication 1075, Exhibit 7, Contract Language for General Services, the Contractor agrees to comply with the following:

**1. Performance**

In performance of this Contract, the Contractor agrees to comply with and assume responsibility for compliance by his or her employees with the following requirements:

**A.** All Work will be performed under the supervision of the Contractor or the Contractor's responsible employees.

**B.** Any Federal tax returns or return information (hereafter referred to as returns or return information) made available shall be used only for the purpose of carrying out the provisions of this Contract. Information contained in such material shall be treated as confidential and shall not be divulged or made known in any manner to any person except as may be necessary in the performance of this Contract. Inspection by or disclosure to anyone other than an officer or employee of the Contractor is prohibited.

**C.** All returns and return information will be accounted for upon receipt and properly stored before, during, and after processing. In addition, all related output and products will be given the same level of protection as required for the source material.

**D.** No work involving returns and return information furnished under this Contract will be subcontracted without prior written approval of the IRS.

**E.** The Contractor will maintain a list of employees authorized access. Such list will be provided to the State and, upon request, to the IRS reviewing office.

**F.** The State will have the right to void the Contract if the Contractor fails to provide the safeguards described above.

**2. Criminal/Civil Sanctions**

**A.** Each officer or employee of any person to whom returns or return information is or may be disclosed shall be notified in writing by such person that returns or return information disclosed to such officer or employee can be used only for a purpose and to the extent authorized herein, and that further disclosure of any such returns or return information for a purpose or to an extent unauthorized herein constitutes a felony punishable upon conviction by a fine of as much as $5,000 or imprisonment for as long as five years, or both, together with the costs of prosecution. Such person shall also notify each such officer and employee that any such unauthorized future disclosure of returns or return information may also result in an award of civil damages against the officer or employee in an amount not less than $1,000 with respect to each instance of unauthorized disclosure. These penalties are prescribed by IRC §§7213 and 7431 and set forth at 26 CFR §301.6103(n)-1.

**B.** Each officer or employee of any person to whom returns or return information is or may be disclosed shall be notified in writing by such person that any return or return information made available in any format shall be used only for the purpose of carrying out the provisions of this Contract. Information contained in such material shall be treated as confidential and shall not be divulged or made known in any manner to any person except as may be necessary in the performance of this Contract. Inspection by or disclosure to anyone without an official need to know constitutes a criminal misdemeanor punishable upon conviction by a fine of as much as $1,000 or imprisonment for as long as 1 year, or both, together with the costs of prosecution. Such person shall also notify each such officer and employee that any such unauthorized inspection or disclosure of returns or return information may also result in an award of civil damages against the officer or employee [United States for Federal employees] in an amount equal to the sum of the greater of $1,000 for each act of unauthorized inspection or disclosure with respect to which such defendant is found liable or the sum of the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure plus in the case of a willful inspection or disclosure which is the result of gross negligence, punitive damages, plus the costs of the action. The penalties are prescribed by IRC §§7213A and 7431. (3) Additionally, it is incumbent upon the Contractor to inform its officers and employees of the penalties for improper disclosure imposed by the Privacy Act of 1974, 5 USC §552a ("Privacy Act"). Specifically, 5 USC §552a(i)(1), which is made applicable to Contractors by 5 USC §552a(m)(1), provides that any officer or employee of a Contractor, who

by virtue of his/her employment or official position, has possession of or access to the State records which contain individually identifiable information, the disclosure of which is prohibited by the Privacy Act or regulations established thereunder, and who knowing that disclosure of the specific material is so prohibited, willfully discloses the material in any manner to any person or agency not entitled to receive it, shall be guilty of a misdemeanor and fined not more than $5,000.

**C.** Granting a Contractor access to FTI must be preceded by certifying that each individual understands the State' security policy and procedures for safeguarding IRS information. Contractors must maintain their authorization to access FTI through annual recertification. The initial certification and recertification must be documented and placed in the State' files for review. As part of the certification and at least annually afterwards, Contractors should be advised of the provisions of IRC §§7431, 7213, and 7213A (see Exhibit 6, IRC §7431 Civil Damages for Unauthorized Disclosure of Returns and Return Information and Exhibit 5, IRC §7213 Unauthorized Disclosure of Information). The training provided before the initial certification and annually thereafter must also cover the incident response policy and procedure for reporting unauthorized disclosures and data breaches. (See **§10**) For both the initial certification and the annual certification, the Contractor should sign, either with ink or electronic signature, a confidentiality statement certifying their understanding of the security requirements.

## 3. Inspections

The IRS and the State shall have the right to send its officers and employees into the offices and plants of the Contractor for inspection of the facilities and operations provided for the performance of any Work under this Contract. On the basis of such inspection, specific measures may be required in cases where the Contractor is found to be noncompliant with Contract safeguards.

**EXHIBIT B – STATEMENT OF WORK**

**1. Introduction**

The State requires specialized technical services to Migrate to contemporary operating platforms certain legacy business application systems used by the State. Each Migration provided pursuant to this Contract shall be the subject of a separate Task Order in accordance with **§6.D** of this Contract. Each Legacy System Migrated under this Contract shall move to a modern programming language and hardware platform while preserving all of its original functionality and business process structures. From a user's perspective, the behavior of each Migrated application shall be identical to that of the original application. The Migration shall have no impact with respect to performance, timing, frequency, or any other properties of the original application apparent to the user. In addition, there shall be no impact on usability during a Migration.

Each Migration performed by Contractor shall include the following elements unless specifically excluded in the associated Task Order:

Contractor shall employ a toolset that allows up to 100% automatic conversion. The conversion shall be customizable according to the State's requirements regarding the resulting code conventions. Such conventions include, but are not limited to, the following:

**A.** Coding style (i.e., where to place {}s, how to comment (// vs /**/), etc.);
**B.** Variable naming (what to do with illegal symbols such as #, -, keywords);
**C.** Object naming;
**D.** Method naming (subroutines to methods); and/or
**E.** Copycode unfolding.

**2. Target Platform Architecture**

Each Migrated Legacy System shall operate on a Target Platform compatible with the State's existing web platform and operating environment. The Target Platform and its properties shall be specified in the pertinent Task Order.

**3. Project Plan**

Prior to the start of each Migration Contractor shall deliver a project plan for the State's review and written approval. The proposed plan shall comply with Project Management Institute (PMI) standards and project management best practices.

**4. Migration Project Team**

Not less than 30 days before the scheduled start of each Migration, Contractor shall provide the State with the name, job title, role, and qualifications of each proposed member of the project management team, together with resumes and references for each named individual. Resumes shall describe each person's educational background, experience, and other pertinent professional data in sufficient detail to demonstrate each person's qualifications for the project. The State shall have the right, without further authorization, to verify references and sources provided by Contractor.

**5. Implementation Phases**

**A. Initial Component Build**

During this phase of the Migration Contractor shall provide the State with training and tooling necessary to the State to support the application as required by the State.

**B. Pilot Implementation**

The pilot implementation of the Migration shall run the Legacy System and Target Platform side by side. Immediate fallback to the Legacy System shall be available at all times during this phase. The State shall continue to maintain the Legacy System while Migration to the Target Platform is being completed. This phase shall last as long as the State requires to increase load or volume or add more users.

**C. Statewide Implementation**

During this phase of the Migration, any mainframe dependent components shall be moved by Contractor to an Open System (OS).  The Contractor shall perform the following:

    **i.** Migration of any z/OS dependent component to web architecture
- Batch jobs
- Assembler, Cobol
- Interfaces

    **ii.** Performance testing of any additional hardware components the State provides.  During this step, Contractor shall verify the performance of the production hardware, to ensure desired response times.

## 6. Code and Data Migration

### A. Functionally Equivalent Migrated System

Each Target Platform shall be functionally equivalent to the Legacy System and in an environment compatible with the then existing Legacy System environment.  A "functionally equivalent" system shall be one that continues to support all existing application functionality with no changes to State agency business processes and minimal changes to the end  users' experience.

### B. No Disruption of Operations

Each Target Platform shall perform at a level which does not disrupt operations of other agencies dealing with the State agency for which the Migration was performed, without regard to whether such other agencies are State agencies or agencies of other governmental entities.

### C. Maintenance of Migrated System

Each Target Platform shall allow the State to maintain the system without the use of proprietary tools or libraries such as run-time conversion engines.  If the Migration requires the conversion of programming code using automated tools, the resulting "new" programming code must be readable and maintainable programming code.  The size of the codebase of the Target Platform shall not be unduly larger than the size of the Legacy System.

### D. Training and Support

Contractor shall provide the State with all necessary training to allow the State to provide on-going support, maintenance and enhancement of the Target Platform, without on-going third-party development support and without the need for any proprietary compilation toolset.

### E. No changes for end-users

There shall be no change in the end-user layer of any application Migrated.  Migrated applications shall be delivered to the end-user in exactly the same way that the original application was delivered.

## 7. Bad data detection and correction

### A. Corrupt data based on definition

Contractor shall find corrupt data based on the data definition (e.g., DDM, FDT) and the actual data content (e.g., using alphanumeric characters in numeric fields).

### B. Original data corrupt

If data has been corrupted from previous data transfers, Contractor's data transfer programs shall detect such corrupt data and correct it where possible.  Contractor shall perform all labor required to analyze the corrupt data and define a clean-up policy for each Migration.

### C. Physically OK but logically corrupt data

If data is logically corrupt (i.e., missing foreign keys) Contractor will require the State's assistance to fix the data.  In addition to correct data, Contractor's conversion mechanism requires correct code, so the entire application must be in a state in which a catall over all the code produces the actual application running in production.  The State will ensure all code is correct.

## 8. Testing

Contractor shall provide to the State a testing plan for the converted code and Target Platform.  Testing shall include unit testing, system integration testing, regression testing, performance testing, and user acceptance testing by a group that includes representation of workers outside the agency who interact with agency systems.

The Contractor shall ensure the results of all testing are identical to the results of the same processes run against the Legacy System. Each Task Order shall identify the appropriate Party responsible for conducting the testing.

## 9. Final Acceptance Criteria

Unless the Parties agree to different criteria in a Task Order, final acceptance criteria will include the following. The State has written approval over all deliverables:

**A.** Development methodology is clear, and new development is possible;

**B.** Changes can be promoted from the development environment through the test environment and into production without disruption;

**C.** The Target Platform contains the same number of screens and workflows as the Legacy System;

**D.** The same keyboard shortcuts are available in the Target Platform and the Legacy System;

**E.** The same menuing / direct command capabilities are available in the Target Platform and the Legacy System; and

**F.** The Target Platform responds within the same response time as the Legacy System.

## 10. Migration warranties

Contractor shall warrant that each Target Platform is free of errors that cause material deviation from the requirements specified in this Contract, and any specific requirements specified in the associated Task Order, for a period of 6 months after the date of the State's final written acceptance of the Target Platform. Contractor shall maintain an on-site presence in Colorado after completion of the statewide deployment of each Target Platform until final acceptance of the Target Platform. During the 6 month warranty period, Contractor shall correct all essential, critical and major errors or deficiencies in the Target Platform at no additional cost to the State. Essential, critical and major deficiencies are defined as follows:

**A. Essential Deficiencies**

"Essential Deficiencies" means defects that result in the failure of a complete software system, of a subsystem, or of a software unit (program or module) within the Target Platform. Data corruption, inability to use the complete software system or subsystem, or unacceptable system performance would all fall into this category.

**B. Critical Deficiencies**

"Critical Deficiencies" means defects that result in failure of a major functionality, with no workaround. Frequent or reproducible crashes would fall into this category, as would a failure of a major functionality to work.

**C. Major Deficiencies**

"Major Deficiencies" means defects that do not result in failure, but cause the system to produce incorrect, incomplete or inconsistent results, or which materially impair the Target Platform's usability.

**D. Minor Deficiencies**

"Minor Deficiencies" means defects that do not result in failure, but a work around exists and will be fixed during a regular scheduled product update or patch release.

## 11. Adaptation

The State has sole discretion in choosing a Target Platform for each Migration. If a different Target Platform for example, Microsoft .NET is chosen Contractor shall accommodate that request. Unless the State indicates otherwise, when Contractor formulates each Task Order proposal Contractor shall assume that the State will retain its current subject matter experts to maintain and adapt the system in the future. Unless advised to the contrary, Contractor shall assume the State will retain the specialized logic contained in the application. Where technical improvements are required (including, without limitation migrating from Natural to Java, Adabas to SQL, mainframe to open systems, green screen to web interfaces) Contractor shall provide the tooling, expertise, and training as required by the State to enable the State to perform these tasks on the application. Unless the State agrees otherwise in writing Contractor shall plan each Migration to achieve the following:

**A.** Improvements in the application where necessary;

**B.** Solid foundation for future development (.NET or Java, SQL);

**C.** Web framework architecture;

**D.** 100% same functionality as Legacy System.

## 12. Modernization

If Modernization is required by the State in the relevant Task Order, Contractor shall Modernize the Legacy System from the ground up reusing as much of the system as possible to retain existing business logic.  Each Modernization shall:

**A.** Provide an environment in which the process to build future new requirements to the system is simplified;

**B.** Extract existing business logic from the system in a reusable fashion;

**C.** Provide service-oriented architecture that allows the separation of logical application layers (user interface, control layer, business logic and application logic) and reuse of business rules in other parts of the system;

**D.** Deliver a web-based application.

Contractor shall design each Modernized system so that it is sufficiently flexible to accommodate any impact arising from future innovation.

## 13. Maintenance

### A. Runtime Software Maintenance

Upon final acceptance of the Target Platform by the State, Contractor shall maintain any runtime software used for the Migration process for a period of 5 years after final acceptance at no additional cost to the State. Contractor shall provide updates to the current releases of the runtime software during the 5 year period and shall ensure the then current version of the runtime software is installed and operating with the Target Platform. Notwithstanding anything to the contrary in this Contract, Contractor's responsibility to provide runtime software maintenance shall survive termination of the Contract.

### B. Life-Cycle Management Software and Task Management Software

Following final acceptance of the Target Platform, the State may, in its sole discretion, elect optional maintenance for life-cycle management software and task management software at the annual maintenance rates set forth in **Exhibit C, Table C-6**.  In the event a partial year is elected, the cost shall be prorated accordingly.

### C. Custom Maintenance Services

The State may, in its sole discretion, elect to acquire custom maintenance services from the Contractor on a time and materials basis at the rates in **Exhibit C**.  Such custom maintenance shall be specified on the relevant Task Order or via option letter.

**EXHIBIT C – PRICES AND RATES**

The pricing listed below includes all fees, costs and expenses, including but not limited to, labor costs, travel expenses, parts, services, repair, removal, replacement, mileage charges, supplies, mailing charges, installation, testing, communications, order and order tracking, reporting, debugging, analysis, delivery charges and other expenses including license fees, and expenses for the Migrations and Modernizations for the associated systems.

The pricing listed below in **Table C-1** is based on the assumption that the applications listed will be Migrated to a Java Target Platform. **Table C-1**'s pricing is pricing solely for the migration of the Departement of Labor and Employment's Colorado Automated Tax System (CATS), the Departement of Labor and Employment's Workers' Compensation System (WCS), and the Department of Revenue's Drivers' License System (DLS) to a Java Target Platform.

| Table C-1, Java Target Platform Migration and Modernization Pricing ||
|---|---|
| **Description** | **Pricing** |
| CATS Single Migration to Java Target Platform | $2,000,000 |
| WCS Single Migration to Java Target Platform | $4,000,000 |
| DLS Single Migration to Java Target Platform | $6,000,000 |
| CATS and WCS Simultaneous Migration to Java Platform | $4,800,000 |
| CATS and DLS Simultaneous Migration to Java Platform | $6,400,000 |
| WCS and DLS Simultaneous Migration to Java Platform | $8,000,000 |
| CATS, WCS and DLS Simultaneous Migration to Java Platform | $8,300,000 |

The pricing listed below in **Table C-2** is based on the assumption that the applications listed will be Migrated to a .NET Target Platform instead of the Java Target Platform assumed in **Table C-1**. **Table C-2**'s pricing is pricing solely for the Migration of CATS, WCS, and DLS to a .NET Target Platform.

| Table C-2, Optional Migration Pricing for .NET Target Platform ||
|---|---|
| **Description** | **Pricing** |
| CATS Single Migration to .NET Target Platform | $2,750,000 |
| WCS Single Migration to .NET Target Platform | $5,000,000 |
| DLS Single Migration to .NET Target Platform | $7,000,000 |
| CATS and WCS Simultaneous Migration to .NET Target Platform | $6,200,000 |
| CATS and DLS Simultaneous Migration to .NET Target Platform | $7,800,000 |
| WCS and DLS Simultaneous Migration to .NET Target Platform | $9,600,000 |
| CATS, WCS and DLS Simultaneous Migration to .NET Target Platform | $11,050,000 |

The pricing listed below in **Table C-3** represents the pricing for Modernization services, which remains the same regardless of whether the Target Platform being Modernized is platformed in Java or .NET. **Table C-3**'s pricing is pricing solely for the Modernization of CATS, WCS, and DLS.

| Table C-3, Modernization Pricing ||
|---|---|
| **Description** | **Pricing** |
| CATS Modernization for either Java Platform or .NET Platform | $1,000,000 |
| WCS Modernization for either Java Platform or .NET Platform | $2,000,000 |
| DLS Modernization for either Java Platform or .NET Platform | $3,000,000 |

The pricing listed below in **Table C-4** represents the base pricing for Migration and Modernization services that may be requested by the State for future State agency Migration and Modernization projects that have not been specifically identified in **Table C-1**, **Table C-2**, or **Table C-3** above. The pricing is subject to the Contractor's individual assessment of each individual State agency's Legacy System and modules and the pricing listed below may increase or decrese based on the complexities and size of each individual State agency's Legacy System being Migrated or Modernized.

| Table C-4, Future Migration and Modernization Base Pricing | | |
|---|---|---|
| **Description** | **One-By-One Migration** | **Modernization** |
| Future System Java Migration | $1,000/module | $500/module |
| Future System.NET Migration | $250,000 fee + $1,250/module | $500/module |

If two (2) State agencies participate in a simultaneous Migration Contractor shall discount the total Migration pricing contained in **Table C-4** for both Migrations by twenty percent (20%); if three (3) or more State agencies participate in a simulatneous Migration Contractor shall discount the pricing contained in **Table C-4** for all associated Migrations by thirty-one percent (31%). The discount stated in the prevous sentence shall apply to either Java Target Platform Migration or .NET Target Platform Migration proposals based on the pricing contained in **Table C-4** and shall be provided after Contractor has an opportunity to evaluate and provide a firm pricing quote for each State agency system being Migrated.

| Table C-5, Optional Maintenance Pricing | |
|---|---|
| Hourly Maintenance Rate | $125 |

The pricing listed below in **Table C-6** represents pricing for annual maintenance to the Life-Cycle Management Software and Task Management Software as specifically discssued in **Exhibit B, §13.B**.

| Table C-6, Optional Annual Lifecycle Management  and Task Management Software Maintenance Rates | |
|---|---|
| Annual Maintenance for 20 user licenses | $21,980 |
| Annual Maintenance for more than 20 user licenses | Pro-rated based on rate above |

The Contractor shall provide all software products required for each Migration that are not currently used by the State.

The pricing reflected in the above tables of this **Exhibit C** shall remain fixed through the end of the term of the Contract including extensions.

During the term of this Contract the State, in its sole discretion, may increase or decrease the level of goods or services at the unit prices specified in this Contract. The State may exercise this option by providing a fully executed option letter to the Contractor in a form substantially equivalent to **Exhibit E**.

## EXHIBIT D – FORM OF TASK ORDER LETTER

| Date: | State Fiscal Year: | Task Order Letter # | CMS Routing # |
|-------|--------------------|--------------------|--------------|

In accordance with Section          of the Master Contract routing number          between the State of Colorado, ,
Governor's Office of Information Technology**,** and innoWake International, Inc. beginning Insert start date and
ending on Insert ending date, the provisions of the Master Contract and any amendments thereto affected by this
Task Order are modified as follows

1) **Task Order Description.** Contractor shall perform the task(s) listed in Contractor's Task Order proposal
   dated        , which is incorporated by reference herein as Task Order #        in accordance with the provisions
   of the Master Contract (CLIN/CMS routing #        ).

2) **Price/Cost.** The maximum amount payable by the State for performance of this Task Order is $        . The
   total Master Contract value including all previous amendments, Task Orders, etc., is $        .

3) **Performance Period.** Contractor shall complete its obligations under this Task Order on or before        .

4) **Effective Date.** The effective date hereof is upon approval of the State Controller or        , whichever is later.

### THE PARTIES HERETO HAVE EXECUTED THIS CONTRACT

> **\* Persons signing for Contractor hereby swear and affirm that they are authorized to act on Contractor's
> behalf and acknowledge that the State is relying on their representations to that effect.**

| CONTRACTOR<br>**innoWake International, Inc.** | STATE OF COLORADO<br>**John W. Hickenlooper, GOVERNOR** |
|---|---|
| By:_____<br>Print name of authorized individual<br><br>Title: _____<br><br><br>By:_____<br>Signature<br><br><br>Date:_____ | **Governor's Office of Information Technology**<br>Kristin Russell, Secretary of Technology and State Chief Information Officer<br><br>By:_____<br>By: Todd Olson, Chief Financial Officer<br><br>Date:_____ |

### ALL CONTRACTS REQUIRE APPROVAL BY THE STATE CONTROLLER

> **CRS §24-30-202 requires the State Controller to approve all State Contracts. This Contract is not valid until signed and dated below by the
> State Controller or delegate. Contractor is not authorized to begin performance until such time. If Contractor begins performing prior thereto,
> the State of Colorado is not obligated to pay Contractor for such performance or for any goods and/or services provided hereunder.**

| STATE CONTROLLER<br>**David J. McDermott, CPA** |
|---|
| By:_____<br>Date:_____ |

**EXHIBIT E – FORM OF OPTION LETTER**

| Date: | State Fiscal Year: | Task Order Letter # | CMS Routing # |
|-------|-------------------|--------------------|--------------|
|       |                   |                    |              |

1) **OPTIONS:** Choose applicable options allowed in the Contract listed in §1 and in §2 and delete the rest.
   **a.** Option to renew only *(for an additional term)*

2) **REQUIRED PROVISIONS.** All Option Letters shall contain the appropriate provisions set forth below:
   **a.** In accordance with Section(s)         of the Original Contract between the State of Colorado, by and
   through the Governor's Office of Information Technology, and innoWake International, Inc., the State
   hereby exercises its option for an additional term beginning Insert start date and ending on Insert ending
   date at a cost/price specified in **Exhibit C – Prices and Rates** .

3) **Effective Date**. The effective date of this Option Letter is upon approval of the State Controller.

---

**STATE OF COLORADO**
**John W. Hickenlooper, GOVERNOR**
**Governor's Office of Information Technology**
Kristin Russell, Secretary of Technology and State Chief Information Officer

By:_____
By: Todd Olson, Chief Financial Officer
Date:_____

---

**ALL CONTRACTS REQUIRE APPROVAL BY THE STATE CONTROLLER**

CRS §24-30-202 requires the State Controller to approve all State Contracts. This Contract is not valid until signed and dated below by
the State Controller or delegate. Contractor is not authorized to begin performance until such time. If Contractor begins performing prior
thereto, the State of Colorado is not obligated to pay Contractor for such performance or for any goods and/or services provided
hereunder.

---

**STATE CONTROLLER**
**David J. McDermott, CPA**

By:_____
Date:_____