**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL CULBERTSON, KATHY NEAL, KELLY ALLISON-PICKERING, JESSICA HAIMAN, ALEXANDER CABOT, BRIANA JULIUS, NICHELLE NEWLAND, BERNADETTE NOLEN and ALEXANDREA POLICHENA, *individually and on behalf of all others similarly situated*, | Case No.: 1:20-cv-3962-LJL |
| Plaintiffs, | |
| v. | |
| DELOITTE CONSULTING LLP, | |
| Defendant. | |

**DEFENDANT DELOITTE CONSULTING LLP'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

RELEVANT BACKGROUND ...........................................................................................3

   I.  The Pandemic Unemployment Assistance (PUA) Program ...............................3

   II.  The May 2020 Data Incident ................................................................................3

   III. The Instant Actions and The *Bozin* Plaintiffs' Unsuccessful TRO Motion........................4

   IV. Plaintiffs' Prior Consolidated Complaint and Deloitte's Motion to Dismiss ....................5

   V.  Plaintiffs' Amended Consolidated Complaint ....................................................7

STANDARD.........................................................................................................................8

ARGUMENT........................................................................................................................9

   I.  Plaintiffs' Amended Complaint Fails to Allege Facts Supporting Article III
      Standing. ................................................................................................................9

      A.  Plaintiffs Lack Standing Because They do not Allege that Their Information
          Was Intentionally Targeted and Stolen by an Unauthorized Party (*e.g.* a
          Hacker or Cybercriminal). ............................................................................10

      B.  Plaintiffs' Specific Alleged Injuries do not Constitute Concrete "Injuries-in-
          Fact" for Purposes of Standing. ...................................................................12

      C.  Any Sufficiently Alleged Injury is Not Fairly Traceable to The Data Incident. .........15

   II. Plaintiffs' Amended Complaint Fails to State a Claim Under Rule 12(b)(6)....................19

      A.  All of Plaintiffs' Claims Fail Because Plaintiffs Fail to Allege Legally
          Cognizable Injuries That Were Proximately Caused by Deloitte. ...............................19

          i.   Plaintiffs fail to plead a legally cognizable injury. .................................................20

          ii.  Plaintiffs fail to allege that the Data Incident was the actual or proximate
               cause of their alleged injuries. ..........................................................................22

      B.  All of Plaintiffs' Tort Claims Fail for Multiple Additional Reasons..........................24

          i.   The economic loss doctrine bars *all* of Plaintiffs' tort claims because
               Plaintiffs allege only economic—as opposed to physical—injuries.....................24

          ii.  Count I (Negligence): Plaintiffs fail to identify any legal duty requiring
               Deloitte to protect their personal information.....................................................25

iii.   Count II (Negligence *per se*): Plaintiffs' negligence *per se* claim fails because the FTC Act does not prohibit specific conduct......................................27

iv.   Count III (Invasion of Privacy): Plaintiffs' allegations fail to state a claim for invasion of privacy. ..........................................................................28

v.   Count V (Bailment): Personal information is not subject to a bailment claim.........................................................................................................29

vi.   Count IX (Breach of Confidence): Plaintiffs fail to allege facts supporting a breach of confidence claim. ...................................................................30

C.   All of Plaintiffs' Contractual and Quasi-Contractual Claims Fail.............................31

i.   Count VI (Breach of Contract): Plaintiffs cannot establish that they are third party beneficiaries of the contracts between Deloitte and the states.............31

ii.   Count VII (Breach of Implied Contract): Plaintiffs' breach of implied contract claim fails because Plaintiffs have not alleged any direct relationship—or even contact—with Deloitte. .......................................33

iii.   Count VIII (Breach of Implied Covenant of Good Faith): The lack of any contract defeats Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. ....................................................................35

iv.   Count IV (Unjust Enrichment): Plaintiffs' unjust enrichment claim fails because they do not allege that they conferred a benefit on Deloitte. ..................35

D.   All of Plaintiffs' State Statutory Claims Fail. ...............................................36

i.   Count X (Colorado Consumer Protection Act): Plaintiffs' CCPA claim fails.........................................................................................................37

ii.   Count XI (Illinois Uniform Deceptive Trade Practices Act): Plaintiffs' IUDTPA claim fails. ......................................................................37

E.   Counts XII and XIII (Injunctive Relief and Declaratory Relief): Plaintiffs are Not Entitled to Injunctive or Declaratory Relief...........................................38

CONCLUSION.......................................................................................................39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
  380 F. Supp. 3d 1243 (M.D. Fla. 2019) ...................................................................12

*Allen v. Credit Suisse Secs. (USA) LLC*,
  895 F.3d 214 (2d Cir. 2018) ...................................................................................8

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) ...................................................................................8

*Amusement Indus., Inc. v. Stern*,
  693 F. Supp. 2d 301 (S.D.N.Y. 2010) ...................................................................38

*Anderson v. Hannaford Bros. Co.*,
  659 F.3d 151 (1st Cir. 2011) .................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................8

*Attias v. CareFirst, Inc.*,
  365 F. Supp. 3d 1 (D.D.C. 2019) ..........................................................................19

*Beal Corp. Liquidating Tr. v. Valleylab, Inc.*,
  927 F. Supp. 1350 (D. Colo. 1996) .......................................................................34

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) ................................................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ...............................................................................................8

*Beverly v. Reinert*,
  239 Ill.App.3d, 606 N.E.2d 621 (Ill. App. Ct. 1992) ............................................28

*Biddle v. Warren Gen. Hosp.*,
  86 Ohio St.3d 395, 715 N.E.2d 518 (Ohio 1999) .................................................30

*Blanchard & Assocs. v. Lupin Pharm., Inc.*,
  900 F.3d 917 (7th Cir. 2018) ................................................................................35

*BMO Harris Bank, N.A. v. Porter*,
  106 N.E.3d 411 (Ill. App. Ct. 2018) .....................................................................33

*Booth v. Copeco, Inc.*,
  No. L-16-1227, 2017 WL 2241612 (Ohio Ct. App. May 19, 2017)......................................35

*Brit Ins. Holdings N.V. v. Krantz*,
  No. 1:11 CV 948, 2012 WL 28342 (N.D. Ohio Jan. 5, 2012) .................................................20

*Calderon v. Ashmus*,
  523 U.S. 740 (1998)...............................................................................................................38

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016)......................................................................................................8

*Chabraja v. Avis Rent A Car Sys., Inc.*,
  192 Ill.App.3d 1074, 549 N.E.2d 872 (Ill. App. Ct. 1989).....................................................37

*Chalet Ford, Inc. v. Red Top Parking, Inc.*,
  62 Ill.App.3d 270, 379 N.E.2d 88 (Ill. App. Ct. 1978)...........................................................29

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).....................................................................................................9

*In re Chi. Flood Litig.*,
  176 Ill. 2d 179, 680 N.E.2d 265 (1997) .................................................................................24

*Christensen v. Hoover*,
  643 P.2d 525 (Colo. 1982)......................................................................................................29

*City of Chi. v. Beretta U.S.A. Corp.*,
  213 Ill. 2d 351, 821 N.E.2d 1099 (2004)................................................................................24

*City of Cincinnati v. Cincinnati Reds*,
  19 Ohio App.3d 227, 483 N.E.2d 1181 (Ohio Ct. App. 1984)...............................................34

*City of Elgin v. Arch Ins. Co.*,
  53 N.E.3d 31 (Ill. App. Ct. 2016) ..........................................................................................35

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)......................................................................................................9, 12, 13

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
  887 F.3d 803 (7th Cir. 2018) .......................................................................................25, 26, 27

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
  No. 15-cv-01125-MJR, 2017 WL 1551330 (S.D. Ill. May 1, 2017) ......................................33

*In re: Cmty. Health Sys., Inc.*,
  No. 15-CV-222-KOB, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016) ............................16, 18

*Cooney v. Chicago Pub. Sch.*,
  407 Ill. App. 3d 358, 943 N.E.2d 23 (Ill. App. Ct. 2010)................................25, 29

*David v. Lose*,
  7 Ohio St.2d 97, 218 N.E.2d 442 (Ohio 1966) .......................................................29

*DCB Constr. Co., v. Cent. City Dev. Co.*,
  940 P2d 958 (Colo. Ct. App. 1997) .........................................................................33

*Del Llano v. Vivint Solar Inc.*,
  No. 17-cv-1429-AJB-MDD, 2018 WL 656094 (S.D. Cal. Feb. 1, 2018).........................13, 14

*Dunn v. Bruzzese*,
  172 Ohio App.3d 320, 874 N.E.2d 1221 (Ohio Ct. App. 2007).............................32

*Dunn v. Sederakis*,
  143 F. Supp. 3d 102 (S.D.N.Y. 2015)........................................................................9

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.*,
  No. 15-cv-02129-MSK-NYW, 2016 WL 8578096 (D. Colo. June 20, 2016) .......................36

*Enslin v. Coca-Cola Co.*,
  136 F. Supp. 3d 654 (E.D. Pa. 2015) ......................................................................29

*Ernst v. Parkshore Club Apartments Ltd. P'ship*,
  863 F. Supp. 651 (N.D. Ill. 1994) ....................................................................23, 24

*Estate of Ciotto v. Hinkle*,
  145 N.E.3d 1013 (Ohio Ct. App. 2019)....................................................................26

*Fernandez v. Leidos, Inc.*,
  127 F. Supp. 3d 1078 (E.D. Cal. 2015).....................................................................15

*Fero v. Excellus Health Plain*,
  236 F. Supp. 3d 735 (W.D.N.Y. 2017) ......................................................................12

*Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*,
  414 F.3d 325 (2d Cir. 2005)..............................................................................19, 28

*First Choice Fed. Credit Union v. Wendy's Co.*,
  No. 16-506, 2018 WL 2729264 (W.D. Pa. May 9, 2018) ...........................9, 27, 28

*Galaria v. Nationwide Mut. Ins. Co.*,
  No. 2:13-cv-118, 2017 WL 4987663 (S.D. Ohio Aug. 16, 2017) ..............18, 22, 28

*Gordon v. Chipotle Mexican Grill, Inc.*,
  344 F. Supp. 3d 1231 (D. Colo. 2018)................................................................25, 26

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-1415-CMA-MLC, 2018 WL 3653173 (D. Colo Aug 1, 2018) ............................27

*Hammond v. Bank of N.Y. Mellon Corp.*,
   2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................33

*Harbor Distrib. Corp. v. GTE Operations Support Inc.*,
   176 F.Supp.3d 204 (E.D.N.Y. 2016) ..................................................................38

*HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*,
   805 F. Supp. 2d 1115 (D. Colo. 2011)................................................................36

*Hicks v. Prelipp*,
   No. H-03-028, 2004 WL 1293999 (Ohio Ct. App. June 11, 2004) ........................................24

*Hill v. Sonitrol of Sw. Ohio, Inc.*,
   36 Ohio St.3d 36, 521 N.E.2d 780 (Ohio 1988) ......................................................32

*Hokr v. Price*,
   385 P.2d 664 (Colo. 1963) ..........................................................................30

*Huff v. FirstEnergy Corp.*,
   130 Ohio St.3d 196, 957 N.E.2d 3 (Ohio 2011) ......................................................31

*Kaiser Found. Health Plan of Colo. v. Sharp*,
   741 P.2d 714 (Colo. 1987)..........................................................................22

*Karns v. Deloitte Consulring LLP*,
   Case No. 1:20-cv-04952 (N.D. Ill. Aug. 24, 2020) ..................................................7

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. 2010) ..................................................................19

*Krukrubo v. Fifth Third Bank*,
   No. 07AP-270, 2007 WL 4532689 (Ohio Ct. App. 2007).................................................34

*LaFondFX, Inc. v. Kopelman*,
   No. 16-cv-00726-RBJ, 2017 WL 818662 (D. Colo. Mar. 2, 2017).......................................35

*Legros v. Tarr*,
   540 N.E.2d 257 (Ohio 1989) ........................................................................33

*Lewis v. Lead Indus. Ass'n*,
   --- N.E.3d ---, 2020 WL 2562929 (Ill. May 21, 2020) ..............................................20

*Longenecker-Wells v. BeneCard Servs., Inc.*,
   No. 1:15-CV-00422, 2015 WL 5576753 (M.D. Pa. Sept. 22, 2015)......................................34

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992)...................................................................................................9

*Mandelbaum v. Fiserv, Inc*.,
    787 F. Supp. 2d 1226 (D. Colo. 2011)..................................................................35

*Mann v. Northgate Investors, L.L.C*.,
    138 Ohio St.3d 175, 5 N.E.3d 594 (Ohio 2014) ...................................................27

*Mann v. Producer's Chem. Co*.,
    356 Ill. App. 3d 967, 827 N.E.2d 883 (Ill. App. Ct 2005).....................................22

*Martis v. Grinnell Mut. Reinsurance Co*.,
    388 Ill.App.3d 1017, 905 N.E.2d 920 (Ill. App. Ct. 2009)..............................30, 32

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig*.,
    415 F. Supp. 2d 261 (S.D.N.Y. 2005)...................................................................26

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig*.,
    247 F.R.D. 420 (S.D.N.Y.2007) ..........................................................................38

*Milan v. Wertheimer*,
    808 F.3d 961 (2d Cir. 2015)....................................................................................8

*Mineral Deposits Ltd. v. Zigan*,
    773 P.2d 606 (Colo. Ct. App. 1988) .....................................................................30

*Montesa v. Schwartz*,
    836 F.3d 176 (2d Cir. 2016)..................................................................................14

*Mucklow v. John Marshall Law School*,
    176 Ill.App.3d 886, 531 N.E.2d 941 (Ill. App. Ct. 1988)......................................30

*Mussivand v. David*,
    45 Ohio St.3d 314, 544 N.E.2d 265 (Ohio 1989) .................................................26

*Niedelson v. Deloitte Consulting LLP*,
    Case No. 1:20-cv-05054 (N.D. Ill. Aug. 27, 2020) .................................................7

*O'Stricker v. Jim Walter Corp*.,
    4 Ohio St.3d 84, 447 N.E.2d 727 (Ohio 1983) .....................................................21

*Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co*.,
    874 P.2d 1049 (Colo. 1994)..................................................................................31

*Pendrey v. Barnes*,
    18 Ohio St.3d 27, 479 N.E.2d 283 (Ohio 1985) ...................................................23

*Perdue v. Hy-Vee, Inc.*,
  No. 19-1330, 2020 WL 1917835 (C.D. Ill. Apr. 20, 2020) ........................................25, 35, 37

*Pisciotta v. Old Nat'l Bancorp.*,
  499 F.3d 629 (7th Cir. 2007) ........................................................................................20

*Point E. Condo. Owners' Ass'n v. Cedar House Ass'n*,
  663 N.E.2d 343 (Ohio Ct. App. 1995)............................................................................32

*Progressive N. Ins. Co. v. City of Rocky River*,
  No. 1:18 CV 524, 2019 WL 5394206 (N.D. Ohio Aug. 16, 2019) ......................................23

*Quintana v. City of Chi.*,
  230 Ill. App. 3d 1032, 596 N.E.2d 128 (Ill. App. Ct. 1992)..............................................23

*Reeder v. HSBC USA, Inc.*,
  No. 09-cv-2043, 2009 WL 4788488 (N.D. Ill. Dec. 8, 2009)..............................................20

*Reid v. Unilever U.S., Inc.*,
  964 F. Supp. 2d 893 (N.D. Ill. 2013) ..............................................................................37

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011)............................................................................................13

*Remijas v. Neiman Marcus Grp. LLC*,
  794 F.3d 688 (7th Cir. 2015) ........................................................................................12

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
  62 P.3d 142 (Colo. 2003)..............................................................................................36

*Rudolph v. Hudson's Bay Co.*,
  No. 18-cv-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May 7, 2019)..............................13, 14

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) ..........................................................................29

*In re: SAIC*,
  45 F. Supp. 3d 14 (D.D.C. 2014) ..................................................................................18

*Sanders v. Acclaim Entm't, Inc.*,
  188 F. Supp. 2d 1264 (D. Colo. 2002)............................................................................23

*SELCO Cmty. Credit Union v. Noodles & Co.*,
  267 F. Supp. 3d 1288 (D. Colo. 2017)........................................................................25, 26

*Silver v. Primero Reorganized Sch. Dist. No. 2*,
  619 F. Supp. 2d 1074 (D. Colo. 2007)............................................................................28

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F.Supp.2d 942 (S.D. Cal. 2012).................................................................21, 29

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016)..........................................................................................9

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008)..............................................................................................9

*State v. Brown*,
  167 Ohio Misc.2d 45, 962 N.E.2d 898 (Ohio Athens Cty. Mun. Ct. 2011) ...........................21

*State v. LeGrant*,
  No. 2013-CA-44, 2014 WL 7463132 (Ohio Ct. App. Dec. 31, 2014) ...................................21

*Steven v. Carlos Lopez & Assocs., LLC*,
  422 F. Supp. 3d 801 (S.D.N.Y. 2019)................................................................ *passim*

*Stibley v. Zimmerman*,
  No. 97 CA 51, 1998 WL 548755 (Ohio Ct. App. 1998).................................................22

*Subaru Distrib. Corp. v. Subaru of Am., Inc.*,
  425 F.3d 119 (2d Cir. 2005)...................................................................................31

*In re SuperValu Inc. Customer Data Sec. Breach Litig.*,
  No. 14-MD-2586.................................................................................................19

*In re SuperValu, Inc.*,
  925 F.3d 955 (8th Cir 2019) ..................................................................................27

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
  2018 WL 1189327 ..................................................................................19, 20, 26

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014).......................................................................29

*Templeton v. Fred W. Albrecht Grocery Co.*,
  72 N.E.3d 699 (Ohio Ct. App. 2017).......................................................................28

*Torres v. Wendy's Co.*,
  195 F. Supp. 3d 1278 (M.D. Fla. 2016)....................................................................13

*Unchageri v. Carefirst of Md., Inc.*,
  No. 16-1068, 2016 WL 8255012 (C.D. Ill. Aug. 23, 2016) ............................................14

*Vancrest Mgmt. Corp. v. Mullenhour*,
  140 N.E.3d 1051 (Ohio Ct. App. 2019).....................................................................35

*Welborn v. IRS*,
    218 F. Supp. 3d 64 (D.D.C. 2016) ........................................................................16, 17

*Wells Fargo Bank, N.A. v. Fifth Third Bank*,
    931 F. Supp. 2d 834 (S.D. Ohio 2013) ....................................................10, 24, 28

*Wessel v. Greer Mgm't Servs., Inc.*,
    No. 5–15–0259, 2016 WL 756953 (Ill. App. Ct. Feb. 24, 2016)...........................34

*Whalen v. Michaels Stores, Inc.*,
    689 F. App'x 89 (2d Cir. 2017) ..........................................................................21

*Williams v. Nat'l Ass'n for Advancement of Colored People*,
    135 N.E.3d 1260 (Ohio Ct. App. 2019)................................................................35

*Williams v. RCA Corp.*,
    59 Ill. App. 3d 229, 376 N.E.2d 37 (Ill. App. Ct. 1978)........................................24

*Word v. City of Chicago*,
    946 F.3d 391 (7th Cir. 2020) ..............................................................................30

**Statutes**

15 U.S.C. § 45(a)(1) ....................................................................................................26, 27

Colo. Rev. Stat § 6-1-101 ......................................................................................19, 36, 37

Ill. Stat. 815 § 510/2(a) .........................................................................................19, 36, 37

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................................36

Fed. R. Civ. P. 12(b)(1)...............................................................................................8, 39

Fed. R. Civ. P. 42(a)(2) ....................................................................................................5

Restatement (Second) of Torts § 302B ...........................................................................23

Fed. R. Civ. P. 12(b)(6)....................................................................................6, 8, 19, 39

United States Constitution Article III .................................................................. *passim*

## INTRODUCTION

Plaintiffs' most recent Amended Complaint[1] fails to cure the multiple deficiencies identified in Deloitte Consulting LLP's ("Deloitte") Motion to Dismiss Plaintiffs' prior Consolidated Complaint. Like before, Plaintiffs suggest that this case is akin to high profile "data breach" cases that have made headlines in recent years; namely, cases involving malign actors deliberately accessing, and making harmful use of, troves of private data. But this case is nothing of the sort. This case does not involve "hackers" or other malevolent actors, and Plaintiffs have never, in fact, made any such allegation. The data that Plaintiffs allege was improperly exposed is limited both in scope and in nature and, in some instances, that data does not even appear to be linked to the individual Plaintiff in support of whose claim it is pleaded. The harms Plaintiffs allege are, for the most part, purely speculative; that is, despite no criminal hacking, Plaintiffs say that they *may* or *could* suffer damage sometime in the future—not that they actually have suffered harm already. And they persist with those same allegations despite the passage of many months since the limited inadvertent access occurred. Even in the limited instances where Plaintiffs allege that some form of harm already occurred, they fail to plead allegations sufficient to determine, or even to infer, that such harm was caused by anything done, or not done, by Deloitte.

Some background is in order. In the wake of the COVID-19 pandemic in the Spring of 2020, Congress established the Pandemic Unemployment Assistance ("PUA") program, which enhanced the states' ability to provide unemployment benefits to affected workers. Ohio, Illinois, and Colorado contracted with Deloitte to assist them in creating websites through which

---

[1] This is now the *tenth* separate pleading that Plaintiffs have filed in these actions, either individually or collectively. A document comparing Plaintiffs' operative Amended Complaint to their prior Consolidated Complaint is attached as Exhibit 1 to the Declaration of Phyllis B. Sumner ("Sumner Decl."), filed contemporaneously herewith.

individuals could apply for PUA benefits. While Deloitte consulted with the states regarding the creation and implementation of the PUA websites, the states are ultimately responsible for implementing and administering the PUA program and for collecting information from, and providing benefits to, eligible claimants.

In May 2020, Deloitte and the relevant state agencies became aware that some claimants—*i.e.*, certain individuals who were applying for PUA benefits—mistakenly were able to view certain personal information of other claimants. Immediately upon discovery, Deloitte remediated the issue, and prevented any further access by claimants. The data incident was thus limited in scope, temporary in nature, and remediated immediately upon discovery.

Despite the limited nature of this incident, Plaintiffs continue to assert a litany of tort, contractual, and statutory claims—thirteen in all—against Deloitte. An analysis of Plaintiffs' Amended Complaint, however, reveals all the same fundamental flaws in the pleading (and, frankly, in the theory of the case) as Plaintiffs' prior Consolidated Complaint, many of which are foundational and cut across different putative causes of action. As a threshold matter, all of Plaintiffs' claims fail because Plaintiffs *still* fail to plead—even now, nearly *six months* after the incident in question—that they have suffered any cognizable injury, a required element both for Article III standing as well as for each of Plaintiffs' thirteen claims. Relatedly, to the extent Plaintiffs have sufficiently pled any cognizable injury, they fail to plausibly allege that such injury is "fairly traceable" or was proximately caused by the limited and temporary incident at issue. Moreover, Plaintiffs fail to allege that they had any relationship, privity, or contact with Deloitte whatsoever. Indeed, Plaintiffs acknowledge that Deloitte performed its services *for the states*—not for Plaintiffs—and that Plaintiffs submitted their personal information *to the states*—not to Deloitte. And *the states* provided the notice of the limited security incident to Plaintiffs. The lack

of any relationship or contact between Plaintiffs and Deloitte is fatal to Plaintiffs' Amended Complaint. Plaintiffs cannot establish that Deloitte owed them any duty, contractual or otherwise, that could serve as the basis of a viable claim. In short, Plaintiffs' Amended Complaint again fails to allege any cognizable claim against Deloitte and should be dismissed in its entirety.

## RELEVANT BACKGROUND

### I.      The Pandemic Unemployment Assistance (PUA) Program

In the wake of the COVID-19 pandemic, Congress passed a $2 trillion stimulus package in March 2020 called the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. *See* Am. Compl. ¶ 91. One of the programs established by the CARES Act is the PUA program, which expanded the states' ability to provide unemployment benefits to individuals affected by the pandemic. *Id.* The Act provided for administration of the PUA program by the states, and several states, in turn, contracted with private companies to help administer the program. *Id*. ¶ 92. Ohio, Illinois, and Colorado engaged Deloitte for such assistance. *Id.* ¶ 94.  Under its contracts with these three states, Deloitte assisted with the design and implementation of web-based portals through which individuals could submit applications to the states for PUA-related unemployment benefits. *Id.* ¶ 2. While Deloitte consulted with the states in developing and implementing the PUA portals, the states are ultimately responsible for implementing and administering the PUA program, and for collecting information from, and providing unemployment benefits to, eligible claimants. *Id.* ¶¶ 92, 95.

### II.     The May 2020 Data Incident

In May 2020, officials from the Ohio Department of Job and Family Services ("ODJFS"), Illinois Department of Employment Security ("IDES"), and Colorado Department of Labor and Employment ("CDLE") sent notices to certain PUA claimants stating that certain information relating to their applications inadvertently had the capability to be viewed by other PUA claimants

(the "Data Incident"). Am. Compl. ¶ 87; *id.*, Ex. A. The notification letters made clear that the inadvertent access was temporary and limited in nature, and that Deloitte had remediated the issue giving rise to the Data Incident "within an hour" of discovering it. *Id.* Ex. B; *see also id.* Ex. C ("[A] limited and intermittent data access issue where a handful of individuals … were inadvertently able to view other claimants' correspondence… the unauthorized access was identified and blocked within one hour."); *id.* Ex. A ("[U]pon discovering the exposure, Deloitte immediately took steps to stop further access to and exposure of your personal information."). The states further emphasized that "there is no evidence or indication to believe that [claimants'] personal information was improperly used." *Id.* Ex. A (Ohio); *see also id.* Ex. B (Illinois: "[T]here is no indication that your personal information was improperly used or is likely to be misused."); *id.* Ex. C (Colorado: "[T]here is no evidence of any widespread data compromise.").  Out of an abundance of caution, Deloitte and the states offered 12 months of free credit monitoring to claimants. *See id.* Ex. A-C.

III.   **The Instant Actions and The *Bozin* Plaintiffs' Unsuccessful TRO Motion**

Shortly after the states provided notice of this limited Data Incident, multiple putative class actions were filed against Deloitte. The first—the *Bozin* action—was filed in Ohio on May 21, 2020. Shortly after commencing their action, the *Bozin* Plaintiffs filed a motion for a temporary restraining order and/or preliminary injunction ("TRO Motion"), which sought an order requiring Deloitte to "secure the personal and financial information of plaintiffs." *Bozin*, Case No. 1:20-cv-5070-LJL, Dkt. No. 4.

Deloitte opposed the TRO Motion on several grounds, including that the requested injunction was moot because Deloitte had already worked with the states to remediate the issue that caused the Data Incident; and that the *Bozin* Plaintiffs could not demonstrate any likelihood of future injury that could be addressed by a forward-looking injunction. In support of its

opposition, Deloitte submitted a declaration from Scott Malm, Deloitte's Labor Market Offering Leader, which stated that "[u]pon discovery, Deloitte immediately investigated the issue and, within approximately one hour, alerted the agencies and worked with them to remediate the issue." *Bozin*, Case No. 1:20-cv-5070-LJL, Dkt. No. 9-1 ¶ 6. Mr. Malm's declaration further stated that Deloitte had "permanently removed" any claimants' ability to view other claimants' personal information, and that Deloitte had "confirmed that no claimant obtained access to the personal information of any other claimant . . . after May 15, 2020." *Id.* ¶¶ 6, 9.

Less than four hours after Deloitte opposed the TRO Motion, the court issued an order denying the Motion in its entirety. *See Bozin*, Case No. 1:20-cv-5070-LJL, Dkt. No. 10. The court agreed that Plaintiffs' requested injunction was moot in light of Deloitte's remediation of the issue that gave rise to the Data Incident. *Id.* at 7. In addition, the court held that Plaintiffs' allegation of past harm—*i.e.*, the temporary exposure of certain personal information—was insufficient to demonstrate any future injury that could be addressed by a forward-looking injunction. *Id.* at 7-8 ("[I]t will be nearly impossible for the Court to determine whether any future use of the personal data of plaintiffs would give rise to a finding of contempt.").

The *Bozin* action was transferred to this Court on June 29, 2020. On June 23, 2020 and July 2, 2020, this Court entered orders formally consolidating all of the instant actions pursuant to Federal Rule of Civil Procedure 42(a)(2). *See* Dkt. Nos. 27 and 36.

## IV. Plaintiffs' Prior Consolidated Complaint and Deloitte's Motion to Dismiss

Plaintiffs filed a Consolidated Class Action Complaint on July 24, 2020. *See* Dkt. No. 61 ("Compl."). Plaintiffs alleged that they applied for PUA-related unemployment benefits in Ohio, Illinois, or Colorado, and that they received the above-mentioned notification letters from ODJFS, IDES, or CDLE regarding the Data Incident. Compl. ¶¶ 6-14. Plaintiffs further alleged that after receiving such notifications, they spent time and money to guard against possible identity theft in

the future. *Id*. ¶¶ 6, 8-11, 14. Without pleading facts establishing any connection to the Data Incident, some Plaintiffs also alleged that after receiving such notifications, they or others in their households experienced various types of "suspicious activity," such as unauthorized activity on their respective telephone, bank, or financial accounts. *Id.* ¶¶ 7-13.

Plaintiffs' prior Consolidated Complaint included 13 tort, contractual, and statutory claims against Deloitte. All of Plaintiffs' claims rested on the assertion that Deloitte was required to "properly secure and safeguard" Plaintiffs' personal information, but that it failed to do so. *See generally id.* Counts 1-XIII. Importantly, however, Plaintiffs did not allege that their personal information was intentionally targeted and stolen by criminals or hackers; nor did Plaintiffs allege that they avoided exposure of their personal information in prior widespread data breaches. To the contrary, Plaintiffs' original Consolidated Complaint made repeated references to "numerous high-profile data breaches" in recent years, including where—unlike here—criminals "target[ed] companies like Target, Neiman Marcus, eBay, Anthem, and Equifax." *Id.*¶ 36. Finally, Plaintiffs did not allege that they ever had any direct relationship with Deloitte—contractual or otherwise— at any point in time.

On August 24, 2020, Deloitte filed a motion to dismiss Plaintiffs' prior Consolidated Complaint. Dkt. Nos. 68-70. In its motion, Deloitte argued that Plaintiffs failed to demonstrate Article III standing because they failed to allege that their information was stolen by hackers or criminals who had intentionally targeted the data, and because they failed to allege concrete injuries-in-fact that were fairly traceable to any conduct by Deloitte Dkt. No. 69 at 8-16. In addition, Deloitte's motion argued that Plaintiffs failed to state a claim under Rule 12(b)(6).

In lieu of responding to Deloitte's motion to dismiss, Plaintiffs filed an Amended

Consolidated Complaint on September 21, 2020. Dkt. No. 82 ("Am. Compl.").[2]

## V.      Plaintiffs' Amended Consolidated Complaint

Plaintiffs' Amended Consolidated Complaint asserts all of the same tort, contractual, and statutory claims against Deloitte, based on the same assertion that Deloitte was required to "properly secure and safeguard" Plaintiffs' personal information but that it failed to do so. *See generally* Am. Compl., Counts I-XIII; Sumner Decl., Ex. 1. The only new allegations in the Amended Complaint relate to the addition of Plaintiff Niedelson (*see* Am. Compl. ¶¶ 78-86; Sumner Decl., Ex. 1 at 17-19), additional descriptions of the types of information Plaintiffs input into the PUA portal (*see id.* ¶¶ 7, 13, 22, 26, 33; Sumner Decl., Ex. 1 at 3-8), and a blanket allegation that every single Plaintiff has "not previously been subject to identity theft" (*see, e.g.*, *id.* ¶¶ 11, 18, 24, 31, 38, 47; Sumner Decl., Ex. 1 at 3-4, 5-9, 11). While adding allegations regarding the categories of information that was purportedly *input* into the PUA portal, however, Plaintiffs' Amended Complaint  does not allege that any of such information was ever actually inadvertently *exposed* in the Data Incident. In addition, Plaintiffs' Amended Complaint also still does not allege that their personal information was intentionally targeted and stolen by any criminals or hackers in connection with the Data Incident, nor does it add any allegation that Plaintiffs had any direct relationship or contact with Deloitte at any point in time.

---

[2] After Deloitte filed its motion to dismiss, two additional purported class actions relating to the Data Incident were filed in the Northern District of Illinois. *See Niedelson v. Deloitte Consulting LLP*, Case No. 1:20-cv-05054 (N.D. Ill. Aug. 27, 2020); *Karns v. Deloitte Consulting LLP*, Case No. 1:20-cv-04952 (N.D. Ill. Aug. 24, 2020). The Amended Complaint includes Plaintiff Niedelson (following a voluntary dismissal of the *Niedelson* action in Illinois) but does not include Karns, who has decided not to join this litigation voluntarily. *See* Dkt. No. 80. Deloitte has filed a motion to transfer the *Karns* case to this Court so that it can be consolidated with these proceedings. Dkt. No. 85, *Karns*, Case No. 1:20-cv-0504 (N.D. Ill.); *see also* Dkt. No. 85 (Letter to Judge Lewis J. Liman).

**STANDARD**

A dismissal for lack of Article III standing "is one for lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1), meaning "the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016). It "may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Id.* at 56. "At each such stage, 'the party invoking federal jurisdiction bears the burden of establishing the elements' of Article III standing." *Id.* Where, as here, a Rule 12(b)(1) motion is a facial attack, the court "draw[s] all facts . . . from the complaint and from the exhibits attached thereto." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). The task of the district court is to determine whether the complaint "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.*

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The ultimate question is whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In making this determination, a court "need not accept conclusory allegations or legal conclusions couched as factual [ ] allegations." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). Thus, "bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual 'allegations that are wholly conclusory.'" *Allen v. Credit Suisse Secs. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018). Finally, in assessing the sufficiency of a complaint, the Court may consider "any written instrument attached to it as an exhibit[,] [] any statements or documents incorporated in it by reference" or a document "'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, at 152-53 (2d Cir. 2002). "Where

cognizable documents conflict with a complaint's characterization of them, the documents control." *Dunn v. Sederakis*, 143 F. Supp. 3d 102, n.4 (S.D.N.Y. 2015).

## ARGUMENT

### I.     Plaintiffs' Amended Complaint Fails to Allege Facts Supporting Article III Standing.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." U.S. Const. art. III. This "case-or-controversy requirement is satisfied only where a plaintiff has standing" to bring suit. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). There are three well-known requirements for Article III standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). To support Article III jurisdiction at the motion to dismiss stage, a complaint must "'clearly . . . allege facts demonstrating' each" of these elements. *Id.* In particular, a plaintiff must demonstrate a "concrete" injury to satisfy the injury-in-fact requirement—*i.e.*, "it must actually exist." *Id*. at 1548. And while a threat of future harm may be sufficient, a plaintiff must demonstrate a "substantial risk" of future harm that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Spokeo*, 136 S.Ct. at 1548 (a "conjectural or hypothetical" injury will not suffice). If a plaintiff sufficiently alleges an injury-in-fact, he must also establish "a causal connection between the injury and the conduct complained of"; the injury must not be "the result of the independent action of some third party not before the court." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).

Here, Plaintiffs lack Article III standing for multiple reasons. ***First***, Plaintiffs do not allege that their information was intentionally targeted and stolen by an unauthorized party or criminal actor. Instead, Plaintiffs allege only an inadvertent, limited exposure of certain information to other similarly situated PUA claimants. *See, e.g.,* Am. Compl. ¶ 116 (alleging that a PUA claimant

"stumbled upon" other claimants' information on the Illinois PUA portal). Under recent precedent of this Court, these allegations are plainly insufficient to confer Plaintiffs with standing. **Second**, Plaintiffs' alleged injuries do not constitute concrete injuries-in-fact. And **third**, Plaintiffs' alleged injuries are not fairly traceable to any conduct by Deloitte because Plaintiffs fail to allege any logical connection between their alleged injuries and the Data Incident. For these reasons, Plaintiffs lack Article III standing, and their Amended Complaint should be dismissed.

### A. Plaintiffs Lack Standing Because They do not Allege that Their Information Was Intentionally Targeted and Stolen by an Unauthorized Party (*e.g.* a Hacker or Cybercriminal).

This Court recently made clear that data breach plaintiffs lack standing where, as here, they fail to plausibly allege that their information "was stolen by hackers or cyber criminals who had intentionally targeted the data." *Steven v. Carlos Lopez & Assocs., LLC*, 422 F. Supp. 3d 801, 805 (S.D.N.Y. 2019) (data breach cases where standing was found "have a common denominator. In each of them, the plaintiffs' data actually had been targeted and taken by one or more unauthorized third parties"). In *Steven*, one of the defendant's employees "accidentally sent an email containing personal information about approximately 130 current and former [] employees to a distribution list of current [] employees." *Id.* at 802-03. Several individuals whose information was inadvertently exposed sued on behalf of a purported class. *Id.* The court held that the plaintiffs lacked Article III standing, explaining that the plaintiffs' allegation of an "increased risk" of identity theft was "too speculative to survive scrutiny" because Plaintiffs did not allege that their data had been "stolen by hackers or cyber criminals who had intentionally targeted the data." *Id.* at 804-05. In doing so, the court noted that the plaintiffs "could not name a single case in which a

court had found standing based on the risk of future identity theft that did not arise from such an intentional act." *Id.* at 805.

The Amended Complaint here suffers from precisely the same flaw as that in *Steven*. Here, just as in *Steven*, information was inadvertently—as opposed to deliberately—exposed. Indeed, Plaintiffs do not (and cannot) allege that their information was intentionally targeted and stolen by any criminal or otherwise malevolent actor. Rather, as the Amended Complaint itself states, Plaintiffs' information "inadvertently had the capability to be viewed by other unemployment claimants" for a short period of time. Am. Compl. Ex. A; *see also id.*, Ex. B. ("[A] limited data access issue [] occurred," whereby "one PUA claimant was able to inadvertently access personal information of a limited number of other PUA claimants"); *id.*, Ex. C (the "intermittent data access issue" involved only a "handful of individuals" who were inadvertently able to view other claimants' correspondence). The notices sent to Plaintiffs by the states likewise make plain that no criminal attack was made on the PUA portals for the purpose of obtaining claimants' information. In addition, any PUA claimants who had the capability to view information were similarly situated as Plaintiffs; in other words, all such individuals visited a PUA website for the purpose of applying for PUA benefits, and there is no indication that those individuals had any criminal intent or visited the website for the purpose of stealing or mis-using information.

Because it is the "intentional act of theft" in a data breach that gives rise to "a plausible inference that the stolen data would be misused," Plaintiffs' failure to allege that any criminal actor intentionally targeted and stole their information is fatal to their need to establish standing. *Steven*, 422 F. Supp. at 805. This is because, where data is stolen by hackers, "[p]resumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities"; in such situations it is thus "plausible to infer that the plaintiffs have shown a substantial risk of

harm." *Id.* (citing *Remijas v. Neiman Marcus Grp. LLC¸* 794 F.3d 688, 693 (7th Cir. 2015)). No such inference can be drawn here. Rather, as in *Steven*, Plaintiffs simply "speculate that" an identifiable PUA claimant who inadvertently had the ability to view other claimants' information for a very short period of time "could misuse their data or provide it to a third party who could, in turn, misuse it." *Id.* at 806. "For the Plaintiffs to suffer the harm of identity theft they fear," therefore, the Court "must engage in the same 'attenuated chain of possibilities' rejected by the [Supreme] Court in *Clapper*." *Id.* (citing *Clapper*, 568 U.S. 398). Simply put, because Plaintiffs' allegations of alleged harm are "unanchored to any actual incident of data breach," they "cannot satisfy Article III's requirement of actual or impending injury." *Id.*[3]

## B. Plaintiffs' Specific Alleged Injuries do not Constitute Concrete "Injuries-in-Fact" for Purposes of Standing.

Apart from failing to plead the intentionality required for standing under the relevant case law, Plaintiffs' claims suffer from a further standing problem; namely, that the injuries Plaintiffs allege do not constitute concrete injuries-in-fact. Plaintiffs allege purported injuries in the form of: (1) a risk of future fraud and time and money spent mitigating that alleged risk (Am. Compl. ¶¶ 10, 23, 37, 44, 46, 74-75, 84); (2) a temporary inability to access funds and/or a decreased credit score (*id.* ¶¶ 16, 44, 62, 67, 82), and (3) various allegations of tenuous "suspicious activity" (*id.* ¶¶ 16-17, 23, 28, 36, 44-45, 53-54, 62-65, 82-83).[4] None of these allegations is sufficient from an Article III standpoint.

---

[3] As in *Steven*, "it is arguably a misnomer to even call this case a 'data breach' case." 422 F. Supp. 3d at n.3.

[4] To the extent the Complaint also alleges injury in the form of "the loss of opportunity to control how their PII is used" or "the diminution in value" of their PII (Am. Compl. ¶ 130), those allegations are also insufficient to demonstrate a concrete injury-in-fact. *See Fero v. Excellus Health Plain*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) ("Courts have rejected allegations that the diminution in value of personal information can support standing."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (rejecting plaintiff's theory of standing predicated on decreased value of their PII).

Risk of future identity theft: Plaintiffs generally allege a risk of future identity theft and time or money spent mitigating that alleged risk. But absent allegations of an intentional theft, a data breach plaintiff cannot establish a substantial risk of future harm. *See supra* pp. 8-9; *see also Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) ("[C]ontention of an enhanced risk of future identity theft [was] too speculative" where plaintiff failed to allege a "data thief intentionally targeted the personal information"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 44 (3d Cir. 2011) (plaintiffs' "string of hypothetical injuries do not meet the requirement of an 'actual or imminent' injury" because "there is no evidence that the intrusion was intentional or malicious"). In addition, because Plaintiffs allege only a hypothetical future harm that is not "certainly impending," out-of-pocket costs Plaintiffs incurred to mitigate the possible risk of future harm also do not constitute an injury-in-fact. *See Clapper*, 568 U.S. at 402 ("[R]espondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."); *see also Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1284 (M.D. Fla. 2016) ("The majority of courts in data breach cases have held that 'the cost to mitigate the risk of future harm does not constitute an injury in fact unless the future harm being mitigated against is itself imminent.'"). All three state notices, coupled with the *Bozin* court's denial of the TRO Motion demonstrate no imminent harm here.

Temporary inability to access funds and lowered credit score: Some Plaintiffs allege that they were temporarily unable to access funds, and/or that their credit score decreased. Under well-settled case law, such allegations also do not establish concrete injuries-in-fact. *See Rudolph v. Hudson's Bay Co.*, No. 18-cv-8472 (PKC), 2019 WL 2023713, *8 (S.D.N.Y. May 7, 2019) ("[T]he claim that she was injured by the temporary inability to access her account does not demonstrate injury"); *Del Llano v. Vivint Solar Inc.*, No. 17-cv-1429-AJB-MDD, 2018 WL 656094, at *6 (S.D.

13

Cal. Feb. 1, 2018) (allegations that plaintiff's "credit score has dropped, impacting [] credit availability and finances" not a cognizable injury-in-fact.). While Plaintiff Neal alleges, without further support, that her credit score decreased, she does not allege that this impacted her "ability to purchase a home or apply for a mortgage" or otherwise caused her any concrete harm. *Del Llano*, 2018 WL 656094, at \*6. And Plaintiffs Julius and Nolen similarly fail to allege any concrete harm at all resulting from their alleged temporary inability to access funds. *Rudolph*, 2019 WL 2023713, at \*8 (allegation of inability to access funds was insufficient "[a]bsent an allegation of how an account freeze resulted in a loss" to the plaintiff). While Plaintiff Nolen attributes the fact that she "fell behind" on rent and utility payments to the Data Incident, she does not allege that she was ultimately unable to make those payments or that she incurred any late fees or other related out-of-pocket costs. Am. Compl. ¶ 67.

Suspicious activity: Finally, some Plaintiffs allege various forms of "suspicious activity." For example, Plaintiff Allison-Pickering alleges that *her husband* received a letter in the mail that an unauthorized loan application was denied because *his* Social Security number could not be verified. Am. Compl. ¶ 23. But that does not allege any injury that *Plaintiff Allison-Pickering* suffered; nor would the denial of an unauthorized loan application constitute an injury-in-fact. *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016) (Article III "prohibit[s] plaintiffs from asserting the rights of third parties."). In addition, Plaintiff Cabot alleges apparent phishing attempts regarding "the processing [of] an unknown auto loan." *Id*. ¶ 36 (alleging that when he called the number back "he received a message that the mailbox was no longer receiving calls"). Setting aside the fact that these calls do not even appear to involve misuse of any of Plaintiff Cabot's personal information, merely receiving a telephone call is plainly not a concrete injury-in-fact. *See Unchageri v. Carefirst of Md., Inc*., No. 16-1068, 2016 WL 8255012, at \*5-8 (C.D.

Ill. Aug. 23, 2016) (unwanted telephone calls did not constitute an injury in fact where plaintiff's telephone number was not exposed in data breach). Finding otherwise would allow any plaintiff to assert that any suspicious activity following a data incident is an "injury" giving rise to standing to sue. That is not, and should not be, the law.

### C. Any Sufficiently Alleged Injury is Not Fairly Traceable to The Data Incident.

Even if Plaintiffs had alleged an injury-in-fact, Plaintiffs still fail to allege that such injuries are fairly traceable to the Data Incident. *See Fernandez v. Leidos, Inc*., 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (alleged fraudulent opening of bank account and email address in plaintiff's name not fairly traceable to government contractor's data breach where plaintiff did "not allege[] that bank account information or email addresses were on the stolen backup data tapes").

As discussed above, Plaintiffs allege only that their information could be viewed by certain other claimants on the PUA portals. *Supra* pp. 3-4. While courts have held that it is plausible to infer a connection between a ***criminal*** data breach or ***intentional*** theft of personal information and subsequent fraudulent activity, Plaintiffs allege no such facts here. Instead, Plaintiffs' claims require the Court to ***assume*** that other known and similarly situated PUA claimants—*i.e.*, individuals who were visiting the PUA websites to apply for PUA benefits—who may have viewed Plaintiffs' information chose to criminally mis-use that information, or sold it to some other criminal actor for purposes of engaging in fraudulent activity. But the lack of any allegation that their data was "intentionally stolen by a hacker" renders these inferences entirely conjectural and, therefore, insufficient. *Steven*, 422 F. Supp. 3d at 805 (explaining that the Supreme Court in *Clapper* rejected a finding of standing based on a mere "attenuated chain of possibilities"). Additionally, in the wake of the many wide-scale criminal data breaches that have occurred in recent years affecting millions of people (*e.g.*, Target, Neiman Marcus, eBay, Anthem, Equifax, etc., *see* Am. Compl. ¶ 107), the Court cannot simply infer that any fraudulent or suspicious

activity about which Plaintiffs now complain stemmed from this Data Incident as opposed to one of the many others that have occurred.

This remains true despite Plaintiffs' newly added blanket and conclusory allegation that Plaintiffs have "not previously been subject to identity theft." *See, e.g.*, Am. Compl. ¶¶ 18, 24, 31, 38, 47. Given the limited scope and non-criminal nature of the Data Incident, coupled with the lack of *facts* connecting any of the "suspicious activity" alleged in the Amended Complaint to the Data Incident, the Court would still be speculating as to whether Plaintiffs' alleged injuries are fairly traceable to the Data Incident. Plaintiffs' claims accordingly fail. *See Welborn v. IRS*, 218 F. Supp. 3d 64, 79 (D.D.C. 2016) (plaintiffs "must put forward facts showing that their injuries can be traced to the specific data incident of which they complain and not to any previous theft or data loss incident").

Were Plaintiffs' Amended Complaint simply silent on facts related to traceability, their pleading would be ripe for dismissal.  But their Amended Complaint fares even worse in that Plaintiffs' allegations of injury also lack "a logical connection to the data" that was *exposed*. *In re: Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *12 (N.D. Ala. Sept. 12, 2016). For example, Plaintiff Julius alleges a "fraudulent charge originating from the state of California on her bank account" and that her auto insurance agent speculated—based solely on the fact that the agent's "system" mistakenly indicated that her child was 19 years of age—that Julius or her child may have been a victim of identity theft. Am. Compl. ¶ 44-45. Apart from failing to explain why the stray conjecture of an auto insurance agent in what appears to be an unrelated conversation makes any difference to the viability of her claim, Plaintiff Julius has never alleged that any information regarding her bank account was ever *exposed* as part of the Data Incident. *Id.*, Ex. A. Similarly, while Plaintiff Julius alleges that her son's personal information was *input* into

16

the PUA portal, she has never alleged that such information was included in the limited material that was *exposed* in connection with the Data Incident. *Id.* ¶ 40, 43, Ex. E. Plaintiff Julius's allegations of harm are thus not fairly traceable to the Data Incident in that they bear no "logical connection" to the events alleged. *Welborn*, 218 F. Supp. at 79 (plaintiff "must allege facts that indicate that the information" at issue in the "breach is the same type of information used to commit their injuries").

Similarly, Plaintiff Nolen's allegation that her phone number was transferred from her account with BoostMobile to Metro PCS fails because there is no alleged connection between the admittedly limited information that was actually *exposed* on the PUA portals and Plaintiff Nolen's BoostMobile telephone account. Instead, Plaintiff Nolen merely alleges that her telephone account information was at one point *submitted* to the PUA site—she has never alleged that it was actually *exposed* as part of the Data Incident. Am. Compl. ¶ 59, 65. Because it is "not clear that the type of data" exposed on the PUA portals "was necessarily used" to switch Plaintiff Nolen's telephone accounts, this alleged injury is also not fairly traceable to the data incident. *Welborn*, 218 F. Supp. 3d at 79 (plaintiff lacked standing where it was "not clear that the type of data obtained from the theft . . . was necessarily used in the removal of funds" from the plaintiff's account). Plaintiffs Nolen and Newland also allege suspicious activity in the form of unauthorized transfers (or attempted transfers) from their Netspend accounts. Am. Compl. ¶¶ 53-54, 62-64. But—like Plaintiff Julius—they allege merely that they provided their Netspend Account information to receive payment of PUA benefits; they have never alleged that any information regarding their financial accounts was ever inadvertently *accessed* by other claimants as part of the Data Incident. *See* Am. Compl., Ex. A (stating that "your name, Social Security number, and street address" had the capability to be viewed). These purported injuries, even if taken as true, are therefore not fairly

traceable to the Data Incident. *See In re: Cmty. Health*, 2016 WL 4732630, at *12 ("[U]nauthorized access to [] checking account and attempted theft of funds from" the account were not traceable to defendants because "the data breach did not include financial information such as bank account numbers"); *In re: SAIC*, 45 F. Supp. 3d 14, 31 (D.D.C. 2014) (no standing where plaintiffs alleged "unauthorized charges" to "existing credit cards or debit cards, or that money was withdrawn from an existing bank account," but "[n]o one alleges that credit-card, debit-card, or bank-account information was" stolen).

Plaintiff Haiman alleges that "another bank account was opened in her name." Am. Compl. ¶ 28. She has never alleged, however, what information was used to open the unauthorized account, or that it was the same information that was potentially exposed on the PUA portal. Nor does she allege that she has never previously experienced any attempted fraud on any of her financial accounts. Plaintiff Haiman has therefore also failed to plead that the alleged unauthorized account was caused by the Data Incident. *See Steven*, 422 F. Supp. 3d at 804 ("[N]o Article III standing exists if a plaintiff's theory of injury rests on an attenuated chain of inferences."); *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118, 2017 WL 4987663, at *6 (S.D. Ohio Aug. 16, 2017) ("allegations of time and sequence alone are not enough to establish causation" in a data breach). Finally, Plaintiff Niedelson alleges he "experienced unauthorized charges on his Costco Visa Credit Card." Am. Compl. ¶ 83. But as with the other Plaintiffs, Plaintiff Niedelson alleges only that his name, social security number, and street address were exposed in the Data Incident—***not*** credit card information. It is simply implausible that these three pieces of personal information— name, social security number, and street address—are the same thing as a credit card number. In addition, like Plaintiff Haiman, Niedelson does not allege that he has never previously experienced any attempted fraud or unauthorized activity on his bank or financial accounts. Accordingly, even

if Plaintiffs had adequately alleged any injury-in-fact, they nonetheless lack Article III standing

because they cannot establish that their alleged injuries are fairly traceable to the Data Incident.

## II.    Plaintiffs' Amended Complaint Fails to State a Claim Under Rule 12(b)(6).[5]

### A.  All of Plaintiffs' Claims Fail Because Plaintiffs Fail to Allege Legally Cognizable Injuries That Were Proximately Caused by Deloitte.

Injury and causation are necessary elements for all of Plaintiffs' claims, and they require a

higher showing than the injury-in-fact and traceability elements of Article III standing. *Attias v.*

*CareFirst, Inc*., 365 F. Supp. 3d 1, 9 (D.D.C. 2019) (recognizing plaintiffs had Art. III standing

but dismissing common law tort claims that failed to allege cognizable damages); *see also Krottner*

*v. Starbucks Corp*., 406 F. App'x 129, 131 (9th Cir. 2010) ("[H]olding that Plaintiffs–Appellants

pled an injury-in-fact for purposes of Article III standing does not establish that they adequately

pled damages for purposes of their state-law claims."). Therefore, even if Plaintiffs' allegations

could somehow satisfy the requirements of Article III (which they cannot), that "does not provide

a basis for the Court to draw a reasonable inference" that Plaintiffs "suffered monetary loss and

thus a cognizable injury" that was proximately caused by the Data Incident. *In re SuperValu Inc.*

*Customer Data Sec. Breach Litig*., No. 14-MD-2586 ADM/TNL, 2018 WL 1189327, at *12 (D.

Minn. Mar. 7, 2018) (applying Illinois law).

---

[5] Plaintiffs appear to assert their claims under the laws of their respective home states. *See* Am. Compl. ¶¶ 205-215 (Colorado Plaintiffs asserting claim under Colorado Consumer Protection Act); *id.* ¶¶ 216-222 (Illinois Plaintiffs asserting claim under Illinois Uniform Deceptive Trade Practices Act). Under New York's choice-of-law rules, courts apply an "[i]nterest analysis" that looks for "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005). Deloitte accepts Plaintiffs' position for purposes of this motion and assumes that the laws of Plaintiffs' respective home states should apply to their claims in this action.

i. **Plaintiffs fail to plead a legally cognizable injury.**

Despite the many months that have transpired since the Data Incident, Plaintiffs are unable to allege any cognizable injury allegedly flowing from the Data Incident. In particular, Ohio Plaintiffs Culbertson, Polichena, and Colorado Plaintiff Allison-Pickering allege only that they spent time and money monitoring their credit and safeguarding against the alleged future risk of identity theft. Am. Compl. ¶¶ 10, 23, 74-75. Courts have consistently rejected these allegations as insufficient to constitute actual damages in data breach cases. *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 634 (7th Cir. 2007); *Brit Ins. Holdings N.V. v. Krantz*, No. 1:11 CV 948, 2012 WL 28342, at *9-10 (N.D. Ohio Jan. 5, 2012) (applying Ohio law). Illinois Plaintiff Neal's allegation that her credit score was lowered, as well as Illinois Plaintiff Cabot's allegation that he received a phishing telephone call (Am. Compl. ¶¶ 16, 36), and Illinois Plaintiff Niedelson's allegation that he had to "set up a new account" at his bank (Am. Compl. ¶ 82) likewise fail because Illinois law "requires a plaintiff to plead out-of-pocket damage" to allege a legally cognizable injury. *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *11 (applying Illinois law); *Lewis v. Lead Indus. Ass'n*, --- N.E.3d ---, 2020 WL 2562929, at *6 (Ill. May 21, 2020) (plaintiff must establish "actual economic loss"); *Reeder v. HSBC USA, Inc.*, No. 09-cv-2043, 2009 WL 4788488, at *13 (N.D. Ill. Dec. 8, 2009) ("[A] plaintiff must allege that he suffered 'actual damages ... flowing from the alleged decrease in credit score such as that he was denied credit . . . or was required to pay a higher interest rate for credit.").

Ohio Plaintiffs Newland and Nolen and Illinois Plaintiffs Julius and Niedelson allege transfers, attempted transfers, and an unauthorized charge on a bank account or credit card, but do not allege that they were unable to recover any transferred money, or that they were not reimbursed for the unauthorized charges. Indeed, Niedelson concedes his "charges [were] reversed." Am. Compl. ¶ 83. Thus, they fail to sufficiently allege any actual damages to sustain their claims. *In re*

*SuperValu, Inc., Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *11 ("Data breach cases in Illinois and elsewhere have repeatedly held that a cardholder's mere allegation of an unauthorized charge, unaccompanied by an out-of-pocket loss, is not sufficient to state an actionable injury."); *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 167 (1st Cir. 2011) (affirming dismissal on the basis that reimbursed fraudulent charges were not cognizable damages); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017) (plaintiff did not establish injury in fact where she did "not allege that any fraudulent charges were actually incurred on the card, or that, before the cancellation, she was in any way liable on account of these presentations."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) (reimbursed charges insufficient to adequately plead cognizable injury).

Finally, Ohio Plaintiff Nolen's allegations that her telephone number was switched from BoostMobile to Metro PCS and that she had a temporary inability to access funds are insufficient because she, too, does not allege any actual monetary damages she suffered as a result. *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 87, 447 N.E.2d 727 (Ohio 1983) ("[A] cause of action for damages does not arise until actual injury or damage ensues."). At most, she alleges that she fell behind on rent and utility payments, but she does not allege she was ultimately unable to pay her bills or that she incurred any late charges or related out-of-pocket costs. *State v. LeGrant*, No. 2013-CA-44, 2014 WL 7463132, at *3 (Ohio Ct. App. Dec. 31, 2014) (affirming it was "error for the order of restitution to the victim, Candise Miller, to include a rent deposit that was reimbursed and therefore not an actual loss suffered by the victim."); *State v. Brown*, 167 Ohio Misc.2d 45, 48, 962 N.E.2d 898, 901 (Ohio Athens Cty. Mun. Ct. 2011) ("Economic loss means the amount of actual loss proximately caused by the offense.").

**ii.  Plaintiffs fail to allege that the Data Incident was the actual or proximate cause of their alleged injuries.**

The deficiencies in the Amended Complaint run still deeper in that Plaintiffs also fail to allege that the Data Incident was either the actual or proximate cause of their alleged injuries. First, Plaintiffs fail to allege with a reasonable certainty that the data incident was the *actual* cause of their alleged injuries. *See Mann v. Producer's Chem. Co.*, 356 Ill. App. 3d 967, 972, 975, 827 N.E.2d 883  (Ill. App. Ct. 2005) ("Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage;" liability "cannot be predicated upon surmise or conjecture as to the cause of an injury."); *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987) ("plaintiff must establish causation beyond mere possibility or speculation"); *Stibley v. Zimmerman*, No. 97 CA 51, 1998 WL 548755, * 9 (Ohio Ct. App. 1998) ("First, a court must determine whether the negligent party was the cause in fact of the plaintiff's injuries"). As explained above, Plaintiffs failed to plead—beyond mere speculation or conjecture—that the injuries they allege were the result of another PUA claimants' temporary ability to view their information, as opposed to one of the "numerous" data breaches involving criminal threat actors that have occurred in recent years. *Supra* p. 6; Am. Compl. ¶ 107; *id.* ¶ 99 (alleging that in 2017, "over 16.7 million individuals were affected by identity theft").

Indeed, even read in the light most favorable to them, Plaintiffs at most allege temporal proximity between the Data Incident and the alleged unauthorized activity. But mere temporal proximity—*i.e.*, correlation, with nothing more—is insufficient to allege causation. *Galaria*, 2017 WL 4987663, at *6 ("allegations of time and sequence alone are not enough to establish causation" in a data breach); *Mann*, 356 Ill. App. 3d at 975 ("[A] fact is not established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only probable, and not merely possible, conclusion that can be drawn therefrom."); *Mosko v.*

*Walton*, 144 Co. 602, 608 (1960) ("Where the evidence . . . presents no more than an equal choice of probabilities, it is not substantial," because "[n]o number of mere possibilities will establish a probability.").

Plaintiffs also fail to demonstrate that their alleged injuries were *proximately* caused by the Data Incident. Proximate cause is governed by the "reasonably foreseeable" test, meaning more than a mere "possibility of the injury occurring." *Ernst v. Parkshore Club Apartments Ltd. P'ship*, 863 F. Supp. 651, 657 (N.D. Ill. 1994); *Sanders v. Acclaim Entm't, Inc*., 188 F. Supp. 2d 1264, 1271-72 (D. Colo. 2002) ("The Colorado Supreme Court teaches that foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances."); *Progressive N. Ins. Co. v. City of Rocky River*, No. 1:18 CV 524, 2019 WL 5394206, *4 (N.D. Ohio Aug. 16, 2019) ("Proximate cause is often established where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result that would not have taken place without the act."). It is well-settled that a superseding act by an independent actor breaks the chain of causation where the superseding act is unforeseeable. *See Quintana v. City of Chi.*, 230 Ill. App. 3d 1032, 1034, 596 N.E.2d 128 (Ill. App. Ct. 1992) (drivers' "violation of traffic laws was the proximate cause of plaintiff's injuries," not "the inoperative traffic lights"); *Sanders*, 188 F. Supp. 2d at 1272 ("Generally, under Colorado law a person has no responsibility to foresee intentional violent acts by others."); Restatement (Second) of Torts § 302B ("under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law"); *Pendrey v. Barnes*, 18 Ohio St.3d 27, 29, 479 N.E.2d 283 (Ohio 1985) ("[T]he acts of an intermeddler, after the car has been stolen, are a sufficient intervening or superseding cause to break the chain of causation with respect to the car's owner."). Thus, even if Plaintiffs' assumption is correct—*i.e.*, that PUA claimants with inadvertent access to information on the portal misused that

23

information—the Data Incident would still not be the "proximate" cause of Plaintiffs' alleged injuries because "[o]ne ordinarily may presume that others will conduct themselves in a law-abiding manner," and the criminal conduct of the PUA claimants would therefore be an unforeseeable, superseding act breaking the chain of causation. *Ernst*, 863 F. Supp. at 657; *see also Hicks v. Prelipp*, No. H-03-028, 2004 WL 1293999, *2 (Ohio Ct. App. June 11, 2004) ("One may rightfully assume the observance of the law and the exercise of ordinary care by others."); *see also Williams v. RCA Corp.*, 59 Ill. App. 3d 229, 231, 376 N.E.2d 37 (Ill. App. Ct. 1978) (foreseeability "is not intended to bring within the scope of defendant's liability every injury that might possibly occur," it "means that which is objectively reasonable to expect, not what might conceivably occur").

### B.   All of Plaintiffs' Tort Claims Fail for Multiple Additional Reasons.

#### i.   The economic loss doctrine bars *all* of Plaintiffs' tort claims because Plaintiffs allege only economic—as opposed to physical—injuries.

As a general matter, the economic loss doctrine prevents recovery in tort for purely economic—as opposed to physical—injuries. *See, e.g.*, *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 840 (S.D. Ohio 2013) ("[T]he well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."); *see also In re Chi. Flood Litig.*, 176 Ill. 2d 179, 198, 680 N.E.2d 265, 274 (1997) ("[S]olely economic losses are generally not recoverable in tort actions."). The Illinois Supreme Court has explained the rationale for the economic loss doctrine: "[B]ecause the economic consequences of any single accident are virtually endless, a defendant who could be held liable for every economic effect of its tortious conduct would face virtually uninsurable risks, far out of proportion to its culpability. The economic loss rule operates to prevent such open-ended tort liability." *City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351,

418, 821 N.E.2d 1099 (2004) (internal quotation marks omitted). Accordingly, courts routinely dismiss tort claims in data breach cases where the plaintiffs allege purely economic losses. *See, e.g.*, *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (rejecting tort claims in data breach case based on Illinois' economic loss doctrine); *Perdue v. Hy-Vee, Inc.*, No. 19-1330, 2020 WL 1917835, *5 (C.D. Ill. Apr. 20, 2020) (same under Illinois law); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1245 (D. Colo. 2018) (same under Colorado law); *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1297 (D. Colo. 2017) (same under Colorado law).

All of Plaintiffs' tort claims are barred by the economic loss doctrine because Plaintiffs allege—at best—only economic, as opposed to physical, injuries. As discussed above, Plaintiffs' alleged injuries include time and money spent mitigating the risk of identity fraud, a temporary inability to access funds, and unauthorized activity on bank or phone accounts. *See supra* __. None of these qualify as non-economic injuries (if they constitute injuries at all). All of Plaintiffs' tort claims are thus barred by the economic loss doctrine.

### ii.   Count I (Negligence): Plaintiffs fail to identify any legal duty requiring Deloitte to protect their personal information.

To succeed on their negligence claim, Plaintiffs must demonstrate that Deloitte breached a legal duty owed to them. *See Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 361, 943 N.E.2d 23 (Ill. App. Ct. 2010) ("[W]here no duty is owed, there is no negligence."). Here, Plaintiffs allege (without support or explanation) that Deloitte owed them a duty "to secure and safeguard" their personal information. Am. Compl. ¶ 143. But Plaintiffs' assertion of a duty fails to account for the fact that Deloitte's role was limited to assisting the respective states in developing and administering the PUA web portals. And, in any event, courts in both Colorado and Illinois have expressly rejected the notion that companies owe a common law duty to protect personal

25

information. *See Cooney*, 407 Ill. App. 3d at 363 (rejecting "'a new common law duty' to safeguard information" under Illinois law); *Cmty. Bank of Trenton*, 887 F.3d at 816 (Illinois law does not impose common law duty to safeguard payment card information); *In re SuperValu Inc. Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *14 ("Federal courts interpreting Illinois law have consistently declined to impose a common law duty to safeguard personal information in data security cases."); *Gordon*, 344 F. Supp. 3d at, 1244 n.5 (D. Colo. 2018) (under Colorado law: "Plaintiffs fail to allege what state statutes or common law give rise to Defendant's legal duty to protect their PII. Their negligence claim fails on this ground."); *SELCO Cmty. Credit Union*, 267 F. Supp. 3d at 1295 (under Colorado law, finding "no support for the existence of specific common law or statutory duties of care related to data security"). Accordingly, Plaintiffs' negligence claim is unsupported by any common law duty.[6]

As an alternative to common law, Plaintiffs allege that Section 5 of the Federal Trade Commission Act ("FTC Act") imposes upon Deloitte "duties to use reasonable data security measures." Am. Compl. ¶ 145. While, in certain situations, a statute can "establish the 'standard of conduct required of a reasonable person'" for purposes of a negligence claim, courts have

---

[6] Deloitte has found no Ohio state court decision addressing whether companies owe a common law duty to safeguard personal information. However, the Ohio Supreme Court has cautioned that the imposition of a new common law duty requires careful consideration of a variety of societal factors, "including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270 (Ohio 1989). Accordingly, Ohio appellate courts have conducted prudent analyses and "weigh[ed] policy considerations" in determining whether to impose new common law duties. *See, e.g., Estate of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1030, 1032 (Ohio Ct. App. 2019) ("[A]fter considering the policy argument . . . we decline to make new law with this case."). Given that the state courts of Ohio have yet to create a new common law duty to safeguard personal information, this Court should decline to do so at this time. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 415 F. Supp. 2d 261, 268 (S.D.N.Y. 2005) ("[T]he role of the federal court is to 'construe and apply state law as it believes the state's highest court would, not to adopt innovative theories that may distort established state law.'").

"expressly rejected the proposition that [Section 5 of the FTC Act] creates a duty enforceable through a[] [] negligence action." *In re SuperValu, Inc.*, 925 F.3d 955, 963-64 (8th Cir 2019) (applying Illinois law). Plaintiffs' negligence claim therefore fails for this reason as well.

> ### iii. Count II (Negligence *per se*): Plaintiffs' negligence *per se* claim fails because the FTC Act does not prohibit specific conduct.

Plaintiffs also rely on Section 5 of the FTC Act as the basis for their negligence *per se* claim. *See* Am. Compl. ¶ 155. In order to state a negligence *per se* claim, Plaintiffs must demonstrate that Deloitte violated a statute prohibiting a specific activity, as opposed to a generalized standard of conduct. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1415-CMA-MLC, 2018 WL 3653173 at *19 (D. Colo Aug 1, 2018) (Colorado only recognizes negligence *per se* claims based on "violations of statutes that prohibit specific conduct, as opposed to establishing a general standard of conduct"); *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 182, 5 N.E.3d 594 (Ohio 2014) (under Ohio law, negligence *per se* claim requires violation of statute "set[ting] forth a positive and definite standard of care"); *Cmty. Bank of Trenton*, 887 F.3d at 819 (under Illinois law, rejecting negligence *per se* claim premised on Section 5 of FTC Act: "[Illinois law] require[s] a plaintiff to show, as the first element of a negligence *per se* action, that a statute or ordinance has been violated. Departures from industry custom are not sufficient."). Section 5 of the FTC prohibits "unfair . . . practices in or affecting commerce." 15 U.S.C. § 45(a)(1). This falls far short of the specificity required to state a negligence *per se* claim. *See Gordon*, 2018 WL 3653173 at *20 (under Colorado law, rejecting negligence *per se* claim based on Section 5 of FTC Act). Plaintiffs' negligence *per se* claim should be dismissed accordingly.[7]

---

[7] Plaintiff's negligence per se claim also fails with respect to the Ohio Plaintiffs because the FTC Act does not provide for a private right of action. *See First Choice Fed. Credit Union v. Wendy's*

iv. **Count III (Invasion of Privacy): Plaintiffs' allegations fail to state a claim for invasion of privacy.**

Plaintiffs' claim for invasion of privacy likewise fails. ***First***, Plaintiffs do not allege that Deloitte disseminated their personal information to the "public at large." *See e.g., Galaria*, 2017 WL 4987663; *Silver v. Primero Reorganized Sch. Dist. No. 2*, 619 F. Supp. 2d 1074, 1081, n.9 (D. Colo. 2007) (the private fact must be "disclosed . . . to the public in general or to a large number of persons, as distinguished from one individual or a few"). Instead, Plaintiffs' personal information was only viewable by a "handful" of other PUA claimants for a short period of time. *See* Am. Compl. Ex. C (Colorado notification letter stating "a handful of individuals within the new Pandemic Unemployment Assistance application were inadvertently able to view other claimants' correspondence"); *id.* Ex. B (Illinois notification letter stating "*one* PUA claimant was able to inadvertently access personal information of a limited number of other PUA claimants"); *id.* Ex. A (Ohio notification letter stating that some claimants' personal information "had the capability to be viewed by other unemployment claimants"). Alleging "no more than the possibility that unknown individuals might have accidentally received" private information online, or "possible interception by nobody in particular," does not constitute disclosure to the general public at large. *Beverly v. Reinert*, 239 Ill.App.3d, 91, 99, 606 N.E.2d 621 (Ill. App. Ct. 1992).

***Second***, having failed to plead even basic negligence on Deloitte's part, the Am. Compl. clearly fails to satisfy the level of intent required for an invasion of privacy claim in Ohio or Colorado. *See Templeton v. Fred W. Albrecht Grocery Co*., 72 N.E.3d 699, 701 (Ohio Ct. App.

---

*Co*., No. 16-506, 2018 WL 2729264 at *5 (W.D. Pa. May 9, 2018) (Ohio law limits negligence *per se* to statutes with an express private right of action, which the FTC Act does not provide).

2017) (disclosure must be "intentional" to sustain invasion of privacy claim); *Silver*, 619 F. Supp. 2d at 1080 (disclosure must be made with "reckless disregard" of private nature of fact disclosed).

**Third**, Illinois courts have held that personal information—such as social security numbers, names, and dates of birth—are "matters of public record" and not "private facts" for purposes of an invasion of privacy claim. *Cooney v. Chic. Pub. Sch.*, 407 Ill.App.3d at 368 (employees' social security numbers were not "private facts" for purposes of invasion of privacy claim). Plaintiffs' invasion of privacy claim should be dismissed accordingly.

### v. Count V (Bailment): Personal information is not subject to a bailment claim.

Courts routinely hold that personal information is "not 'property' or 'personalty'" that can form the basis of a bailment claim. *See, e.g., Enslin v. Coca-Cola Co*., 136 F. Supp. 3d 654, 679 (E.D. Pa. 2015) (personal information such as names, addresses, and social security numbers cannot form basis of bailment claim); *Ruiz v. Gap, Inc*., 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (social security numbers and credit card information are not property for purposes of bailment claim); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 974-75 (S.D. Cal. 2012) (same); *In re Target Corp. Customer Data Sec. Breach Litig*., 66 F. Supp. 3d 1154, 1177 (D. Minn. 2014) (dismissing bailment claim in data breach case). In addition, Plaintiffs do not allege that they delivered their personal information to the "exclusive control" of Deloitte based on Deloitte's promise to return the property. *Chalet Ford, Inc. v. Red Top Parking, Inc*., 62 Ill.App.3d 270, 273, 379 N.E.2d 88 (Ill. App. Ct. 1978); *see also Christensen v. Hoover*, 643 P.2d 525, 529 (Colo. 1982) (bailment requires "delivery" of property with "express or implied contract" that property will be returned); *David v. Lose*, 7 Ohio St.2d 97, 98, 218 N.E.2d 442 (Ohio 1966) (bailee must "promise[] to return the property undamaged upon the termination

of the bailment"). Indeed, Plaintiffs do not allege that Deloitte, as opposed to the states, was ever in possession of their personal information. Plaintiffs' bailment claims should be dismissed.

### vi. Count IX (Breach of Confidence): Plaintiffs fail to allege facts supporting a breach of confidence claim.

Ohio, Illinois, and Colorado only recognize claims for "breach of confidence" in limited circumstances involving medical information, trade secrets, or deceptive conduct, none of which are applicable here. *See Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 401, 715 N.E.2d 518 (Ohio 1999) ("We hold that in Ohio, an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship.") (emphasis added); *Mucklow v. John Marshall Law School*, 176 Ill.App.3d 886, 894, 531 N.E.2d 941 (Ill. App. Ct. 1988) (breach of confidence arises in context "of trade secrets and violation of a confidential relationship in a business context") (emphasis added); *see also id.* (refusing to extend breach of confidence tort to plaintiff's allegations that professor wrongfully accessed student's records); *Hokr v. Price*, 385 P.2d 664, 668 (Colo. 1963) (recognizing breach of confidence claim against real estate agent for allegedly securing signature of property owner by deception); *Mineral Deposits Ltd. v. Zigan*, 773 P.2d 606, 608 (Colo. Ct. App. 1988) (misappropriation of trade secrets constitutes breach of confidence). Plaintiffs' breach of confidence claim should be dismissed accordingly.

### C. All of Plaintiffs' Contractual and Quasi-Contractual Claims Fail.

#### i. Count VI (Breach of Contract): Plaintiffs cannot establish that they are third party beneficiaries of the contracts between Deloitte and the states.

Plaintiffs concede that they never entered into any express contract with Deloitte. Instead, they premise their breach-of-contract claim on their allegation that they were third-party beneficiaries of Deloitte's contracts with the states. Am. Compl. ¶ 187.

Plaintiffs face a high bar to establish they were "intended beneficiaries" of the contracts so as to qualify as third-party beneficiaries. In all three states, "[t]here is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Word v. City of Chicago*, 946 F.3d 391, 397 (7th Cir. 2020) (*quoting Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill.App.3d 1017, 1020, 905 N.E.2d 920 (Ill. App. Ct. 2009)). In order to qualify as a third-party beneficiary, "there must be evidence that the contract was intended to directly benefit that third party." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 200, 957 N.E.2d 3 (Ohio 2011). Generally, such evidence "will be found in the language of the agreement." *Id*; *see also Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994) (intent to benefit third party "must be apparent from the terms of the agreement, the surrounding circumstances, or both").

Deloitte's contracts with the states make clear that Plaintiffs were not intended beneficiaries.[8]

- <u>Colorado</u>: Deloitte's contract with CDLE expressly disclaims any third-party beneficiaries. *See* Sumner Decl., Ex. 3 (Master Task Order Contract § 20.M ("Enforcement of this

---

[8] The Court may consider the contracts on this motion because the Complaint expressly refers to them, and because they are central to Plaintiffs' breach of contract claim. *See Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider . . . documents upon which the complaint relies and which are integral to the complaint.").

Contract, Task Orders, and all rights and obligations hereunder are reserved solely to the Parties. Any services or benefits which third parties receive as a result of this contract or any Task Order are incidental to the Contract, and do not create any rights for such third parties.")).

- <u>Ohio</u>: The ODJFS contract lacks any language indicating that the parties intended to confer Plaintiffs with third-party beneficiary rights. To the contrary, the Ohio contract makes clear that the parties intended Deloitte's performance to benefit ODJFS, not Plaintiffs. *See* Sumner Decl., Ex. 2 (Statement of Work at 1 ("Deloitte will implement a cloud-based version of our Unemployment Framework for Automated Claim & Tax Services (uFACTS) solution to meet Pandemic Unemployment Assistance (PUA) requirements of the CARES Act.")). The mere fact that Deloitte's performance to ODJFS may have ultimately resulted in some benefit to Plaintiffs does not permit Plaintiffs to enforce the contract. *See Hill v. Sonitrol of Sw. Ohio, Inc*., 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (Ohio 1988) ("[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient.").

- <u>Illinois</u>: The IDES contract similarly lacks any language indicating that the parties intended to create third-party beneficiary rights for Plaintiffs. Instead, the agreement indicates that the parties intended the agreement's provisions to apply only to IDES and Deloitte. *See* Sumner Decl., Ex. 5 (Illinois Contract ¶ 1.1 ("IDES is seeking to implement and operate the PUA program in accordance with the CARES Act and USDOL Agreement."); IL Statement of Work at 1 ("Deloitte will implement a cloud-based version of our Unemployment Framework for Automated Claim & Tax Services (uFACTS) solution to meet Pandemic Unemployment Assistance (PUA) requirements of the CARES Act.")).

That Deloitte and IDES knew or even expected that Plaintiffs would "benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties." *Martis*, 388 Ill.App.3d 1017 at 1020.

The Court should dismiss Plaintiffs' breach of contract claim accordingly.

### ii.   Count VII (Breach of Implied Contract): Plaintiffs' breach of implied contract claim fails because Plaintiffs have not alleged any direct relationship—or even contact—with Deloitte.

To establish an implied contract, Plaintiffs must allege circumstances indicating that Deloitte and Plaintiffs intended to enter into a binding agreement with each other. *Dunn v. Bruzzese*, 172 Ohio App.3d 320, 330, 874 N.E.2d 1221 (Ohio Ct. App. 2007); *id.* at 1228-29 ("[I]n implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding." (*quoting Point E. Condo. Owners' Ass'n v. Cedar House Ass'n*, 663 N.E.2d 343, 348–349 (Ohio Ct. App. 1995)); *BMO Harris Bank, N.A. v. Porter*, 106 N.E.3d 411, 421 (Ill. App. Ct. 2018) ("The existence of a contract implied in fact . . . depends on the facts, circumstances, and expressions by the parties demonstrating intent to be bound."); *DCB Constr. Co*., *v. Cent. City Dev. Co*., 940 P2d 958, 961-62 (Colo. Ct. App. 1997) ("the words or conduct must evidence a mutual intention by the parties to contract with each other" to form implied-in-fact contract). The very basis for an implied contract is the "promissory expression" by two parties demonstrating an intent to be bound. *BMO Harris*, 106 N.E.3d at 421. An implied contract must contain all of the same elements as an express contract—including offer, acceptance, consideration, and meeting of the minds—in order to be enforceable. *Id.* at 421; *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989).

Here, Plaintiffs fail to allege any facts indicating that the parties intended to enter into a binding agreement with each other. In fact, Plaintiffs set forth no factual allegations indicating that

they ever had any direct contact with Deloitte, as opposed to the states. Instead, Plaintiffs' Am. Compl. makes clear that the PUA benefits for which they applied were "provided and administered by state governments"—not Deloitte. Am. Compl. ¶ 92. Similarly, Plaintiffs allege that Deloitte merely provided PUA-related services "to [the] states." *Id.* ¶ 93. Perhaps more fundamentally, Plaintiffs fail to allege any of the terms of their purported implied contract. Courts have routinely dismissed implied contract claims in these circumstances. *See, e.g., Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010) (in data breach case: "A contract cannot be implied-in-fact unless there has been a 'meeting of the minds' between the parties in question, which a reasonable jury could not find to have occurred where, as here, ***the parties had no relationship with one another***.") (emphasis added); *see also Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, No. 15-cv-01125-MJR, 2017 WL 1551330, at *5 (S.D. Ill. May 1, 2017) (under Illinois law, dismissing implied contract claim based on "implicit promise" of data security); *Longenecker-Wells v. BeneCard Servs., Inc.*, No. 1:15-CV-00422, 2015 WL 5576753, at *7 (M.D. Pa. Sept. 22, 2015) ("Further, it is undeniable that entities such as the defendants might anticipate that they are likely to experience data breaches, regardless of what preventative measures have been taken; therefore, it is implausible that they would ever agree to allow others to bring private actions against them for data breaches committed by unknown third parties."). Plaintiffs' implied contract claim should be dismissed accordingly.[9]

---

[9] In the event the Court finds that Plaintiffs are third-party beneficiaries entitled to sue on Deloitte's express contracts with the states (*see supra* Section II(C)(1)), Plaintiffs' implied contract claims should be dismissed. *See, e.g., City of Cincinnati v. Cincinnati Reds*, 19 Ohio App.3d 227, 483 N.E.2d 1181 (Ohio Ct. App. 1984).

### iii. Count VIII (Breach of Implied Covenant of Good Faith): The lack of any contract defeats Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiffs do not allege—and do not have—any contract with Deloitte. As explained above, Plaintiffs are not third-party beneficiaries of Deloitte's contract with the states, and Plaintiffs have not sufficiently alleged the existence of any implied contract with Deloitte. In the absence of any enforceable contract with Deloitte, Plaintiffs' claim for breach of the implied covenant of good faith fails. *See, e.g., Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007 WL 4532689, at *5 (Ohio Ct. App. 2007) ("Because appellant's complaint fails to state a claim for breach of contract, it also fails to state a claim for breach of the duty of good faith and fair dealing."); *Wessel v. Greer Mgm't Servs., Inc.*, No. 5–15–0259, 2016 WL 756953, at *2 (Ill. App. Ct. Feb. 24, 2016) (affirming dismissal of implied covenant claim "because breach of an implied covenant of good faith and fair dealing relie[s] on the existence of a valid and enforceable contract"); *Beal Corp. Liquidating Tr. v. Valleylab, Inc.*, 927 F. Supp. 1350, 1364 (D. Colo. 1996) ("The underlying contract, however, must be valid for the implied duty of good faith and fair dealing to adhere to the relationship.").[10]

### iv. Count IV (Unjust Enrichment): Plaintiffs' unjust enrichment claim fails because they do not allege that they conferred a benefit on Deloitte.

To state a claim for unjust enrichment, Plaintiffs must have conferred a benefit upon Deloitte. *See City of Elgin v. Arch Ins. Co.*, 53 N.E.3d 31, 42 (Ill. App. Ct. 2016); *Vancrest Mgmt. Corp. v. Mullenhour*, 140 N.E.3d 1051, 1067 (Ohio Ct. App. 2019); *Mandelbaum v. Fiserv, Inc.*,

---

[10] Even if the Court were to find an enforceable contract between Plaintiffs and Deloitte, Plaintiffs' claim for breach of the implied covenant of good faith should nonetheless be dismissed because it would be subsumed by their breach of contract claims. *See, e.g.*, *Williams v. Nat'l Ass'n for Advancement of Colored People*, 135 N.E.3d 1260, 1268 (Ohio Ct. App. 2019).

787 F. Supp. 2d 1226, 1244 (D. Colo. 2011). Plaintiffs do not identify any benefit that they conferred upon Deloitte. Instead, they allege they have an "interest" in their personal information, which was "conferred upon, collected by, and maintained by" Deloitte—and that Deloitte "enriched itself" by "saving the costs it reasonably should have expended on security measures." Am. Compl. ¶¶ 171-174. This does not constitute any cognizable benefit for purposes of an unjust enrichment claim; the claim should be dismissed accordingly. *See, e.g., Perdue*, 2020 WL 1917835, at *9 (dismissing unjust enrichment claim under Illinois law because plaintiffs did "not allege[] a benefit conferred in exchange for protection of their personal information").[11]

### D.  All of Plaintiffs' State Statutory Claims Fail.

Plaintiffs assert statutory consumer protection claims under the Colorado Consumer Protection Act ("CCPA") and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). These claims fail for the obvious reason that Plaintiffs are not "consumers" under the facts of this case: Plaintiffs did not purchase anything from Deloitte, nor did Deloitte solicit, market to, offer any goods or services to, or otherwise have any relationship whatsoever with Plaintiffs. By Plaintiffs' own admission, Deloitte provided services *to the states*—not to Plaintiffs. Similarly, Plaintiffs concede that they sought unemployment benefits *from the states*—not from Deloitte. Simply put, Plaintiffs are not actual or potential "consumers" of Deloitte, and their state consumer protection claims fail accordingly.

---

[11] If the Court were to find an enforceable contract between Plaintiffs and Deloitte, Plaintiffs' unjust enrichment claim should be dismissed in light of their breach of contract claims. *See Blanchard & Assocs. v. Lupin Pharm., Inc*., 900 F.3d 917, 921 (7th Cir. 2018) (under Illinois law, "[c]laims for breach of contract and unjust enrichment are mutually exclusive."); *Booth v. Copeco, Inc*., No. L-16-1227, 2017 WL 2241612, at *4 (Ohio Ct. App. May 19, 2017) ( "Where 'there is a valid, enforceable contract . . . the doctrine of unjust enrichment is not applicable.'"); *LaFondFX, Inc. v. Kopelman*, No. 16-cv-00726-RBJ, 2017 WL 818662, at *4 (D. Colo. Mar. 2, 2017) ("[U]nder Colorado law, a claim for unjust enrichment generally cannot proceed in the face of a valid, enforceable contract.").

### i.   Count X (Colorado Consumer Protection Act): Plaintiffs' CCPA claim fails.

The elements of a CCPA claim are: (1) that the defendant engaged in an unfair or deceptive trade practice; that the challenged practice (2) occurred in the course of defendant's business, vocation, or occupation, and (3) significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) causation. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). As described above, Plaintiffs are not "actual or potential consumers" of Deloitte. Plaintiffs' CCPA claim fails accordingly.

Separately, Plaintiffs fail to adequately plead a CCPA claim. Plaintiffs allege in conclusory fashion that Deloitte "[k]nowingly or recklessly" made misrepresentations and/or omissions regarding its cybersecurity practices. Am. Compl. ¶¶ 208. A CCPA claim sounding in fraud must be pled with particularity under Fed. R. Civ. P. 9(b). *See HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011). In *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-cv-02129-MSK-NYW, 2016 WL 8578096, at *11 (D. Colo. June 20, 2016), the court rejected a CCPA claim based on generic allegations that the defendant concealed inadequacies with its cybersecurity systems. Plaintiffs' CCPA similarly fails and should be dismissed accordingly.

### ii.   Count XI (Illinois Uniform Deceptive Trade Practices Act): Plaintiffs' IUDTPA claim fails.

The IUDTPA enumerates twelve "deceptive trade practices" that are prohibited under the statute, all of which relate to the marketing, advertising, offering and/or sale of goods or services. *See* Ill. Stat. 815 § 510/2(a). As discussed above, Deloitte did not sell, market, or offer any "goods or services" to Plaintiffs, nor did it "represent" anything to Plaintiffs whatsoever. Plaintiffs' IUDTPA claim fails accordingly.

Moreover, the IUDTPA "was enacted to prohibit unfair competition and was not intended to be a consumer protection statute." *Chabraja v. Avis Rent A Car Sys., Inc*., 192 Ill.App.3d 1074, 1079, 549 N.E.2d 872 (Ill. App. Ct. 1989). Thus, even assuming Plaintiffs could qualify as "consumers," the only type of action a consumer (as opposed to a market competitor) can bring under the IUDTPA is for forward-looking injunctive relief. *Reid v. Unilever U.S., Inc*., 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013). In order to obtain such relief, a consumer must demonstrate that he is likely to suffer future harm resulting from the defendant's conduct. *Id*. Plaintiffs cannot make such a showing here. Indeed, the Northern District of Ohio has already denied the *Bozin* Plaintiffs' TRO Motion on this very basis, explaining "it will be nearly impossible for the Court to determine whether any future use of the personal data of the plaintiffs would give rise to a finding of contempt." *Supra* pp. 4-5. Plaintiffs' IUDTPA claim should be dismissed accordingly. *See Perdue*, 2020 WL 1917835 at *15 (dismissing IUDTPA claim based on allegations of future harm stemming from data breach: "Courts have ruled that these types of allegations do not suffice as [a] threat of future harm").

### E.   Counts XII and XIII (Injunctive Relief and Declaratory Relief): Plaintiffs are Not Entitled to Injunctive or Declaratory Relief.

Because all of Plaintiffs' substantive claims fail, their injunctive and declaratory relief claims should also be dismissed. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 247 F.R.D. 420, 422–23 (S.D.N.Y.2007) ("[D]eclaratory relief is not a claim but only a remedy that Congress has created," and therefore "must be based on other laws that the defendant allegedly violated"); *Harbor Distrib. Corp. v. GTE Operations Support Inc*., 176 F.Supp.3d 204, 217 (E.D.N.Y. 2016) ("[A]s plaintiff's only substantive causes of action have been dismissed, plaintiff's claim for injunctive relief cannot stand.").

In any event, Plaintiffs are not entitled to declaratory or injunctive relief. Plaintiffs request that the Court enter a judgment declaring, *inter alia*, that "(i) Defendant owed (and continues to owe) a legal duty to safeguard and protect Plaintiffs' and Class Members' PII, (ii) Defendant breached (and continues to breach) such legal duties by failing to safeguard and protect Plaintiffs' and Class Members' PII, and (iii) Defendant's breach of its legal duties directly and proximately caused" the incident. Am. Compl. ¶ 233. But these are all elements that Plaintiffs must prove in order to prevail on their substantive claims. Because the relief sought is duplicative of Plaintiffs' other claims, Plaintiffs' request for declaratory relief "will serve 'no useful purpose'" and should be dismissed. *See Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) ("The fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.'"); *see also Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (declaratory relief impermissible where it simply seeks "an advance ruling" on a substantive issue in the litigation).

Plaintiffs' claim for injunctive relief fares no better. As explained above, the Northern District of Ohio already considered, and rejected, Plaintiffs' TRO Motion, concluding that Plaintiffs' allegation of past harm—*i.e.*, the temporary exposure of their personal information— was insufficient to demonstrate any future injury that could be addressed by a forward-looking injunction. *See Bozin*, Case No. 1:20-cv-5070-LJL, Dkt. No. 10, at 7-8. That same conclusion applies equally here, and Plaintiffs' claim for injunctive relief should be dismissed accordingly.

## CONCLUSION

For these reasons, Deloitte respectfully requests that the Amended Consolidated Complaint be dismissed under Rule 12(b)(1) for Plaintiffs' lack of standing and under Rule 12(b)(6) for failure to state a claim.

Respectfully submitted this 21st day of October, 2020.

/s/ Phyllis B. Sumner
Phyllis B. Sumner
(Admitted *Pro hac vice*)
Elizabeth D. Adler
(Admitted *Pro hac vice*)
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
psumner@kslaw.com
eadler@kslaw.com
(404) 572-4600

Alvin Y. Lee
King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
alvin.lee@kslaw.com
(212) 556-2100

**Counsel for Defendant Deloitte
Consulting LLP**