**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

PAUL CULBERTSON, KATHY NEAL,   :
KELLY ALLISON-PICKERING, JESSICA   :
HAIMAN, ALEXANDER CABOT, BRIANA   :
JULIUS, NICHELLE NEWLAND,   :
BERNADETTE NOLEN, ALEXANDREA   :   **CASE NO.** 1:20-cv-3962-LJL
POLICHENA, and MARK NIEDELSON,   :
individually and on behalf of all others similarly   :
situated,   :
  :   JUDGE LEWIS J. LIMAN
Plaintiffs,   :
  :
-v-   X

DELOITTE CONSULTING LLP,

      Defendant.

---------------------------------------------------------- 


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY**
**CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................. 1

II.  PROCEDURAL BACKGROUND................................................................................... 2

    A.   The Individual Cases............................................................................................ 2

    B.   The Consolidated Matter..................................................................................... 4

    C.   Legal Investigation and Settlement Negotiations ................................... 5

III. THE TERMS OF THE PROPOSED SETTLEMENT ...................................... 6

    A.   Certification of the Settlement Class ......................................................... 6

    B.   Relief for the Settlement Class Members ............................................... 7

    C.   Attorneys' Fee, Cost, and Service Award.............................................. 9

    D.   Settlement Administrator and the Notice Plan..................................... 9

IV.  ARGUMENT ............................................................................................................... 10

    A.   The Court Should Preliminarily Approve the Settlement...................... 10

    B.   Legal Standard ..................................................................................................... 10

    C.   The Settlement Agreement Is Procedurally Fair..................................... 11

    D.   The Settlement Is Substantively Fair .......................................................... 12

        1.   The complexity, expense, and likely duration of the litigation ............... 13

        2.   The reaction of the class to the settlement ................................................ 15

        3.   The stage of the proceedings and the amount of discovery completed.......................................................................................................... 15

        4.   The risks of establishing liability and damages ........................................ 16

        5.   The risk of maintaining class action status through trial ......................... 16

        6.   The ability of Defendant to withstand greater judgment ......................... 17

        7.   The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation ........ 17

    E.   The Court Should Preliminarily Certify the Settlement Class............................. 18

        1.   The Settlement Class meets all prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure ................................................................ 18

            (a)   Numerosity.................................................................................... 19

            (b)   Commonality................................................................................. 19

            (c)   Typicality ...................................................................................... 20

| | (d) | Adequacy of representation ........................................................... 21 |
| 2. | | The Settlement Class meets the requirements of Rule 23(b) ..................... 21 |
| | (a) | Common legal and factual questions predominate in this action........................................................................................ 22 |
| | (b) | A class action is the superior means to adjudicate Plaintiffs' claims ........................................................................................ 23 |
| F. | | The Court Should Approve the Proposed Notice Plan ........................................ 24 |
| V. | CONCLUSION | ................................................................................................ 26 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997)...................................................................................................21,22

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*,
　461 F.3d 219 (2d Cir. 2006)...............................................................................................22

*Banyai v. Mazur*,
　No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007).........................16

*Bodon v. Domino's Pizza, LLC*,
　No. 09-CV-2941, 2015 U.S. Dist. LEXIS 17358 (E.D.N.Y. Jan. 16, 2015) ...........................18

*Charron v. Wiener*,
　731 F.3d 241 (2d Cir. 2013).......................................................................................10,13,21

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)..................................................................................................12

*Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974)................................................................................................13

*Dupler v. Costco Wholesale Corp.*,
　705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................13

*Fogarazzo v. Lehman Bros.*,
　232 F.R.D. 176 (S.D.N.Y. 2005) ........................................................................................20

*Gen. Tel. Co. of the Southwest v. Falcon*,
　457 U.S. 147 (1982)............................................................................................................17

*Hadel v. Gaucho, LLC*,
　No. 15 Civ. 3706, 2016 U.S. Dist. LEXIS 33085 (S.D.N.Y. Mar. 14, 2016).........................11

*Hall v. Prosource Techs., LLC*,
　No. 14-CV-2502, 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11, 2016) .........................12

*Handschu v. Special Services Div.*,
　787 F.2d 828 (2d Cir. 1986)................................................................................................24

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
　No. CV JKB-16-3025, 2019 WL 3183651 (D. Md. July 15, 2019) .......................................20

*IMAX Securities Litigation,*
   283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................15

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..............................................................20

*In re Nissan Radiator,*
   No. 10 CV 7493, 2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) ........20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ................................................................15

*In re Sinus Buster Prods. Consumer Litig.,*
   No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415 (E.D.N.Y. Nov. 10, 2014)......17

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
   No. 06-cv-5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ....................15

*In re Target Corp. Customer Data Sec. Breach Litigation,*
   309 F.R.D. 482 (D. Minn. 2015)........................................................................14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ...............22

*Kelen v. World Fin. Network Nat. Bank,*
   295 F.R.D. 87 (S.D.N.Y. 2013) .........................................................................19

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,*
   No. 15-CV-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016)..................15

*Manley v. Midan Rest. Inc.,*
   No. 14 Civ. 1693, 2016 U.S. Dist. LEXIS 43571 (S.D.N.Y. Mar. 30, 2016)...............11,13,14

*Marisol A. by Forbes v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997)..............................................................................21

*McReynolds v. Richards-Cantave,*
   588 F.3d 790, 803 (2d Cir. 2009) ..............................................................10,12,13

*Meredith Corp. v. SESAC, LLC,*
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)..........................................................13,14,23

*Mills v. Capital One, N.A.,*
   No. 14 Civ 1937, 2015 U.S. Dist. LEXIS 133530 (S.D.N.Y. Sept. 30, 2015) ........17

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993)..................................................................................20

*Smith v. Triad of Alabama, LLC,*
    No. 1:14-cv-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)...............................14

*Sykes v. Mel S. Harris & Assocs. LLC,*
    780 F.3d 70 (2d Cir. 2015)...................................................................................19

*Tart v. Lions Gate Entm't Corp.,*
    No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015)...............11,22,23

*Vargas v. Capital One Fin. Advisors,*
    2014 U.S. App. LEXIS 4689 (2d Cir. 2014) ........................................................24

*Viafara v. MCIZ Corp.,*
    No. 12 Civ 7452, 2014 U.S. Dist. LEXIS 60695 (S.D.N.Y. Apr. 30, 2014)..........................17

*Wal- Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..........................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)..............................................................10,11,17,24,26

*Willix v. Healthfirst, Inc.,*
    No. 07 Civ 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ........................16

Zeltser v. Merrill Lynch & Co.,
    No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sep. 23, 2014).................16,23

**Statutes and Rules**

Fed. R. Civ. P. 23(a) .................................................................................19

Fed. R. Civ. P. 23(a)(1).............................................................................19

Fed. R. Civ. P. 23(a)(2).............................................................................19

Fed. R. Civ. P. 23(a)(4)..............................................................................21

Fed. R. Civ. P. 23(b)(3)...........................................................................22,23

Fed. R. Civ. P. 23(c)-(e)..............................................................................6

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................25

Fed. R. Civ. P. 23(e)(2)..................................................................................................10

Fed. R. Civ. P. 23(g) ....................................................................................................6

**Other Authorities**

Federal Judicial Center,
*Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010)...25

Federal Judicial Center,
*Managing Class Action Litigation: A Pocket Guide for Judges* (3d Ed. 2010)…………………..25

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)………………………… 11

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004)……………………... 24

Plaintiffs Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandra Polichena, and   Mark Niedelson (collectively, "Plaintiffs"),[1] individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.

## I.   INTRODUCTION

This proposed class action settlement would resolve the claims of individuals in Illinois, Colorado, and Ohio who were notified that certain personal information they submitted to the Pandemic Unemployment Assistance ("PUA") Program in their respective states in connection with applying for pandemic-related unemployment claims may have been inadvertently exposed as a result of a data security incident (the "PUA Data Security Incident").

In the litigation, Plaintiffs sued Deloitte Consulting LLP ("Deloitte Consulting"), asserting claims for declaratory and injunctive relief and seeking to recover damages individually and on behalf of classes of individuals in Ohio, Illinois, and Colorado whose personal information may have been exposed due to Deloitte Consulting's alleged failure to use reasonable data security measures in designing, building, and maintaining web-based portals for the State Agencies through which individuals could apply for unemployment benefits.[2]

Deloitte Consulting has defended the litigation on several grounds, asserting that (a) Plaintiffs lacked a cognizable injury fairly traceable to Deloitte Consulting, (b) Deloitte Consulting

---

[1] Plaintiffs' First Consolidated Amended Complaint asserts claims on behalf of Jessica Haiman. Investigation by Interim Class Counsel and Deloitte Consulting counsel determined that Plaintiff Haiman was not a member of the class.  Consequently, Plaintiffs intend to file a notice of voluntary dismissal of her claims.

[2] The relevant agencies include the Ohio Department of Job and Family Services, the Illinois Department of Employment Security, and the Colorado Department of Labor and Employment (collectively "State Agencies").

did not have a legal duty to protect Plaintiffs' personal information, and (c) Plaintiffs could not establish that they were third party beneficiaries of the contracts between Deloitte Consulting and the State Agencies.

Plaintiffs and Deloitte Consulting have agreed to enter into a Settlement Agreement to avoid further burden, expense, and uncertainty of protracted litigation. To settle the case, Deloitte Consulting will establish a Settlement Fund of $4.95 million, with no right to reversion, that will compensate Eligible Claimants, pay costs of notice and claims administration, and pay Court-approved reasonable attorneys' fees and costs and service awards to the class representatives.

## II.     PROCEDURAL BACKGROUND

### A.     The Individual Cases

On May 21, 2020, Plaintiffs Paul Culbertson, William Gibson, and Timothy Sylvester, through their counsel Morgan & Morgan, Goldenberg Schneider, L.P.A., The Lyon Firm, P.C., Levin Sedran & Berman, and Mason Lietz & Klinger, LLP, filed a Class Action Complaint against Deloitte Consulting alleging negligence, breach of implied contract, invasion of privacy, unjust enrichment, and bailment based on Deloitte Consulting's alleged failure to secure and safeguard Plaintiffs' and class members' personally identifiable information. Case No. 1:20-cv-03962-LJL, Compl., ECF No. 1. The case was assigned to Judge Lewis J. Liman.

On the same day, Plaintiffs Daniel Bozin, Timothy Smith, and Alexandria Polichena, through their counsel DannLaw and Zimmerman Law Offices, P.C., filed a Class Action Complaint against Deloitte Consulting in the Cuyahoga County Court of Common Pleas, which Deloitte Consulting removed to the Northern District of Ohio. Case No. 1:20-cv-05070-LJL, ECF No. 1. The Complaint alleged that Deloitte Consulting was negligent in its failure to protect Plaintiffs' and class members' personally identifiable information. *Id.*, Ex. A. On June 1, 2020,

Plaintiffs filed a motion for temporary restraining order or preliminary injunction to order Deloitte Consulting to secure the personal and financial information of Plaintiffs and other impacted applicants, along with an amended class action complaint. ECF No. 4. The Court denied the motion on June 4, 2020. ECF No. 10. On June 5, 2020, Deloitte Consulting filed a motion to transfer the case to the Southern District of New York due to the pending related matters in that court. ECF No. 12.

On May 27, 2020, Plaintiff Janet Burns, through her counsel Kaplan Fox & Kilsheimer, LLP and Meyer Wilson Co. L.P.A. filed a Class Action Complaint against Deloitte Consulting, alleging violations of the Fair Credit Reporting Act and the New York General Business Law, Section 349, breach of contract and the implied covenant of good faith and fair dealing, negligence, invasion of privacy, bailment, and breach of confidence, based on Deloitte Consulting's alleged failure to protect Plaintiff's and class members' personally identifiable information. Case. No. 1:20-cv-04077-LJL, Compl., ECF No. 1. The following day, Plaintiff filed a Statement of Relatedness to the *Culbertson* matter. ECF No. 6.

On May 29, 2020, Plaintiff Melissa Alexander, through her counsel Tycko & Zavreei, LLP, Pearson, Simon & Warshaw, LLP, and Kopelowitz Ostrow Ferguson Weiselberg Gilbert, filed a Class Action Complaint against Deloitte Consulting alleging negligence, breach of implied contract, and unjust enrichment, on the basis that Deloitte Consulting had allegedly failed to protect Plaintiff's and class members' personally identifiable information. Case No. 1:20-cv-04129-LJL, Compl., ECF No. 1. Plaintiff filed a Statement of Relatedness to the *Culbertson* matter on the same day. ECF No. 4.

On June 8, 2020, Kathy Neal, through her counsel Carlson Lynch LLP and Freed Kanner London & Millen LLC, filed a Class Action Complaint against Deloitte Consulting, alleging

negligence, breach of implied contract, bailment, unjust enrichment, and violation of New York General Business Law § 349, on the basis of Deloitte Consulting's alleged failure to protect Plaintiff's and class members' personally identifiable information. Case No. 1:20-cv-04362-LJL, Compl., ECF No. 1. On June 10, 2020, Plaintiff filed a Statement of Relatedness to the *Culbertson* matter. ECF No. 6.

### B.     The Consolidated Matter

On June 23, 2020, the Court consolidated the *Culbertson*, *Alexander*, *Burns*, and *Neal* cases. The Court directed counsel to make filings only under the case number of the *Culbertson* matter, 20-cv-3962. Case 1:20-cv-04129-LJL, ECF 13. On July 2, 2020, the Court consolidated the *Culbertson* matter with the *Bozin* matter and directed counsel to make filings only on the *Culbertson* docket. ECF No. 36.

On July 24, 2020, Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Jessica Haiman, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, and Alexandria Polichena, filed a Consolidated Class Action Complaint, asserting thirteen counts against Deloitte Consulting for its alleged failure to protect Plaintiffs' and class members' personally identifiable information. ECF No. 61. On August 24, 2020, Deloitte Consulting filed a Motion to Dismiss the Consolidated Class Action Complaint. ECF No. 68.

On September 15, 2020, the Court appointed interim class counsel. ECF No. 79. On September 18, 2020, Plaintiffs' counsel informed the Court that counsel for another similar action, *Niedelson*, dismissed their complaint on September 16, 2020, and Plaintiff Niedelson would be added as a party to the Consolidated Complaint to be filed on September 21, 2020. ECF No. 80. On September 21, 2020, Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Jessica Haiman, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandria Polichena, and

Mark Niedelson, through their counsel, filed a First Amended Consolidated Class Action Complaint against Deloitte Consulting. ECF No. 82. The Complaint alleged thirteen counts, all related to Deloitte Consulting's alleged failure to protect Plaintiffs' and class members' personally identifiable information, and the harm suffered due to the resulting data breach. On October 21, 2020, Deloitte Consulting again moved to dismiss Plaintiffs' Amended Consolidated Class Action Complaint. ECF No. 88. Plaintiffs filed a memorandum opposing the motion to dismiss on November 23, 2020, ECF No. 103, and Defendant filed its reply in support of the motion to dismiss on December 21, 2020. ECF No. 111.

### C.    Legal Investigation and Settlement Negotiations

Counsel for Plaintiffs in the consolidated action embarked on the settlement process jointly, with all counsel working together to analyze the legal landscape thoroughly – including issues related to tort remedies, contract remedies, and class certification -- to fully evaluate the risks and benefits to potential early resolution. Declaration of Jeffrey S. Goldenberg In Support Of Motion For Preliminary Approval ("Goldenberg Decl."), ¶6, filed concurrently.  Topics analyzed included the value of personal identifying information; hacking; consequences of data breaches, including exposure of private financial account information and social security numbers; industry standards for data security; and Deloitte Consulting's representations regarding its security features to protect personal identifying information, as well as detailed information about the PUA Data Security Incident.  *Id*. at ¶7.  Interim Class Counsel also analyzed guides issued by the Federal Trade Commission intended to provide information and recommendations to businesses about basic security standards.  *Id*. at ¶8.

On January 29, 2021, the parties jointly moved to stay the consolidated action for 90 days in order to allow them to pursue settlement negotiations. ECF No. 117. Following a status

conference and pursuant to the Court's request, Deloitte Consulting contemporaneously filed a Notice of Withdrawal of its Motion to Dismiss Without Prejudice. ECF No. 116.

The settlement negotiations were conducted at arm's length over a period of several months. Goldenberg Decl., ¶9.  On April 28, 2021, the parties participated in mediation with Hon. Wayne Anderson (ret.) via Zoom.  *Id.* at ¶10.  At that mediation, the parties reached an agreement in principle to resolve the action.  *Id.* at ¶11.  The parties spent months working out the details of the settlement, which are the product of hard-fought, arm's length negotiations.  *Id.* at ¶12.

The Settlement Agreement resolves claims regarding Deloitte Consulting's allegedly deficient security practices with respect to the Settlement Class Members' personal identifying information.  The Settlement Agreement provides significant monetary relief to the Settlement Class Members by way of a Gross Settlement Fund of $4.95 million.

Plaintiffs respectfully ask the Court to grant preliminary approval of the settlement, approve the Notice Plan because it meets the requirements of due process and is the best notice practicable under the circumstances, and schedule a Final Approval Hearing.  *See* Fed. R. Civ. P. 23(c)-(e).  Plaintiffs also respectfully request to be appointed as representatives for the Settlement Class and for their counsel to be appointed as Settlement Class Counsel.  *See* Fed. R. Civ. P. 23(g).

## III.    THE TERMS OF THE PROPOSED SETTLEMENT[3]

The Settlement Agreement defines the Settlement Class, describes the parties' agreed-upon exchange of consideration, and proposes a plan for disseminating notice and administering claims for the Settlement Class Members.

### A.    Certification of the Settlement Class

---

[3]    Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement, which is attached as Exhibit A to the Goldenberg Decl.

Under the Settlement Agreement, the Parties agree to certification of a nationwide

Settlement Class for settlement purposes, defined as follows:

> The 237,675 individuals identified on the Settlement Class List, in Illinois, Colorado, and
> Ohio who were notified via letter or email by the State Agencies between approximately
> May 18, 2020 and May 21, 2020 that certain personal information they submitted to the
> PUA systems in their respective states in connection with applying for pandemic-related
> unemployment claims may have been inadvertently exposed in the PUA Data Security
> Incident. Excluded from the Settlement Class are: (1) the judges presiding over this Action,
> and members of their direct families; (2) the Defendant, its subsidiaries, parent companies,
> successors, predecessors, and any entity in which the Defendant or its parents have a
> controlling interest and their current or former officers, directors, and employees; and (3)
> Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out
> Deadline

¶35.[4]

## B.    Relief for the Settlement Class Members

The Settlement Agreement provides for significant monetary relief.    The Settlement

Agreement provides that Deloitte Consulting will establish a Gross Settlement Fund in the amount

of $4.95 million, which will be exhausted to pay all Claims of Eligible Claimants, as well as any

Attorneys' Fees, Costs, Service Awards, and Settlement Administration Costs that are approved

by the Court.    §II

Eligible Claimants will receive $20.00 /hour for lost time they spent responding to the PUA

Data Security Incident, provided they can demonstrate that this lost time is fairly traceable to the

PUA Data Security Incident. Ex. A, ¶2. All Settlement Class Members may submit a claim for

reimbursement of Attested Time up to four (4) hours at $20.00 per hour for self-certified Attested

Time. Settlement Class Members may also submit an additional Attested Time request for up to

eight (8) additional hours at $20.00 per hour for documented time that is supported by Reasonable

---

[4] References to "§ __" or "¶ __" refer to the corresponding sections and paragraphs of the Settlement
Agreement. References to "Ex. A" refer to the Claims Administration Protocol attached as Exhibit A to the
Settlement Agreement.

Documentation. *Id*.  Members of the Settlement Class may also make claims for reimbursement of expenses up to $120 for the purchase of identity protection or credit monitoring services occurring after receipt of the notice of the PUA Data Security Incident and before August 30, 2020. Ex. A, ¶1. Settlement Class members may submit claims electronically through a settlement website or by using a hard copy claim form. Ex. A, ¶13.

In the event that the aggregate amount of all Settlement Payments (i.e., the costs of valid claims, attorneys' fees, service awards, and administrator expenses) exceeds the total amount of the Net Settlement Fund, then each Settlement Class Member's claim shall be proportionately reduced on a pro rata basis. Ex. A, ¶14a.  In the event that the aggregate amount of all Settlement Payments does not exceed the total amount of the Net Settlement Fund, then each Settlement Class Member's claim shall be proportionately increased on a pro rata basis (in other words, in equal amounts to each claimant ) for an additional sum up to $200.00 per Settlement Class Member.  Ex. A, ¶14b.

The Settlement Agreement also recognizes that Deloitte Consulting has undertaken certain Remediation and Security enhancements related to the PUA Data Security Incident. ¶50. Deloitte Consulting determined that a small number of claimants performed searches on a Correspondence Query page that was designed to be used only by PUA staff due to a role-to-function mapping error. *Id*. Working with the State Agencies, Deloitte Consulting corrected the errant mapping within an hour. *Id*. This step removed the ability for a claimant to run searches on the Correspondence Query page. *Id*. Deloitte Consulting also determined that a small number of claimants were incorrectly being presented with the option to navigate to the Correspondence Query page because the system lost context and defaulted to assuming that the user was a staff member. *Id*. Working with the State Agencies, Deloitte Consulting remediated this by configuring

the system to default to an error when it loses user type context about the user type and claimants can no longer navigate to the Correspondence Query page. *Id*.

In addition to these remediation measures, Deloitte Consulting, working with the State Agencies, also reviewed the role-to-function mappings in the PUA applications to confirm users have only necessary authorizations; and conducted data minimization reviews of the PUA applications to reduce the display of personal data and minimized the display of certain personal data. ¶50

### C.    Attorneys' Fee, Cost, and Service Award

Within the time period established by the Court, Settlement Class Counsel will file a Fee Application for an award of attorneys' fees and Litigation Costs and Expenses to be paid from the Settlement Fund. §X. Settlement Class Counsel's request for an award of attorneys' fees will not exceed one-third (33.33%) of the Settlement Fund, or $1,649,835.00, and Settlement Class Counsel's request for reimbursement of expenses will not exceed $25,000.00. ¶73. Settlement Class Counsel will also file a petition for reasonable service awards for each named plaintiff, not to exceed $2,000 each, to be paid from the Settlement Fund as approved by the Court. §IX.

### D.    Settlement Administrator and the Notice Plan

Within twenty-one days after the date of the Preliminary Approval Order, Deloitte Consulting, working with the State Agencies, shall provide the Settlement Class List to the Settlement Administrator. ¶51. Within thirty days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class. *Id*. Notice shall be disseminated via U.S. mail to all Settlement Class members and also via e-mail to Settlement Class Members whose personal e-mail addresses are known. *Id*. Settlement Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class

Members at any time prior to the Claims Deadline. *Id*. Because the class is defined to include only those individuals who were notified via letter or email about the PUA Data Security Incident, this method of notice should reach the entirety, or nearly the entirety, of the Class.

## IV.   ARGUMENT

### A.   The Court Should Preliminarily Approve the Settlement

Settlement Class Counsel have worked persistently to reach a fair, reasonable, and adequate settlement.  Plaintiffs and Settlement Class Counsel believe their claims are strong and are optimistic about obtaining class certification and succeeding on the merits. However, significant expense and risk attend the continued prosecution of the claims through trial and any appeals. In negotiating and evaluating the settlement, Plaintiffs and Settlement Class Counsel have taken these costs and uncertainties into account, as well as the risks and delays inherent in complex class action litigation. Settlement Class Counsel believe the proposed Settlement provides significant relief to the Settlement Class members and is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### B.   Legal Standard

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).

The Second Circuit Court of Appeals has recognized a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d

Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa*, 396 F.3d at 117 (citation omitted); *see also Hadel v. Gaucho, LLC*, No. 15 Civ. 3706, 2016 U.S. Dist. LEXIS 33085, at *4 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

"Preliminary approval is the first step in the settlement of a class action whereby the court 'must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement.'" *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693, 2016 U.S. Dist. LEXIS 43571, at *21 (S.D.N.Y. Mar. 30, 2016) (citations omitted). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id*. (citations and quotations omitted); *accord Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *8 (citation omitted). This settlement is both procedurally and substantively fair and falls well within the range of possible approval.

## C.     The Settlement Agreement Is Procedurally Fair

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *accord McReynolds*, 588 F.3d at 804; *see also Hall v. Prosource Techs., LLC*, No. 14-CV-2502, 2016 U.S. Dist. LEXIS 53791, at *18 (E.D.N.Y. Apr. 11, 2016).

First, the negotiations were conducted at arms' length over a period of several months. *See* Goldenberg Decl., ¶9. After months of negotiation, the parties participated in a mediation session with JAMS mediator Hon. Wayne Anderson (ret.) and reached an agreement in principle. *Id*. at ¶¶10-11. The negotiations were hard fought, and counsel for all parties participated vigorously with competing agendas.

Second, the discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, consumer class actions. *Id*. at ¶13. Experienced lawyers from across the nation advocated for the interests of the Settlement Class throughout negotiations, utilizing their combined experience of several decades litigating consumer class actions, including breach of privacy claims, to ensure the proposed settlement serves the best interests of the Settlement Class. *Id*. at ¶14.

Third, Plaintiffs and Settlement Class Counsel thoroughly evaluated the merits of the claims and defenses, the likelihood the Court would certify the litigation for class treatment, and the likelihood of success at trial and upon appeal. *Id*. at 15. As a result of this analysis, Settlement Class Counsel obtained an understanding of the strengths and weaknesses of the litigation. For the foregoing reasons, the Settlement Agreement is procedurally fair.

**D.    The Settlement Is Substantively Fair**

To demonstrate the substantive fairness of a settlement agreement, a party must satisfy the factors the Second Circuit set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"); *Charron*, 731 F.3d at 247. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463). The *Grinnell* factors are used to evaluate settlements at the final approval stage, and guide courts at the preliminary approval stage, at which Plaintiffs have a lower burden.   Here, the *Grinnell* factors overwhelmingly favor preliminary approval of the Settlement Agreement.

## 1.  The complexity, expense, and likely duration of the litigation

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted).  Consumer class action lawsuits by their very nature are complex, expensive, and lengthy.  *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 U.S. Dist. LEXIS 43571, at *9 ("Most class actions are inherently complex[.]").  Should the Court decline to approve the proposed settlement, the continuing litigation would be costly, complex, and time-consuming.

There would undoubtedly be a contested class certification motion. Deloitte Consulting would likely argue that damages could not be calculated on a class-wide basis, that differences in state law would preclude a multi-state class, and that the question of whether individual injuries were fairly traceable to the Defendant would predominate over class-wide issues.  Class issues

involving damages would likely generate expert discovery and *Daubert* motions as well.  Although Plaintiffs are confident in their ultimate success in certifying a class, *see In re Target Corp. Customer Data Sec. Breach Litigation*, 309 F.R.D. 482 (D. Minn. 2015) (certifying class in data breach case), *Smith v. Triad of Alabama, LLC*, No. 1:14-cv-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) (same), a positive ruling would no doubt be challenged by a decertification motion and/or appeal.

Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about reasonable steps that a business must take to protect data; whether the steps taken before and after the PUA Data Security Incident were reasonable; and the reliability of competing damages models, as well as the cost attributable to a data breach and the time spent rectifying any exposure of personal data.  Each step towards trial would be subject to Deloitte Consulting's vigorous opposition and possible interlocutory appeal. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources.

Moreover, Deloitte Consulting would be expected to offer substantial defenses at trial concerning the applicability of various statutory and common law claims, including whether class members were injured and had standing, whether Defendant had a duty to preserve the security of class members' data, and whether any injury suffered by class members would be compensable under Plaintiffs' legal theories.  Although Plaintiffs believe they would ultimately prevail, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *9 (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the

class prompt [] compensation for prior [] injuries." *Id.* For all of these reasons, this factor weighs strongly in favor of preliminary approval.

### 2.   The reaction of the class to the settlement

It is premature to address the reaction of the Settlement Class at the preliminary approval stage where no data is yet available.

### 3.   The stage of the proceedings and the amount of discovery completed

The third *Grinnell* factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

In order to meet this requirement, "formal discovery need not have necessarily been undertaken yet by the parties." *In re IMAX Securities Litigation*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (citing *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)). It is appropriate for Plaintiffs to enter into a settlement after "Class Counsel [has] conducted extensive investigation into the facts, circumstances, and legal issues associated with this case[,]" particularly when, as here, the case is not one "that [is] likely to turn on facts initially in Defendant's sole possession." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *9 (D. Conn. Nov. 3, 2016).

Here, in addition to conducting extensive legal research and into the merits of the case (and likelihood of protracted litigation), the parties have engaged in informal settlement discovery, conferred with the expert consultants, exchanged mediation briefs, and mediated before the Honorable Wayne R. Andersen. This factor therefore weighs in favor of approval of the settlement.

### 4.       The risks of establishing liability and damages

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted).  "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 22342, at *30 (S.D.N.Y. Mar. 27, 2007) (citation omitted); *accord Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635, at *14 (S.D.N.Y. Sep. 23, 2014).

Plaintiffs recognize that, as with any litigation, uncertainties exist.  Deloitte Consulting continues to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Deloitte Consulting will vigorously defend itself on the merits, at each stage of litigation and likely on appeal.

Most fundamentally, while Plaintiffs believe that Deloitte Consulting had a duty to protect the security of Plaintiffs' private data and breached that duty by failing to implement reasonable security measures, a jury might not agree.  In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to Deloitte Consulting's claims regarding its actions before and after the PUA Data Security Incident and regarding the calculations of damages.  For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages strongly support preliminary approval.

### 5.       The risk of maintaining class action status through trial

The litigation settled before rulings on class certification, and the current certification is for settlement purposes only. ¶58.  As discussed above, in addition to the challenges inherent in certifying a potential class spanning multiple states, Plaintiffs must proffer a suitable mechanism for calculating class-wide damages.  While Plaintiffs believe they could establish the existence of

such a mechanism to the Court's satisfaction, this proposed settlement eliminates the unavoidable risk that they cannot. Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Given the risks, this factor weighs in favor of preliminary approval. *See, e.g.*, *Mills v. Capital One, N.A.*, No. 14 Civ 1937, 2015 U.S. Dist. LEXIS 133530, at *10-11 (S.D.N.Y. Sept. 30, 2015).

### 6. The ability of Defendant to withstand greater judgment

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415, at *25 (E.D.N.Y. Nov. 10, 2014) (citations omitted). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12 Civ 7452, 2014 U.S. Dist. LEXIS 60695, at *21 (S.D.N.Y. Apr. 30, 2014) (citation omitted). Although Deloitte Consulting may be able to withstand a greater judgment, the agreed-to settlement fund is fair and adequate when weighing the likelihood of success and overall value of Settlement Class Member's individual damages should the litigation proceed to trial. For these reasons, this factor is neutral.

### 7. The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Visa*, 396 F.3d at 119 (citation omitted). "In other words, the question for the Court is not whether the settlement represents the

highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2015 U.S. Dist. LEXIS 17358, at *18 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The gravamen of the litigation is that Deloitte Consulting violated its duty to class members by failing to undertake reasonable security measures, leading to the potential exposure of their personal and highly sensitive financial data. The remediation measures undertaken by Defendant—i.e., rectifying the errors that led to the breach, minimizing the display of data, review of the websites, funding one year of credit monitoring and staffing a call center and email address to answer questions—prevented any further harm. Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to economic damages incurred.

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Although ongoing litigation may not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure of resources by both Parties and the Court. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement Agreement is fair, adequate, and reasonable.

### E.    The Court Should Preliminarily Certify the Settlement Class

As Plaintiffs set forth below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### 1.    The Settlement Class meets all prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation.  Fed. R. Civ. P. 23(a).  The Settlement Class meets each prerequisite of Rule 23(a).

### (a)      Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1).  In the Second Circuit, "a proposed class of more than forty members presumptively satisfies the numerosity requirement . . . ." *Kelen v. World Fin. Network Nat. Bank*, 295 F.R.D. 87, 92 (S.D.N.Y. 2013) (collecting cases).  Here, the settlement class is defined as "the 237,635 individuals . . . who were notified" about the data breach. Given that 40 individuals would satisfy numerosity, there is no question that 237,635 must as well.

### (b)      Commonality

Under Rule 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2).  Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* at 359 (citations omitted). Plaintiffs need only show that their injuries stemmed from Defendant's "unitary course of conduct."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015).  Here, common questions include, but are not limited to, whether Deloitte Consulting had a duty to protect class members' data and whether Deloitte Consulting breached that duty by failing to enact reasonable security measures.  Resolution of this

common question would require evaluation of the question's merits under a single objective standard, i.e., "whether [Defendant] had a legal duty to adequately protect Settlement Class Members' personal information; . . . whether [Defendant] breached that legal duty; and . . . whether Plaintiffs and members of the class suffered injury as a result of [Defendant]'s failure to act." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., No. CV JKB-16-3025, 2019 WL 3183651, at *3 (D. Md. July 15, 2019) (approving settlement in data breach case). Thus, commonality is satisfied.

### (c)     Typicality

Under Rule 23(a)(3), plaintiffs must show that the proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3).  Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented."  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims."  *In re Nissan Radiator*, No. 10 CV 7493, 2013 U.S. Dist. LEXIS 116720, at *53 (S.D.N.Y. May 30, 2013); *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement is not demanding.").  Here, typicality is met because the same allegedly unlawful conduct by Deloitte Consulting was directed at, or affected, Plaintiffs and the members of the proposed Settlement Class.  *Robidoux*, 987 F.2d at 936–37. Each Named Plaintiff, like each class member, received a notice regarding the PUA Data Security Incident from the State Agencies. Their claims are thus typical of the class. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) (finding typicality in data breach claim as to the settlement class "[b]ecause this claim revolves around [Defendant]'s conduct, as opposed to the characteristics of a particular class member's claim").

(d)     **Adequacy of representation**

Under Rule 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class's representative(s) and its members. *Charron*, 731 F.3d at 249.  Here, Plaintiffs possess the same interests as the proposed Settlement Class Members because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly inadequate security measures and the same data breach.

With respect to the second requirement, Interim Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Interim Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including data breach cases, and numerous appointments as class counsel. *See* Goldenberg Decl., ¶16; Doc. 75.

2.     **The Settlement Class meets the requirements of Rule 23(b)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs seek certification under Rule 23(b)(3) which requires that "questions of law or fact common to class members predominate over any questions affecting only

individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

(a)      <strong>Common legal and factual questions predominate in this action</strong>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623 (citation omitted).  The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."  *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227-28 (2d Cir. 2006) (citations omitted).  In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial."  *Id.* at 620.  As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context."  *Tart*, 2015 U.S. Dist. LEXIS 139266, at *4 (citation omitted).  Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted) (collecting cases).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Deloitte Consulting had a duty to the class to prevent exposure of their private data and whether Deloitte Consulting took reasonable actions to prevent the PUA Data Security

22

Incident. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). The Settlement Class meets the predominance requirement for settlement purposes.

> **(b)      A class action is the superior means to adjudicate Plaintiffs' claims**

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Here, the class action mechanism is superior to individual actions for numerous reasons.  First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661 (citation omitted).

Additionally, a class action is superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *8 (citation omitted).  As a result of the uncertainty of the cost to each class member of the potential exposure of their data, the expense and burden of litigation make it virtually impossible for the Settlement Class Members to seek redress on an individual basis.  By contrast, in a class action, the cost of litigation is spread across the entire class, thereby making litigation and recovery economically viable.  *See, e.g.*, *Tart*, 2015 U.S. Dist. LEXIS 139266, at *5.  "Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser*, 2014 U.S. Dist. LEXIS 135635,

at \*8-9 (citations omitted). For all of the foregoing reasons, a class action is superior to individual suits. The requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and the Court should preliminarily certify the Settlement Class.

### F. The Court Should Approve the Proposed Notice Plan

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113 (citations omitted). The Court has broad power over approving procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness imposed under the due process clauses in the U.S. Constitution impose. *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 2014 U.S. App. LEXIS 4689, at \*26 (2d Cir. 2014) (summary order). Here, the proposed Notice Plan meets the requirements of due process and the Federal Rules of Civil Procedure.[5] Within twenty-one days after the date of the Preliminary Approval Order, Deloitte Consulting, working with the State Agencies, will provide the Settlement Class List to the Settlement Administrator. ¶51. Within thirty days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class. *Id*. Notice shall be disseminated via U.S. mail to all Settlement Class

---

[5] Declaration of Steven Weisbrot, Esq., of Angeion Group, LLC Re: The Proposed Notice Plan, ¶¶27-28, filed concurrently.

members and also via e-mail to Settlement Class Members whose personal e-mail addresses are known. *Id*. Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members at any time prior to the Claims Deadline. *Id*.

These proposed methods for providing notice are reasonable, given that they identify the Settlement Class Members with precision and Deloitte Consulting or the State Agencies has the email or mailing address for all, or nearly all, of the Settlement Class members. This is far beyond the minimum number of class members who must be reached in settlements. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) at 3 ("It is reasonable to reach between 70-95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%"); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d Ed. 2010) at 27 (explaining the "reach" of a proposed class action notice plan is normally within a range of 70-95%).[6] Direct notice through email and postcards will go to every, or nearly every, member of the class.

Substantively, Rule 23(c)(2)(B) requires, and the Notices of Settlement provide, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must

---

[6] Copies of the proposed Long Form Notice, Postcard Notice, and Claim Form are attached as Exhibit 1 to the Settlement Agreement.

'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Visa*, 396 F.3d at 114. The Notices of Settlement define the Settlement Class; explain all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and describe in detail the monetary relief provided by the Settlement, including the procedures for allocating and distributing the Gross Settlement Fund amongst the Settlement Class Members, Plaintiffs, Interim Class Counsel, and the Settlement Administrator.  They also plainly indicate the time and place of the Final Approval, and explain the methods for objecting to, or opting out of the Settlement.  They detail the provisions for payment of Attorneys' Fees, Costs and Service Awards, and they provide contact information for Class Counsel.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class and appoint Plaintiffs as the class representatives and their counsel as Class Counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the Notice Plan; and (4) set a date and time for the Final Approval Hearing.  A proposed Order granting this Motion is attached as Exhibit 2 to the Goldenberg Decl.

Dated: August 18, 2021                       Respectfully submitted,


By: */s/Frederic S. Fox*

GOLDENBERG SCHNEIDER, L.P.A.
Jeffrey S. Goldenberg*
4445 Lake Forest Drive, Suite 490
Cincinnati, OH  45242
Phone: (513) 345-8297
Fax:    (513) 345-8294
jgoldenberg@gs-legal.com

**Interim Lead Counsel**

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox (S.D.N.Y. Bar FF9102)
850 Third Avenue
New York, NY 10022
Phone: (212) 687-1980
Fax:    (212) 687-7714
ffox@kaplanfox.com
**Interim Liaison Counsel**

LEVIN SEDRAN & BERMAN, LLP
Charles E. Schaffer*
510 Walnut Street – Suite 500
Philadelphia, PA  19106-3697
Phone: (215) 592-1500
cschaffer@lfsblaw.com
**Interim Executive Committee**

MORGAN & MORGAN
John A. Yanchunis*
201 North Franklin Street, 7th Floor
Tampa,  Florida 33602
Phone: (813) 275-5272
JYanchunis@ForThePeople.com
**Interim Executive Committee**

PEARSON, SIMON & WARSHAW, LLP
Melissa S. Weiner*
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Phone: (612) 389-0600
Fax:    (612) 389-0610
mweiner@pswlaw.com
**Interim Executive Committee**

CARLSON LYNCH LLP
Katrina Carroll*
111 W. Washington Street, Suite 1240
Chicago, IL  60602
Phone: (312) 750-1265
*kcarroll@carlsonlynch.com*
**Interim Executive Committee**

ZIMMERMAN LAW OFFICES, P.C.
Thomas A. Zimmerman, Jr.*

27

77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Fax:     (312) 440-4180
tom@attorneyzim.com
**Interim Executive Committee**

MASON LIETZ & KLINGER LLP
Gary E. Mason*
5101 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Phone: (202) 640-1160
*gmason@masonllp.com*
**Interim Executive Committee**

CONSUMER PROTECTION LEGAL, LLC
Tiffany Marko Yiatras*
308 Hutchinson Road
Ellisville, Missouri  63011-2029
Phone: (314) 541-0317
*tiffany@consumerprotectionlegal.com*
**Interim Executive Committee**

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (S.D.N.Y. Bar LK7190)
Matthew B. George*
1999 Harrison Street, Suite 1560
Oakland, California 94612
Phone: (415) 772-4700
Fax:     (415) 772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

MORGAN & MORGAN
Amanda Peterson (Fed. Bar No. AP1797)
90 Broad Street, Suite 1011
New York, NY 10004
Phone: (212) 738-6299
*apeterson@forthepeople.com*

THE LYON FIRM, P.C.
Joseph M. Lyon*
2754 Erie Ave
Cincinnati, Ohio 45208
Phone: (513) 381-2333
*jlyon@thelyonfirm.com*

TYCKO & ZAVAREEI LLP
Hassan A. Zavareei*
Katherine M. Aizpuru (Fed. Bar No. 5305990)
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Phone: (202) 973-0900
Fax:    (202) 973-0950
*hzavareei@tzlegal.com*
*kaizpuru@tzlegal.com*

KOPELOWITZ OSTROW FERGUSON
   WEISELBERG GILBERT
Jeff Ostrow**
Jonathan M. Streisfeld*
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Phone: (954) 525-4100
Fax:    (954) 525-4300
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*

DANNLAW
Javier L. Merino (Fed. Bar. No. JM4291)
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: (201) 355-3440
Fax:    (216) 373-0536
*notices@dannlaw.com*

DANNLAW
Marc E. Dann*
Brian D. Flick*
PO Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Fax:    (216) 373-0536
*notices@dannlaw.com*

FREED KANNER LONDON & MILLEN LLC
Jonathan M. Jagher*
Kimberly A. Justice **
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
*jjagher@fklmlaw.com*

29

*kjustice@fklmlaw.com*

LAW OFFICE OF FRANCIS J. "CASEY"
FLYNN, JR.
Francis J. "Casey" Flynn, Jr.**
3518A Arsenal Street
Saint Louis, Missouri 63118
Phone: (314) 662-2836
*casey@lawofficeflynn.com*

EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
Daniel A. Edelman*
20 S. Clark Street, Suite 1500
Chicago, IL  60603
Phone: (312) 917-4502 (direct)
dedelman@edcombs.com

MEYER WILSON CO., LPA
Michael Joseph Boyle , Jr.*
Matthew Ryan Wilson*
305 W. Nationwide Blvd.
Columbus, OH 43215
Phone: 614-224-6000
Email: mboyle@meyerwilson.com
         mwilson@meyerwilson.com

*Attorneys for Plaintiffs and the Settlement Class*

*Admitted *Pro Hac Vice*
***Pro Hac Vice* Motion forthcoming