## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into by and between Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandria Polichena, and Mark Niedelson, individually and on behalf of Participating Settlement Class Members (as defined below) (together "Plaintiffs"), and (2) Deloitte Consulting LLP, ("Defendant" or "Deloitte Consulting") (collectively the "Parties"), in the consolidated action styled *Culbertson v. Deloitte Consulting LLP*, Case No. 1:20-cv-3962-LJL, pending in the U.S. District Court for the Southern District of New York.

## RECITALS

WHEREAS, this dispute arises from a data security incident involving the participation of several states in a newly created and limited-scope federal government program, and the engagement by those states of Deloitte Consulting to develop web-based platforms to facilitate the states' administration of the program; and

WHEREAS, in response to the onset of the COVID-19 pandemic in Spring 2020, Congress passed the Coronavirus Aid, Relief, and Economic Safety ("CARES") Act, one feature of which was the Pandemic Unemployment Assistance ("PUA") program, which enhanced states' ability to provide unemployment benefits to workers impacted by the negative economic effects and impacts of the pandemic; and

WHEREAS, the CARES Act provided for administration of the PUA program by the states, and some states contracted with private companies to assist with PUA administration; and

WHEREAS, as relevant to this dispute, the Ohio Department of Job and Family Services, the Illinois Department of Employment Security, and the Colorado Department of Labor and Employment (collectively, the "State Agencies") engaged Deloitte Consulting to assist them in creating websites and portals through which individuals could apply for PUA benefits; and

WHEREAS, in May 2020, the State Agencies and Deloitte Consulting learned that some claimants on the State Agencies' systems were mistakenly able to view certain personal information of other claimants (the "Data Security Incident"); and

WHEREAS, upon learning of the Data Security Incident, Deloitte Consulting promptly worked with the State Agencies to correct the Data Security Incident and prevent any such further access; and

WHEREAS, the State Agencies notified approximately 237,675 individuals who may have had their personal information exposed in the Data Security Incident, also indicating that the incident was limited in scope and had been remediated; and

WHEREAS, Deloitte Consulting also offered each notified claimant 12 months of free credit monitoring through Experian Identity Works; and

WHEREAS, an investigation of the incident determined that of the approximately 237,675 individuals who received notice of the incident, the maximum number whose information might possibly have been exposed was no more than 18,000; and

WHEREAS, claims filed against Deloitte Consulting in various state and federal courts across the country were consolidated before the Honorable Lewis J. Liman in the United States District Court for the Southern District of New York, who appointed Interim Class Counsel; and

WHEREAS, to avoid the risks and uncertainties of litigation, Plaintiffs and Deloitte Consulting have engaged in settlement negotiations pursuant to Federal Rule of Evidence ("FRE") 408 in order to avoid the expense and uncertainties of litigation, which included (a) informal settlement discovery, including conferences and discussions with the expert consultants; (b) an exchange of mediation briefs; and (c) engagement of the Honorable Wayne R. Andersen ("Judge Andersen") of JAMS, as a mediator; and

WHEREAS, following extensive, arm's length settlement negotiations that culminated in an all-day mediation session on April 28, 2021 conducted by Judge Andersen, the Parties reached a settlement in principle; and

WHEREAS, Deloitte Consulting denies any wrongdoing whatsoever including, without limitation, as to: (a) the allegations and any and all liability or damages with respect to any and all facts and claims alleged in the Action, whether as to individual plaintiffs or as to the putative class; and (b) that the Action satisfies the requirements to be certified as a class action under Federal Rule of Civil Procedure 23; and

WHEREAS, this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession by Deloitte Consulting as to any claim, fault, liability, wrongdoing or damage whatsoever, or as to any infirmity in the defenses that Deloitte Consulting has asserted or would assert, or as to the requirements of Federal Rule of Civil Procedure 23 and whether Plaintiffs satisfy those requirements;

NOW, THEREFORE, in exchange for the mutual promises and valuable consideration described above and provided for in this Agreement, and without any admission or concession by either Party, the Parties agree to a full, complete, and final settlement and resolution of the Action, subject to Court approval, on the following terms and conditions:

## I.   **DEFINITIONS**

In addition to terms defined at various points within this Agreement, the following defined terms shall have the meanings set forth below:

1.       "Action" means the consolidated class action lawsuit captioned *Culbertson v. Deloitte Consulting LLP*, Case No. 1:20-cv-3962-LJL, currently pending before the Honorable Lewis J. Liman in the U.S. District Court for the Southern District of New York.

2.      "Approved Claim" means the timely submitted Claim Form by a Participating Settlement Member that has been approved by the Settlement Administrator.

3.      "Attested Time" means time spent remedying issues related to the Data Security Incident, as provided in Section III of this Agreement.

4.      "Deloitte Consulting" means Deloitte Consulting LLP, and its predecessors, successors, affiliates, subsidiaries, parent, assigns, directors, principals, partners, officers, agents, dealers, suppliers, attorneys, representatives, and employees.

5.      "Deloitte Consulting's Counsel" means Phyllis B. Sumner and Elizabeth D. Adler of King & Spalding LLP.

6.      "Claim Form" or "Claim" means the form(s) Participating Settlement Class Members must submit to be eligible for reimbursement of Out-of-Pocket Losses and payment for Attested Time under the terms of this Agreement. The Claim Form is attached to the Settlement Class Notice which is attached as Exhibit 1.

7.      "Claims Deadline" means the last day to submit a timely Claim Form(s), which will occur ninety (90) days after the Notice Deadline.

8.      "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive Settlement benefits, which will end on the Claims Deadline.

9.      "Class Counsel" means John A. Yanchunis of Morgan & Morgan Complex Litigation Group; Charles E. Schaffer of Levin Sedran & Berman LLP; Frederic Fox and Matthew George of Kaplan Fox & Kilsheimer, LLP; Katrina Carroll of Carlson Lynch, LLP; Gary Mason of Mason Lietz & Klinger, LLP; Tiffany Yiatras of Consumer Protection Legal Group; Melissa Weiner of Pearson, Simon & Warshaw, LLP; Thomas Zimmerman of Zimmerman Law Offices, P.C..  "Class Counsel" also includes "Lead Class Counsel."

10.      "Lead Class Counsel" means Jeffrey S. Goldenberg of Goldenberg Schneider, L.P.A.

11.      "Settlement Class Representatives" means Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandria Polichena, and Mark Niedelson.

12.      "Court" means the Honorable Lewis J. Liman, United States District Judge, Southern District of New York, or such other judge to whom the Action may hereafter be assigned.

13.      "Data Security Incident" means the Data Security Incident described in the Recitals *supra* and initially disclosed by the State Agencies in or about May 2020.

14.      "Effective Date" means one (1) business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order and

Judgment; (ii) entry of the Final Approval Order and Judgment if no parties have standing to appeal; or (iii) if any appeal, petition, request for rehearing, or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, requests for rehearing, or other review has expired.

15.     "Fee Application" means any motion for an award of attorneys' fees, Litigation Costs and Expenses, and Service Award Payments to be paid from the Settlement Fund, as set forth in Paragraphs 73 and 74.

16.     "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

17.     "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Action with prejudice, otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23, and is consistent with all material provisions of this Settlement Agreement. Class Counsel and Deloitte Consulting's Counsel will work together on a proposed Final Approval Order and Judgment, which Deloitte Consulting must approve before filing for the Court's consideration.  The Final Approval Order and Judgment is attached as Exhibit 3.

18.     "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

19.     "Litigation Costs and Expenses" means costs and expenses incurred by counsel for Plaintiffs in connection with commencing, prosecuting, and settling the Action.

20.     "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (1) valid claims made by Settlement Class Members for Out-of-Pocket Losses and Attested Time fairly traceable to the Data Security Incident; (2) Settlement Notice and Administration Costs; (3) Attorneys' Fee Award and Costs; and (4) Service Awards.

21.     "Notice" or "Settlement Class Notice" means notice of the proposed class action Settlement to be provided to Settlement Class Members pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 1.  "Notice" includes the summary postcard notice to be mailed by U.S. mail to Settlement Class Members which is also attached to Exhibit 1.

22.     "Notice Deadline" means the last day by which Notice must be issued to the Settlement Class Members, and will occur thirty (30) days after receipt by the Settlement Administrator of the Settlement Class List.

23.    "Notice and Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, locating Settlement Class Members, processing claims, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members. Administrative Expenses also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

24.    "Objection Deadline" is the last day on which a Settlement Class Member may file an objection to the Settlement or Fee Application, which will be seventy-five (75) days after the Notice Deadline.

25.    "Opt-Out Deadline" is the last day on which a Settlement Class Member may file a request to be excluded from the Settlement Class, which will be seventy-five (75) days after the Notice Deadline.

26.    "Out-of-Pocket Losses" means out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are supported by Reasonable Documentations and that are for the purchase of identity protection or credit monitoring services that were purchased after receipt of notice of the Data Security Incident from one of the State Agencies but no later than August 30, 2020 (the deadline for Settlement Class Members to enroll in the free credit monitoring product offered by Deloitte in response to the Data Security Incident), fairly traceable to the Data Security Incident, and that have not already been reimbursed by a third party.

27.    "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

28.    "Preliminary Approval Order" means an order directing issuance of Notice to Settlement Class Members, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2), and determining that the Court will likely be able to certify the Settlement Class for purposes of judgment, that is consistent with all material provisions of this Settlement Agreement. Class Counsel and Deloitte Consulting's Counsel will work together on a proposed Preliminary Approval Order, which Deloitte Consulting must approve before filing for the Court's consideration. The Preliminary Approval Order is attached as Exhibit 2.

29.    "Reasonable Documentation" means documentation contemporaneously generated or prepared by a third party or the Settlement Class Member supporting a claim for documented lost time or expenses paid. Non-exhaustive examples of Reasonable Documentation include telephone records, correspondence including emails, or receipts. Except as expressly provided herein, personal certifications, declarations, or affidavits from the Participating Settlement Class Member do not constitute Reasonable Documentation but may be included to provide clarification, context, or support for other submitted Reasonable Documentation.

30.    "Released Claims" means any and all claims, liabilities, rights, demands, suits, obligations, or damages whatsoever, including but not limited to consequential damages, losses or

costs, punitive damages, attorneys' fees and costs, action or causes of action, penalties, remedies, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, administrative, statutory, or equitable—that relate to or arise from the Data Security Incident announced via letter or email by the State Agencies in May 2020 and which are asserted, or as could have been asserted in the Action or any other proceedings.

31.    "Request for Exclusion" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

32.    "Service Award Payment" means compensation awarded by the Court and paid to the Settlement Class Representatives in recognition of their role in this litigation and their efforts on behalf of the Settlement Class.

33.    "Settlement" means the settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

34.    "Settlement Administrator" means Angeion Group. Class Counsel and Deloitte Consulting's Counsel may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

35.    "Settlement Class" means the 237,675 individuals identified on the Settlement Class List, in Illinois, Colorado, and Ohio who were notified via letter or email by by the State Agencies between approximately May 18, 2020 and May 21, 2020 that certain personal information they submitted to the PUA systems in their respective states in connection with applying for pandemic-related unemployment claims may have been inadvertently exposed in the Data Security Incident. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

36.    "Settlement Class List" means the list generated by the State Agencies containing the full names, current or last known addresses, personal email addresses where known for all persons who fall under the definition of the Settlement Class, which Deloitte Consulting shall provide to the Settlement Administrator within twenty-one (21) days of the Preliminary Approval Order.

37.    "Settlement Class Member" means an individual who falls within the definition of the Settlement Class.

38.    "Settlement Fund" means four million nine hundred fifty thousand dollars ($4,950,000.00) to be paid by Deloitte Consulting as specified in Paragraphs 43–48, including any interest accrued thereon after payment, this being the full and complete limit and extent of Deloitte Consulting's obligations with respect to the Settlement.

39.    "Settlement Payment" or "Settlement Check" mean the payment to be made via mailed check and/or electronic payment to a Participating Settlement Class Member pursuant to Section IV and the Claims Administration Protocol attached as Exhibit A.

40.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the mailing of the Notice, as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including, but not limited to, the Notice, Claim Form, this Agreement, Plaintiff's motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiff's Fee Application, and the operative complaint in the Action. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall not include any advertising and shall remain operational until at least sixty (60) days after all Settlement Payments have been distributed.

41.    "State Agencies" means the Ohio Department of Job and Family Services, the Illinois Department of Employment Security, and the Colorado Department of Labor and Employment.

42.    "Taxes and Tax-Related Expenses" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Deloitte Consulting with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

## II.    <u>SETTLEMENT FUND</u>

43.    **Establishment of Settlement Fund**. Within twenty-one (21) days of the entry of the Preliminary Approval Order, Deloitte Consulting shall deposit the sum of $950,000 into an account established and administered by the Settlement Administrator at a financial institution agreed upon by the Settlement Administrator and Deloitte Consulting to cover the Settlement Administrator's reasonable set-up costs. Deloitte Consulting shall deposit the balance of the Settlement Fund ($4,000,000) into the same account within seven (7) days of the Effective Date. The Settlement Administrator shall provide wiring instructions and a properly completed and duly executed IRS Form W-9 to Deloitte Consulting within seven (7) days of the entry of the Preliminary Approval Order.

44.    **Non-Reversionary**. The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Deloitte Consulting in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Paragraphs 62-65.  Any funds remaining in the Settlement Fund after the time period discussed in paragraph 11 of Exhibit A and following any payments issued pursuant to Paragraph 14 of Exhibit A, if any, shall be paid to a Court-approved cy pres recipient.

45.     **Qualified Settlement Fund**. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

46.     **Custody of Settlement Fund**. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraphs 62-65.

47.     **Use of the Settlement Fund**. As further described in this Agreement and in Exhibit A, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (1) reimbursement for Out-of-Pocket Losses and Attested Time; (2) Notice and Administration Costs; (3) Attorney Fee and Cost Award as awarded by the Court; and (4) service award payments approved by the Court. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court. Responsibility for effectuating payments described in this paragraph shall rest solely with the Settlement Administrator and Deloitte Consulting shall have no responsibility whatsoever with respect to effectuating such payments.

48.     **Taxes and Representations**. Taxes and Tax-Related Expenses relating to the Settlement Fund, if any, shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty, and have no responsibility, with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Participating Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

## III.   <u>SETTLEMENT BENEFITS AND ADMINISTRATION</u>

49.     **Claims Administration Protocol.**  Settlement Class Members may submit claims to be compensated from the Settlement Fund for Attested Time and for reimbursement for Out-of-

Pocket Losses as set forth in the Claims Administration Protocol, attached hereto as Exhibit A. Settlement benefits shall be administered by the Settlement Administrator as set forth in the Claims Administration Protocol, attached hereto as Exhibit A.

50.     **Remediation and Business Practice Enhancements.** The parties recognize and agree that a number of steps have been taken to remediate the Data Security Incident and to enhance security in the relevant systems, including:

   a.   Immediately upon learning of the Data Security Incident, Deloitte Consulting worked with the State Agencies to investigate.  It identified the cause of the Data Security Incident and promptly remediated it.  This remediation effort included the following steps:

      i.   Deloitte Consulting determined that a small number of claimants performed searches on a Correspondence Query page that was designed to be used only by PUA staff due to a role-to-function mapping error. Working with the State Agencies, Deloitte Consulting corrected the errant mapping within an hour. This step was completed on May 15, 2020 and removed the ability for a claimant to run searches on the Correspondence Query page.

      ii.   Deloitte Consulting also determined that a small number of claimants were incorrectly being presented with the option to navigate to the Correspondence Query page because the system lost context and defaulted to assuming that the user was a staff member. Working with the State Agencies, Deloitte Consulting remediated this by configuring the system to default to an error when it loses user type context about the user type and claimants can no longer navigate to the Correspondence Query page. This step was completed on May 18, 2020.

   b.   In addition to these remediation measures, Deloitte Consulting, working with the State Agencies, also took the following security measures to protect the states' PUA systems:

      i.   Reviewed the role-to-function mappings in the PUA applications to confirm users have only necessary authorizations.

      ii.   Conducted data minimization reviews of the PUA applications to reduce the display of personal data and minimized the display of certain personal data.

## IV.     SETTLEMENT CLASS NOTICE, OPT-OUTS, AND OBJECTIONS

51.     **Notice**. Within twenty-one (21) days after the date of the Preliminary Approval Order, Deloitte Consulting, working with the State Agencies, shall provide the Settlement Class List to the Settlement Administrator. Within thirty (30) days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the Settlement Class Members. Notice shall be disseminated via U.S. mail to all Settlement Class Members and also via e-mail to Settlement Class Members whose personal e-mail addresses are known. Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members at any time

prior to the Claims Deadline.  The process to issue Notice as described in this paragraph and the creation and maintenance of the Settlement Website shall constitute the "Notice Plan."

52.     **Final Approval Hearing.** The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

53.     **Opt-Outs**. The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement in the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

54.     **Objections**. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by submitting written objections to the Court no later than the Objection Deadline. A written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) the identity of any attorneys representing the objector; (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a statement identifying all class action settlements objected to by the Settlement Class Member in the previous 5 years; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. ~~If the Settlement Class Member is represented by counsel, and such counsel intends to seek compensation for his or her services from anyone other than the Settlement Class Member, the objection shall also contain the following information: (i) the identity of all counsel who represent the Settlement Class Member, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (ii) a statement identifying all instances in which the counsel or the counsel's law firm have objected to a class action settlement within the preceding five years, including the style and court in which the class action settlement was filed; (iii) a statement identifying any and all agreements that relate to the objection or the process of objecting—whether written or oral—between the Settlement Class Member, his or her counsel, and/or any other person or entity; and (iv) a statement regarding whether fees to be sought will be calculated on the basis of a lodestar, contingency, or other method; an estimate of the amount of fees to be sought; the factual and legal justification for any fees to be sought; the number of hours already spent by the counsel and an estimate of the hours to be spent in the future; and the counsel's hourly rate.~~

## V.      **DUTIES OF THE SETTLEMENT ADMINISTRATOR**

55.      **Duties of Settlement Administrator**. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, those set forth in Exhibit A.

56.      **Limitation of Liability**. The Parties, Class Counsel, and Deloitte Consulting's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

57.      **Indemnification**. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Deloitte Consulting's Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

## VI.      **PRELIMINARY APPROVAL, FINAL APPROVAL, AND JURISDICTION**

58.      **Certification of the Settlement Class**. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon both the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date.

59.      **Preliminary Approval**. Following execution of this Agreement, Class Counsel shall file a motion for preliminary approval of the Settlement, in a form agreeable to the Parties, within thirty (30) days thereof or a date thereafter that is agreeable to the Parties.

60.      **Final Approval**. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing; within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline; and at least 90 days after the Settlement Administrator notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

61.      **Jurisdiction**. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain

jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

## VII.   <u>MODIFICATION AND TERMINATION</u>

62.    **Modification**. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

63.    **Settlement Not Approved.** If: (1) the Court does not issue the Preliminary Approval Order or Final Approval Order and Judgment; (2) the Effective Date does not occur; or (3) the Final Approval Order and Judgment is modified or reversed in any material respect by any appellate or other court, the Parties shall have 60 days from the date of such non-occurrence during which the Parties shall work together in good faith in considering, drafting, and submitting reasonable modifications to this Agreement to address any issues identified by the Court or that otherwise caused the Preliminary Approval Order or Final Approval Order and Judgment not to issue or the Effective Date not to occur. If such efforts are unsuccessful, either Party may at their sole discretion terminate this Agreement on seven days written notice to the other Party. For avoidance of any doubt, neither Party may terminate the Agreement while an appeal from an order granting approval of the Settlement is pending.

64.    **Termination**. Deloitte Consulting may also unilaterally terminate this Agreement on seven (7) days written notice to Class Counsel if more than a specified number of individuals submit valid Requests for Exclusion, as agreed to by the Parties and submitted to the Court for *in camera review*.

65.    **Effect of Termination**. In the event of a termination as provided in Paragraphs 63 or 64, this Agreement and the Settlement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement or the Settlement. Further, in the event of such a termination, the certification of the Settlement Class shall be void. Deloitte Consulting reserves the right to contest class certification for all purposes other than this Settlement. Any orders preliminarily or finally approving the certification of any class contemplated by the Settlement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion. In addition: (a) the fact that Deloitte Consulting did not oppose certification of a class under the Settlement shall not be used or cited thereafter by any person or entity, including in a contested proceeding relating to class certification and (b) in the event of

such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## VIII.   <u>RELEASES</u>

66.   **The Release**. Upon the Effective Date, and in consideration of the Settlement benefits described herein, each of the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have released, acquitted, and forever discharged any and all Released Claims against Deloitte Consulting, and each of its predecessors in interest, present and former subsidiaries, parents, affiliates (including without limitation Deloitte LLP, Deloitte & Touche LLP, Deloitte Tax LLP, Deloitte Financial Advisory Services LLP, Deloitte Transactions and Business Analytics LLP, Deloitte Services LP, and Deloitte USA LLP), divisions, joint ventures, and controlled entities, and, solely in its capacity as such, each of the preceding entities' past, present and future insurers, subrogees, co-insurers and reinsurers, agents, representatives, officers, directors, employees, principals, partners, members, shareholders and owners, predecessors, successors, assigns, transferees, heirs, executors, administrators, and attorneys(collectively, "Deloitte Releasees").

67.   **Unknown Claims**. The Released Claims include the release of Unknown Claims. "Unknown Claims" means any and all Released Claims that any member of the Settlement Class does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by him or her, might have affected his or her decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, all Settlement Class members shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Named plaintiffs and Class Counsel acknowledge, and each Settlement Class member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

Upon the Effective Date, each of the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or

equivalent to Section 1542 of the California Civil Code. The Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

68.     **Mutual Understanding.** The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

69.     **Release of Class Representatives and Class Counsel**. Upon the Effective Date, Deloitte Consulting, Deloitte Releasees, and their representatives, officers, agents, directors, principals, affiliates, employees, insurers, and attorneys shall be deemed to have released, acquitted, and forever discharged the Settlement Class Representatives and Class Counsel from any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses), whether known or unknown, that arise out of, are based upon, or relate to prosecution of the Action, the Settlement Agreement, or the Settlement claims process (provided, however, that this release and discharge shall not include claims relating to the enforcement of the terms of the Settlement or this Agreement).

70.     **Bar to Future Suits.** Upon entry of the Final Approval Order and Judgment, the Settlement Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Deloitte Releasees or based on any actions taken by any of the Deloitte Releasees that are authorized or required by this Agreement or by the Final Approval Order. Likewise, Deloitte Consulting, Deloitte Releasees, and their representatives, officers, agents, directors, principals, affiliates, employees, insurers, and attorneys shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against Settlement Class Representatives and Class Counsel or based on any actions taken by Settlement Class Representatives and Class Counsel that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## IX.  SERVICE AWARD PAYMENTS

71.  **Service Award Payments**. At least thirty (30) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application that will include a request for Service Award Payments for the Settlement Class Representatives in recognition for their contributions to this Action not to exceed $2,000.00 per representative. The Settlement Administrator shall make the Service Award Payments to the Settlement Class Representatives from the Settlement Fund. Such Service Award Payment shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than three (3) days after the Effective Date.

72.  **No Effect on Agreement**. In the event the Court declines to approve, in whole or in part, the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

## X.  ATTORNEYS' FEES, COSTS, EXPENSES

73.  **Attorneys' Fees and Costs and Expenses**. At least thirty (30) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application for an award of attorneys' fees and Litigation Costs and Expenses to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund for fees, or $1,649,835.00, and Class Counsel's request for reimbursement of expenses not to exceed $25,000.00. Prior to the disbursement or payment of the Fee Award and Costs under this Agreement to the IOLTA trust account of Goldenberg Schneider, LP.A., Goldenberg Schneider, L.P.A. shall provide to the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs (plus any interest accrued thereon) shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than ten (10) days after the Effective Date.

74.  **Allocation**. Unless otherwise ordered by the Court, Lead Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys for Plaintiffs. Deloitte Consulting shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

## XI.  NO ADMISSION OF LIABILITY

75.  **No Admission of Liability**. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

76.  **No Use of Agreement**. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs;

or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission by Deloitte Consulting in the Action or in any proceeding in any court, administrative agency or other tribunal.

## XII.   <u>MISCELLANEOUS</u>

77.   **Integration of Exhibits**. The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

78.   **Entire Agreement**. This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Settlement Class Notice to the Settlement Class.

79.   **Deadlines**. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this agreement shall refer to calendar days unless otherwise specified.

80.   **Construction**. For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

81.   **Cooperation of Parties**. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

82.   **Obligation to Meet and Confer**. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other in good faith prior to seeking Court intervention.

83.   **Governing Law**. The Agreement shall be construed in accordance with, and governed by, the laws of the State of New York, without regard to the principles thereof regarding choice of law.

84.   **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted electronically through e-mail of an Adobe PDF shall be deemed an original.

85.   **Notices**. All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

Jeffrey S. Goldenberg
Goldenberg Schneider, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
jgoldenberg@gs-legal.com

All notices to Deloitte Consulting provided for herein, shall be sent by overnight mail and email to:

Phyllis B. Sumner
King & Spalding LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
psumner@kslaw.com

Elizabeth D. Adler
King & Spalding LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
eadler@kslaw.com

The notice recipients and addresses designated above may be changed by written notice.

86.     **Authority**. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

By: _____          Date: _____
Phyllis B. Sumner
King & Spalding LLP

By: _____          Date: _____
Elizabeth D. Adler
King & Spalding LLP

*Counsel for Defendant Deloitte Consulting LLP*

By: _____     Date: _____
Jeffrey S. Goldenberg
Goldenberg Schneider, L.P.A.
Lead Class Counsel


By: _____     Date: _____
John A. Yanchunis
Morgan & Morgan
Complex Litigation Group


By: _____     Date: _____
Charles E. Schaffer
Levin Sedran & Berman LLP


By: _____     Date: _____
Frederic Fox
Matthew George
Kaplan Fox & Kilsheimer, LLP


By: _____     Date: _____
Katrina Carroll
Carlson Lynch, LLP


By: _____     Date: _____
Gary Mason
Mason Lietz & Klinger, LLP


By: _____     Date: _____
Tiffany Yiatras
Consumer Protection Legal LLC


By: _____     Date: _____
Melissa Weiner
Pearson, Simon & Warshaw, LLP


By: _____     Date: _____
Thomas Zimmerman

Zimmerman Law Offices, P.C.

*Counsel for Plaintiffs and the Settlement Class*

## EXHIBIT A – CLAIMS ADMINISTRATION PROTOCOL

1.     **Claims for Reimbursement for Out-of-Pocket Losses**. All Settlement Class Members may submit a claim for up to $120.00 for reimbursement of Out-of-Pocket Losses. To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes Reasonable Documentation evidencing the purchase of identity protection or credit monitoring services. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered by the Settlement Administrator to add clarity or to support other submitted documentation.

2.     **Reimbursement for Attested Time**. All Settlement Class Members may submit a claim for reimbursement of Attested Time up to four (4) hours at $20.00 per hour for self-certified Attested Time. Settlement Class Members may submit an additional Attested Time request for up to eight (8) additional hours at $20.00 per hour for documented time that is supported by Reasonable Documentation.
1.

3.     **Assessing Claims for Reimbursement for Out-of-Pocket Losses**. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent Reasonable Documentation for Out-of-Pocket Losses reflects valid Out-of-Pocket Losses actually incurred that are fairly traceable to the Data Security Incident, but may consult with Class Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Settlement Administrator will consider (i) whether the timing of the loss occurred on or after August 30, 2020; and (ii) whether the loss was for the purchase of identity protection or credit monitoring services. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

4.     **Assessing Claims for Attested Time**. The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Attested Time, but may consult with Class Counsel in making individual determinations. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

5.     **Disputes**. To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses or Attested Time is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via mail and e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent only via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel in making such determinations. All such determinations of disputed claims by the Settlement Administrator are final.

6. **Payment Timing**. Payments for Approved Claims for reimbursement for Out-of-Pocket Losses or Attested Time shall be issued in the form of a check mailed and/or an electronic payment as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

7. **Timing**. Settlement Checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a Settlement Check is not cashed within sixty (60) days after the date of issue, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Participating Settlement Class Member reminding him/her of the deadline to cash such check.

8. **Returned Checks**. For any Settlement Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. In attempting to locate a valid address, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Participating Settlement Class Member to obtain updated address information. Any replacement Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

9. **Uncashed Checks**. To the extent that a Settlement Check is not cashed within ninety (90) days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Participating Settlement Class Member by e-mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Participating Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Participating Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

10. **Unclaimed Property**. No portion of the Settlement Fund shall revert or be repaid to Defendant after the Effective Date. To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement payments to the Participating Settlement Class Members, or 30 days after all reissued Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be paid to a Court-approved cy pres recipient.

11. **Deceased Class Members**. If the Settlement Administrator is notified that a Participating Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Check to the Participating Settlement Class Member's estate upon receiving

proof the Participating Settlement Class Member is deceased and after consultation with Class Counsel.

12.     **Submission of Electronic and Hard Copy Claims**. Participating Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via a claims website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline.

13.     **Contingencies**.

a.  In the event that the aggregate amount of all Settlement Payments exceeds the total amount of the Net Settlement Fund, then each Settlement Class Member's claim shall be proportionately reduced on a *pro rata* basis.  In no event shall the Settlement Fund be increased for any reason.

b.  In the event that the aggregate amount of all Settlement Payments does not exceed the Net Settlement Fund, then each Settlement Class Member's payment shall be proportionately increased on a *pro rata* basis ( in other words, in equal amounts to each claimant ) for an additional sum up to $200.00 per Settlement Class Member.

14.     **Duties of Settlement Administrator**. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, the following:

a.  Creating, administering, and overseeing the Settlement Fund;

b.  Obtaining the Settlement Class List for the purpose of disseminating Notice to Settlement Class Members;

c.  Providing Notice to Settlement Class Members via U.S. mail and e-mail;

d.  Establishing and maintaining the Settlement Website;

e.  Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries within one (1) business day;

f.  Responding to any mailed or emailed Settlement Class Member inquiries within a reasonable amount of time, but no later than five (5) business days from the date of receipt;

g.  Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members;

h.  Receiving Requests for Exclusion and Objections from Settlement Class Members and providing Class Counsel and Deloitte Consulting's Counsel a copy thereof no later

than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and to Deloitte Consulting's Counsel;

i.  After the Effective Date, processing and transmitting Settlement Payments to Settlement Class Members;

j.  Providing weekly or other periodic reports to Class Counsel that include the number of claims submitted, the number of claims approved, information regarding the number of Settlement Checks mailed and delivered, Settlement Checks cashed, undeliverable information, and any other requested information relating to Settlement Payments. The Settlement Administrator shall also, as requested by Class Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

k.  In advance of the Final Approval Hearing, preparing a sworn declaration to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary Approval Order; (ii) identifies each Settlement Class Member who timely and properly submitted a Request for Exclusion; (iii) the number of objections received; and (iv) the number of claims received.

l.  Issuing notification to the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715; and

m.  Performing any function related to Settlement administration at the agreed-upon instruction of Class Counsel or Deloitte Consulting's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.