**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------- X
PAUL CULBERTSON, KATHY NEAL,                       :
KELLY ALLISON-PICKERING, JESSICA                   :
HAIMAN, ALEXANDER CABOT, BRIANA                    :
JULIUS, NICHELLE NEWLAND,                          :
BERNADETTE NOLEN, ALEXANDREA                       :   CASE NO. 1:20-cv-3962-LJL
POLICHENA, and MARK NIEDELSON,                     :
individually and on behalf of all others similarly :
situated,                                          :
                                                   :   JUDGE LEWIS J. LIMAN
Plaintiffs,                                        :
                                                   :
-v-                                                :
                                                   :
DELOITTE CONSULTING LLP,                           :
                                                   :
              Defendant.                           :
                                                   :
-------------------------------------------------- X
```

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES, AND**
**SERVICE AWARDS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.    PROCEDURAL BACKGROUND..................................................................2

    A.    The Individual Cases.........................................................................2

    B.    Consolidation ....................................................................................3

    C.    Legal Investigation and Settlement Negotiations ..............................4

    D.    The Proposed Settlement…………………………………………… …6

III.    ARGUMENT…………………………………………………………………...8

    A.    Plaintiffs' Requested Attorneys' Fee Award is Fair and Reasonable……………...8

        1.    Legal Standard…………………………………………………8

        2.    The Percentage Method is the Appropriate Method for Awarding Attorneys' Fees in this Common Fund Case……………………………10

        3.    The Requested Fee is Reasonable Under the Percentage Method……….11

        4.    A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of Plaintiffs' Requested Fee……………………………13

        5.    The Fee Request is Reasonable Under *Goldberger* Factors……………...15

            a.    Class Counsel Invested Substantial Time and Resources Over the Course of the Litigation………………………………..15

            b.    This Class Action Included Complex Legal Issues…………....16

            c.    The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation………………………………………17

            d.    Class Counsel Provided (and Continue to Provide) High-Quality Representation………………………………………19

            e.    The Fee Request Is Reasonable in Relationship to the Settlement…………………………………………………..20

            f.    Public Policy Supports Approval of the Fee…………………..20

        6.    The Reaction of Class Members Supports Class Counsel's Fee Request…………………………………………………………...22

    B.    Class Counsel's Request for Reimbursement of Litigation Costs and Expenses is Reasonable…………………………………………………23

    C.    Plaintiffs' Request for Modest Service Awards is Reasonable…………………24

IV.    CONCLUSION………………………………………………………………..26

# **TABLE OF AUTHORITIES**

**Page**

*Abel v. Town Sports Int'l, LLC*,
    2012 WL 6720919 (S.D.N.Y. Dec. 18, 2012) ………………………………….9

*Asare v. Change Grp. of N.Y., Inc.*,
    2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)……………………………………14

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
    2002 WL 1315603 (S.D.N.Y. June 17, 2002)…………………………………..11

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013)…………………………………………………14

*Blum v. Stenson*,
    465 U.S. 886, 897 (1984)……………………………………………………….9

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)……………………………………………………………12

*Bryant v. Potbelly Sandwich Works, LLC*,
    2020 WL 563804 (S.D.N.Y. Feb. 4, 2020)……………………………………..10

*Buccellato v. AT & T Corp.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011)…………………………………..15

*Capsolas v. Pasta Res. Inc.*,
    2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012)……………………………………14

*Cates v. Trustees of Columbia Univ. in City of New York*,
    2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021)…………………………….18,20,23

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992)……………………………………………..18

*Chen v. XpresSpa at Terminal 4 JFK LLC*,
    2021 WL 4487835 (E.D.N.Y. Oct. 1, 2021)…………………………………25,26

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)……………………………………………………..18

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014)……………………………………14

**Page**

*Davis v. J.P. Morgan Chase & Co.*,
 827 F.Supp.2d 172 (W.D.N.Y.2011)……………………………………………15

*Dial Corp. v. News Corp.*,
 317 F.R.D. 426 (S.D.N.Y. 2016)………………………………………………..13

*Dornberger v. Metro. Life Ins. Co.*,
 203 F.R.D. 118 (S.D.N.Y. 2001)……………………………………………… 24

*Dupler v. Costco Wholesale Corp.*,
 705 F. Supp. 2d 231 (E.D.N.Y. 2010)…………………………………………..24

*Fleisher v. Phoenix Life Ins. Co.*,
 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)…………………………………20.23.24

*Fox v. Vice*,
 563 U.S. 826, 838 (2011)………………………………………………………..14

*Frank v. Eastman Kodak Co.*,
 228 F.R.D. 174 (W.D.N.Y. 2005)………………………………………………18

*Goldberger v. Integrated Res.*,
 209 F.3d 43 (2d Cir. 2000)…………………………………………………...*passim*

*Guippone v. BH S&B Holdings LLC*,
 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016)…………………………………..24,25

*Hernandez v. Compass One, LLC*,
 2021 WL 4925561 (S.D.N.Y. Oct. 21, 2021) …………………………………12

*In re Beacon Assocs. Litig.*,
 2013 WL 2450960 (S.D.N.Y. May 9, 2013)……………………………………10

*In re Citigroup Inc. Bond Litig.*,
 988 F. Supp.2d 371 (S.D.N.Y. 2013)…………………………………………16

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013)…………………………………………11

*In re Colgate-Palmolive Co. ERISA Litig.*,
 36 F. Supp.3d 353…(S.D.N.Y. 2014)……………..…………………………..13

*In re Credit Default Swaps Antitrust Litig.*,
 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)…………………………………..9

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009)………………………………………………………………25

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)…………………………………………………..13

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020)………………………………………………25

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)…………………………………………………………..17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)……………………………………………..22

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019)……………………………………………..15,21

*In re Lloyd's Am. Tr. Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)……………………………………………12

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010)………………………………………………………12,13

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008)…………………………………………………………19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998)…………………………………………………16,17,20

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013)………………………………………………24

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014)……………………………………………………19

*In re Platinum & Palladium Commodities Litig.*,
  2015 WL 4560206 (S.D.N.Y. July 7, 2015)………………………………………………..13

*In re RJR Nabisco, Inc. Sec. Litig.*,
  1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)………………………………………………..14

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999)………………………………………………………21

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)……………………………………………..17

*In re Visa Check/Mastermoney Antitrust Litig*.,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003)………………………………………… 24

*In re Vitamin C Antitrust Litig*.,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)………………………………………...23

*In re Warner Comm'ns. Secs. Litig*.,
    618 F. Supp. 735 (S.D.N.Y. 1985)…………………………………………………20

*In re WorldCom, Inc. Sec. Litig*.,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)…………………………………………..11,20,21

*Jander v. Ret. Plans Comm. of IBM*,
    2021 WL 3115709 (S.D.N.Y. July 22, 2021) ………………………………… 9,10,14

*Jermyn v. Best Buy Stores, L.P.*,
    2012 WL 2505644 (S.D.N.Y. June 27, 2012)………………………………………… 19

*Khait v.. Whirlpool Corp*.,
    2010 WL 2025106 (E.D .N.Y. Jan. 20, 2010)…………………………………………..15

*Maley v. Dale Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)………………………………………………14,22

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)……………………………………………………………9

*McKenzie v. Schulte Roth & Zabel LLP*,
    2012 WL 13059787 (S.D.N.Y. Aug. 1, 2012)………………………………………26

*Mills v. Elec. Auto-Lite Co*.,
    396 U.S. 375 (1970)……………………………………………………………………23

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc*.,
    2021 WL 76328 (S.D.N.Y. Jan. 7, 2021)………………………………………………10

*Parker v. Jekyll & Hyde Ent. Holdings, LLC*,
    2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)…………………………………………..26

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp*.,
    318 F.R.D. 19 (S.D.N.Y. 2016)…………………………………………………………13

*Reyes v. Altamera Group, LLC*,
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)……………………………………….26

*Sand v. Greenberg*,
   2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ……………………………………24

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999)……………………………………………………………9

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)………………………………………21

*Silberblatt v. Morgan Stanley*,
   524 F.Supp.2d 425 (S.D.N.Y. Nov. 19, 2007)………………………………………13

*Strauss v. Little Fish Corp.*,
   2020 WL 4041511 (S.D.N.Y. July 17, 2020)………………………………………..12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004)………………………………………18

*Toure v. Amerigroup Corp.*,
   2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)………………………………………15

*Velez v. Novartis Pharms. Corp.*,
   2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)…………………………………….....12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)………………………………………………………10,11,14,20

**Other Authorities**

Alba Conte, Attorney Fee Awards § 2.08, at 50-51 (3d ed. 2004)………………………..23

Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed. 2004)………………………………..23

Plaintiffs Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandra Polichena, and Mark Niedelson (collectively, "Plaintiffs")[1] submit this memorandum of law in support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs and Expenses, and Service Awards.

## I.      INTRODUCTION

In this litigation, Plaintiffs seek to represent individuals in Illinois, Colorado, and Ohio who were notified that certain personal information they submitted to the Pandemic Unemployment Assistance ("PUA") Program when applying for pandemic-related unemployment claims may have been exposed as a result of a data security incident (the "PUA Data Security Incident"). Plaintiffs generally allege that the PUA Data Security Incident was caused by Defendant Deloitte Consulting LLP's ("Deloitte Consulting's" or "Defendant's") failure to use reasonable data security measures in designing, building, and maintaining web-based portals for the State Agencies[2] through which individuals applied for pandemic-related unemployment benefits.

Plaintiffs and Defendant have entered into the Settlement Agreement to avoid further burden, expense, and uncertainty of protracted litigation. Defendant has agreed to establish a Settlement Fund of $4.95 million, with no right to reversion, that will compensate Eligible Claimants, pay costs of notice and claims administration, and pay Court-approved attorneys' fees, costs, and service awards to the class representatives.  The Court preliminarily approved the Settlement on August 27, 2021, finding the proposed settlement was "fair, reasonable, and

---

[1] Plaintiff Jessica Haiman has been voluntarily dismissed from the action.  *See* Notice of Dismissal [ECF No. 134].
[2] The relevant agencies include the Ohio Department of Job and Family Services, the Illinois Department of Employment Security, and the Colorado Department of Labor and Employment (collectively "State Agencies").

adequate." Preliminary Approval Order [ECF No. 137], ¶3. Under the Settlement, Plaintiffs are entitled to apply to the Court for an award of attorneys' fees to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund, or $1,649,835, and reimbursement of litigation costs and expenses not to exceed $25,000. ¶73.[3] Class Counsel is further authorized to request service awards for the Settlement Class Representatives in recognition for their contributions to this Action not to exceed $2,000 each. ¶71.

Plaintiffs respectfully ask the Court to approve their request for $1,649,835 in attorneys' fees and $21,091.31 in expenses they incurred to achieve this Settlement. Plaintiffs further seek Court approval of service award payments of $2,000 for each of the nine Plaintiffs, for a total award of $18,000. Given the resources Plaintiffs and Class Counsel have devoted to this case amid the COVID-19 pandemic, and the excellent results achieved on behalf of the Class that would not have occurred without their assistance, the requested attorneys' fees, expenses, and service awards are reasonable and should also be approved.

## II.    PROCEDURAL BACKGROUND

### A.  The Individual Cases

On May 21, 2020, Plaintiffs Paul Culbertson, William Gibson, and Timothy Sylvester, through their counsel Morgan & Morgan, Goldenberg Schneider, L.P.A., The Lyon Firm, P.C., Levin Sedran & Berman, and Mason Lietz & Klinger, LLP, filed the present action against Deloitte Consulting. On the same day, Plaintiffs Daniel Bozin, Timothy Smith, and Alexandria Polichena, through their counsel DannLaw and Zimmerman Law Offices, P.C., filed a Class Action Complaint against Deloitte Consulting in the Cuyahoga County Court of Common Pleas, which

---

[3] References to "§ __" or "¶__" refer to the corresponding sections and paragraphs of the Settlement Agreement [ECF No. 143-1]. References to "Ex. A" refer to the Claims Administration Protocol attached as Exhibit A to the Settlement Agreement.

Deloitte Consulting removed to the Northern District of Ohio. Case No. 1:20-cv-05070-LJL, ECF No. 1. On June 5, 2020, Deloitte Consulting filed a motion to transfer the case to the Southern District of New York due to the pending related matters in this Court. ECF No. 12.

On May 27, 2020, Plaintiff Janet Burns, through her counsel Kaplan Fox & Kilsheimer, LLP and Meyer Wilson Co. L.P.A., filed another Class Action Complaint against Deloitte Consulting. Case No. 1:20-cv-04077-LJL, Compl., ECF No. 1. The following day, Plaintiff Burns filed a Statement of Relatedness to the *Culbertson* matter. ECF No. 6.  On May 29, 2020, Plaintiff Melissa Alexander, through her counsel Tycko & Zavreei, LLP, Pearson, Simon & Warshaw, LLP, and Kopelowitz Ostrow Ferguson Weiselberg Gilbert, filed another Class Action Complaint against Deloitte Consulting. Case No. 1:20-cv-04129-LJL, Compl., ECF No. 1. Plaintiff Alexander filed a Statement of Relatedness to the *Culbertson* matter on the same day. ECF No. 4. On June 8, 2020, Kathy Neal, through her counsel Carlson Lynch LLP and Freed Kanner London & Millen LLC, filed another Class Action Complaint against Deloitte Consulting. Case No. 1:20-cv-04362-LJL, Compl., ECF No. 1. On June 10, 2020, Plaintiff Neal also filed a Statement of Relatedness to the *Culbertson* matter. ECF No. 6.

### B. Consolidation

On June 23, 2020, the Court consolidated the *Culbertson*, *Alexander*, *Burns*, and *Neal* cases and directed counsel to make filings only under the case number of the *Culbertson* matter, 20-cv-3962. Case 1:20-cv-04129-LJL, ECF 13. On July 2, 2020, the Court consolidated the *Culbertson* matter with the *Bozin* matter and directed counsel to make filings only on the *Culbertson* docket. ECF No. 36.

On July 24, 2020, Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Jessica Haiman, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, and Alexandria Polichena,

filed a Consolidated Class Action Complaint, asserting thirteen counts against Defendant for its alleged failure to protect Plaintiffs' and class members' personally identifiable information. ECF No. 61. On August 24, 2020, Defendant filed a Motion to Dismiss the Consolidated Class Action Complaint. ECF No. 68.

On September 15, 2020, the Court appointed interim class counsel. ECF No. 79. On September 18, 2020, Plaintiffs' counsel informed the Court that counsel for another similar action, *Niedelson*, dismissed their complaint on September 16, 2020, and Plaintiff Niedelson would be added as a party to the Consolidated Complaint to be filed on September 21, 2020. ECF No. 80.

On September 21, 2020, Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Jessica Haiman, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandria Polichena, and Mark Niedelson, through their counsel, filed a First Amended Consolidated Class Action Complaint. ECF No. 82. The Complaint alleged thirteen counts, all related to Defendant's alleged failure to protect Plaintiffs' and class members' personally identifiable information, and the harm suffered due to the resulting data breach. On October 21, 2020, Defendant again moved to dismiss Plaintiffs' Amended Consolidated Class Action Complaint. ECF No. 88. Plaintiffs filed a memorandum opposing the motion to dismiss on November 23, 2020, ECF No. 103, and Defendant filed its reply in support of the motion to dismiss on December 21, 2020. ECF No. 111.

### C. Legal Investigation and Settlement Negotiations

Counsel for Plaintiffs in the consolidated action embarked on the settlement process jointly, with all counsel working together to analyze the legal landscape thoroughly – including issues related to tort remedies, contract remedies, and class certification – to fully evaluate the risks and benefits to potential early resolution. Declaration of Jeffrey S. Goldenberg In Support Of Motion For Preliminary Approval ("First Goldenberg Decl.") [ECF No. 131], ¶6.  Topics analyzed

included the value of personal identifying information; hacking; consequences of data breaches, including exposure of private financial account information and social security numbers; industry standards for data security; and Defendant's representations regarding its security features to protect personal identifying information, as well as detailed information about the PUA Data Security Incident. *Id.* at ¶7. Interim Class Counsel also analyzed guides issued by the Federal Trade Commission intended to provide information and recommendations to businesses about basic security standards. *Id.* at ¶8.

On January 29, 2021, the parties jointly moved to stay the consolidated action for 90 days to allow them to pursue settlement negotiations. ECF No. 117. Following a status conference and pursuant to the Court's request, Defendant filed a Notice of Withdrawal of its Motion to Dismiss Without Prejudice. ECF No. 116.

The settlement negotiations were conducted at arm's length over a period of several months. First Goldenberg Decl., ¶9. On April 28, 2021, the parties participated in mediation with Hon. Wayne Anderson (ret.) via Zoom. *Id.* at ¶10. At that mediation, the parties reached an agreement in principle to resolve the action. *Id.* at ¶11. The parties spent months working out the details of the settlement, which are the product of hard-fought, arm's length negotiations. *Id.* at ¶12. On August 18, 2021, Plaintiffs moved the Court to grant preliminary approval of the settlement, approve the proposed Notice Plan as the best notice practicable under the circumstances, and schedule a Final Approval Hearing. ECF No. 130. Plaintiffs also moved to be appointed as representatives for the Settlement Class and for their counsel to be appointed as Settlement Class Counsel. *See* Fed. R. Civ. P. 23(g). *Id.*

### D.  The Proposed Settlement[4]

Under the Settlement Agreement, the Parties agree to certify a Settlement Class consisting of the 237,675 individuals in Illinois, Colorado, and Ohio who were notified by the State Agencies that their personal information may have been inadvertently exposed in the PUA Data Security Incident. ¶35. The Settlement Agreement provides that Defendant will establish a Gross Settlement Fund in the amount of $4.95 million, which will pay all Claims of Eligible Claimants, as well as any Attorneys' Fees, Costs, Service Awards, and Settlement Administration Costs that are approved by the Court. §II

Eligible Claimants will receive $20.00 /hour for lost time they spent responding to the PUA Data Security Incident, provided they can demonstrate that this lost time is fairly traceable to the PUA Data Security Incident. Ex. A, ¶2. All Settlement Class Members may submit a claim for reimbursement of Attested Time up to four (4) hours at $20.00 per hour for self-certified Attested Time. Settlement Class Members may also submit an additional Attested Time request for up to eight (8) additional hours at $20.00 per hour for documented time that is supported by Reasonable Documentation. *Id*.  Members of the Settlement Class may also make claims for reimbursement of expenses up to $120 for the purchase of identity protection or credit monitoring services occurring after receipt of the notice of the PUA Data Security Incident and before August 30, 2020. Ex. A, ¶1. Settlement Class members may submit claims electronically through a settlement website or by using a hard copy claim form. Ex. A, ¶13.

In the event that the aggregate amount of all Settlement Payments (i.e., the costs of valid claims, attorneys' fees, service awards, and administrator expenses) exceeds the total amount of

---

[4] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement [ECF No. 143-1].

the Net Settlement Fund, then each Settlement Class Member's claim shall be proportionately reduced on a pro rata basis. Ex. A, ¶14a.[5]  However, if the aggregate amount of all Settlement Payments does not exceed the total amount of the Net Settlement Fund, then each Settlement Class Member's claim shall be proportionately increased on a pro rata basis (in other words, in equal amounts to each claimant ) for an additional sum up to $200.00 per Settlement Class Member.  Ex. A, ¶14b.

The Settlement Agreement also recognizes that Defendant has undertaken certain Remediation and Security enhancements related to the PUA Data Security Incident. ¶50. Defendant determined that a small number of claimants performed searches on a Correspondence Query page that was designed to be used only by PUA staff due to a role-to-function mapping error. *Id*. Working with the State Agencies, Defendant corrected the errant mapping within an hour. *Id*. This step removed the ability for a claimant to run searches on the Correspondence Query page. *Id*. Defendant also determined that a small number of claimants were incorrectly being presented with the option to navigate to the Correspondence Query page because the system lost context and defaulted to assuming that the user was a staff member. *Id*. Working with the State Agencies, Defendant remediated this by configuring the system to default to an error when it loses user type context about the user type and claimants can no longer navigate to the Correspondence Query page. *Id*. In addition to these remediation measures, Defendant, working with the State Agencies, also reviewed the role-to-function mappings in the PUA applications to confirm users have only necessary authorizations; and conducted data minimization reviews of the PUA

---

[5] As of December 1, 2021, approximately 14,500 claims have been filed. The claim deadline is January 17, 2022.

applications to reduce the display of personal data and minimized the display of certain personal data. ¶50.

The Settlement Agreement authorizes Settlement Class Counsel to file an application for an award of attorneys' fees (not to exceed one-third (33.33%) of the Settlement Fund, or $1,649,835) and Litigation Costs and Expenses[6] (not to exceed $25,000) to be paid from the Settlement Fund. §X; ¶73. The Settlement Agreement also authorizes Class Counsel to petition the Court for reasonable service awards for each named plaintiff, not to exceed $2,000 each, to be paid from the Settlement Fund as approved by the Court. §IX.

On August 27, 2021, the Court granted preliminary approval of the proposed settlement, finding the proposed settlement terms fair, reasonable, and adequate. ECF No. 137.[7] Pursuant to the approved notice plan, on or about October 15, 2021 the Settlement Administrator began disseminating Notice to the members of the Settlement Class via U.S. mail and e-mail. Plaintiffs now move the Court for an award of reasonable attorneys' fees, costs, and service awards in accordance with paragraphs 71 and 73 of the Settlement Agreement.

## III.   ARGUMENT

### A.  Plaintiffs' Requested Attorneys' Fees Award is Fair and Reasonable.

#### 1.  Legal Standard

Federal Rule of Civil Procedure 23(h) permits the Court to award reasonable attorneys' fees in class action settlements as authorized by law or the parties' agreement. *See* Fed. R. Civ. P.

---

[6] "Litigation Costs and Expenses" are defined as "costs and expenses incurred by counsel for Plaintiffs in connection with commencing, prosecuting, and settling the Action." ¶19.

[7] On the same day the Court granted preliminary approval, the Court identified certain language in the opt-out section of the Settlement Agreement as problematic, and invited counsel for both parties to submit briefing to justify the language or delete it, and the parties opted to delete it. *See generally* ECF No. 138.  Plaintiffs filed an updated Settlement Agreement removing that language. ECF No. 143-1.

23(h). Here, Plaintiffs' request for attorneys' fees is authorized by both law and by the Settlement Agreement. *See In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *16 (S.D.N.Y. Apr. 26, 2016) ("CDS") ("Attorneys whose work created a common fund for the benefit of a group of plaintiffs 'may receive reasonable attorneys' fees from the fund."); ¶73 (authorizing Class Counsel to apply the Court for reasonable attorneys' fees not to exceed $1,649,835). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *Abel v. Town Sports Int'l, LLC*, 2012 WL 6720919, at *26 (S.D.N.Y. Dec. 18, 2012) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

Courts traditionally have employed two methods to calculate reasonable attorneys' fees in class action litigation: (1) the percentage of the fund approach, and (2) the lodestar approach. *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000). The lodestar method entails "scrutiniz[ing] the fee petition to ascertain the number of hours reasonably billed to the class and then multipl[ying] that figure by an appropriate hourly rate." *Id*. at 47 (citing *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). The resulting lodestar may then be increased (or decreased) by applying a multiplier based on certain factors related to the litigation. *See id*. The second method is the far simpler "percentage method," by which the fee award is "some percentage of the fund created for the benefit of the class." *Savoie*, 166 F.3d at 460 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)).

The Court has discretion to award fees based on either the lodestar method or the percentage method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). However, "[t]he trend in the Second Circuit is to assess a fee application using the 'percentage of the fund' approach, which 'assigns a proportion of the common settlement fund toward payment of attorneys' fees.'" *Jander v. Ret. Plans Comm. of IBM*, 2021 WL 3115709, at *7 (S.D.N.Y. July

22, 2021) (quoting *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc*., 2021 WL 76328, at *4 (S.D.N.Y. Jan. 7, 2021)). *See also Wal-Mart Stores Inc. v. U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (noting that "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation" (internal quote omitted)).  "As a 'cross-check on the reasonableness of the requested percentage,' however, courts also look to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate." *Jander*, 2021 WL 3115709, at *7 (quoting *Lexmark*, 2021 WL 76328, at *4).

Regardless of whether the percentage of the fund or lodestar method is used, courts rely on the six factors enumerated by the Second Circuit in *Goldberger* to determine whether the fees are reasonable. *See Goldberger*, 209 F.3d at 50 ("(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.").

### 2. The Percentage Method is the Appropriate Method for Awarding Attorneys' Fees in this Common Fund Case

"Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method – in common fund cases like this one, courts in this Circuit prefer to award fees as a percentage of the fund." *Bryant v. Potbelly Sandwich Works, LLC,* 2020 WL 563804, at *5 (S.D.N.Y. Feb. 4, 2020). "[T]he trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases." *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013). The preference for the percentage of the fund method

in common fund cases is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).

The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121. "In contrast, the 'lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'" *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)). The *Goldberger* court described well-recognized difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the lodestar method proved vexing. Our district courts found it created a temptation for lawyers to run up the number of hours for which they could be paid. For the same reason, the lodestar created an unanticipated disincentive to early settlements. But the primary source of dissatisfaction was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimleteyed review of line-item fee audits. There was an inevitable waste of judicial resources.

*Goldberger*, 209 F.3d at 48-49.

In contrast, the percentage method provides "appropriate financial incentives" necessary "to attract well-qualified plaintiffs' counsel who are able to take a case to trial," while also "directly align[ing] interests of the class and its counsel" by providing "a powerful incentive for the efficient prosecution and early resolution of litigation." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355, 359 (S.D.N.Y. 2005).

### 3.   The Requested Fee is Reasonable Under the Percentage Method.

As part of the Settlement Agreement, Defendant has agreed to pay Plaintiffs reasonable attorneys' fees not to exceed 33.33% of the $4.95 million Settlement Fund, or $1,649,835. ¶73. Class Counsel respectfully submit that one-third of the Settlement Fund is a reasonable fee award

given Class Counsel's investment of time, expertise, and capital in the litigation, which has produced a successful outcome for the Settlement Class in a case that was both complex and high risk.

"It is by now well established that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit." *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010). *See also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%–50% range in class actions." (internal quotes omitted)).

As this Court has previously recognized, "'[d]istrict courts in this Circuit typically approve fee requests between 30% and 33% of the settlement.'" *Hernandez v. Compass One, LLC*, 2021 WL 4925561, at *4 (S.D.N.Y. Oct. 21, 2021) (Liman, J.) (quoting *Strauss v. Little Fish Corp*., 2020 WL 4041511, at *9 n.1 (S.D.N.Y. July 17, 2020) (Liman, J.) (collecting cases)). In fact, "[i]n this district alone, there are *scores* of common fund cases where fees alone (i.e., where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund." *In re Lloyd's Am. Tr. Fund Litig*., 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (emphasis added; collecting cases). Indeed, "[d]istrict courts in the Second Circuit *routinely* award attorneys' fees that are 30 percent or greater." *Velez*, 2010 WL 4877852, at *21

(emphasis added). This is especially true in non-megafund cases, like this one. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 149.[8]

Thus, the percentage of the common fund requested by this motion, 33.33%, is reasonable, consistent with many other fee awards granted in other class actions in this Circuit, and commensurate with the complexities and risks facing Class Counsel in bringing suit.

### 4. A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of Plaintiffs' Requested Fee

As previously noted, the lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp.3d at 353. However, the lodestar method is still sometimes used in this Circuit "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Id.* "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Silberblatt v. Morgan Stanley*, 524 F.Supp.2d 425, 434 (S.D.N.Y. Nov. 19, 2007) (internal citations omitted). Class Counsel need only submit

---

[8] In order to "avoid routine windfalls" in cases involving exceptionally large common funds, courts typically decrease the percentage of the fee as the size of the fund increases. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp.3d 344, 349 (S.D.N.Y. 2014). Accordingly, courts have "cabined awards to between 12% and 28%" for "class action settlements ranging from $15 million to $336 million." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 436 (S.D.N.Y. 2016) (awarding fees representing 20% of a $244 million settlement fund). *See also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018) (approving 25% of a $35 million settlement fund); *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (allowing fees representing 12% of a $335 million settlement fund); *In re Platinum & Palladium Commodities Litig.*, 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (awarding fees representing 22.5% of the $72.5 million fund).

documentation appropriate to meet the burden establishing an entitlement to an award, not to satisfy "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Here, Class Counsel have collectively worked 1,932.5 hours in this litigation. Declaration of Jeffrey S. Goldenberg In Support Of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Second Goldenberg Decl."), ¶19, filed concurrently.  At their usual and customary rates, and applying the rates in existence at the time the work was undertaken, these hours translate to a lodestar of approximately $1,282,482.50.  *Id.* at ¶20.  As such, Plaintiffs' request for one-third of the common fund, or $1,649,835, for attorneys' fees represents a total multiplier of approximately 1.29.  *Id.*  at ¶21.

This multiplier is within or below the range commonly awarded by courts throughout the District, as well as across the country. *See, e.g.*, *CDS*, 2016 WL 2731524, at *17 (approving attorneys' fees constituting a multiple of 6.36 times the lodestar); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (noting "lodestar multiples of over 4 are awarded by this Court"); *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (describing a 4.65 lodestar multiple as "modest" and "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding a lodestar multiplier of 6); *Jander*, 2021 WL 3115709, at *7 (approving request for 30% of gross settlement (1.7 multiplier), noting that "multipliers of between 3 and 4.5 have been common"); *Capsolas v. Pasta Res. Inc*., 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96); *Wal-Mart Stores, Inc*., 396

F.3d at 123 ("Here, the lodestar yields a multiplier of 3.5, which has been deemed reasonable under analogous circumstances.").[9]

Therefore, Plaintiffs respectfully submit that the lodestar cross-check supports the reasonableness of the requested fee award.

5. The Fee Request is Reasonable Under the *Goldberger* Factors

Courts evaluating whether a fee is reasonable consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. Class Counsel respectfully submit that an analysis of the *Goldberger* factors further demonstrate that the requested fee is reasonable and warrants approval by the Court.

a. *Class Counsel Invested Substantial Time and Resources Over the Course of the Litigation.*

Class Counsel have spent significant time, effort, and expense to achieve this settlement. Prior to filing suit, Class Counsel investigated a multitude of factual and legal issues related to Plaintiffs' potential claims and Defendant's potential defenses. Topics analyzed included the value of personal identifying information; the likely consequences of data breaches; industry standards for data security; Defendant's representations regarding its security features used to protect personal identifying information; and the technical details about the PUA Data Security Incident. First Goldenberg Decl., ¶7.  Class Counsel also analyzed guides issued by the Federal Trade

---

[9] *See also Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding multiplier of 3.53); *Davis v. J.P. Morgan Chase & Co.*, 827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011) (awarding multiplier of 5.3); *Buccellato v. AT & T Corp.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3); *Khait v.. Whirlpool Corp.*, *No. 06 Civ. 6381*, 2010 WL 2025106, at *8–10 (E.D .N.Y. Jan. 20, 2010) (awarding multiplier of 3.3).

Commission intended to provide information and recommendations to businesses about basic security standards.  *Id*. at ¶8. After the suits were filed, Class Counsel worked diligently to consolidate multiple overlapping actions, and drafted a consolidated complaint [ECF No. 61]. Class Counsel coordinated with co-counsel to create an effective leadership structure and successfully moved for appointment of interim class counsel [ECF No.74]. Class Counsel reviewed and analyzed Defendant's first motion to dismiss [ECF Nos. 74-75] and amended the complaint to address potential deficiencies [ECF No. 82].  Class Counsel researched and drafted an opposition to Defendant's second motion to dismiss [ECF No. 103].  And Class Counsel spent many months engaged in hard-fought, arms' length settlement negotiations, which included a mediation session before Hon. Wayne Anderson (ret.).  First Goldenberg Decl., ¶¶9-12.  Upon completing the formal Settlement Agreement, Class Counsel filed their unopposed motion for preliminary approval [ECF No.129].

As previously noted, since the inception of this case, Class Counsel have dedicated 1,932.50 hours of attorney and other legal professional time through November 30, 2021.  Second Goldenberg Decl., ¶19.  "Considering the complexity of class actions in general and the overall result obtained, the Court [should] find[] that the time spent by counsel is reasonable and supports the requested award."  *Story*, 2021 WL 736962, at *12. Thus, this factor weighs in favor of this fee application.

### b.  This Class Action Included Complex Legal Issues

The magnitude and complexity factor also supports the requested award. "[C]lass actions 'have a well-deserved reputation as being most complex.'" *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). And because class actions require more expertise, counsel who volunteer to represent a class deserve a larger fee. *See In re Citigroup Inc. Bond Litig.*,

988 F. Supp.2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award."). This litigation is no exception.

Defendant voluntarily withdrew its motion to dismiss to allow the parties to negotiate a mutually agreeable resolution to the action.  However, had the negotiations failed, Defendant had potentially strong arguments and defenses supporting dismissal. For instance, Defendant argued that Plaintiffs lacked injuries caused by or traceable to Defendant, that Plaintiffs' claims were barred by various defenses, including the economic loss rule, and that Plaintiffs' complaint failed to plead a claim upon which relief could be granted.  *See generally* ECF No. 89.  Class Counsel are confident that Plaintiffs would have ultimately prevailed on Defendant's motion to dismiss. But the factual and legal issues involved in this dispute are unquestionably complex and it is far from clear what the ultimate result would be if the case had proceeded to trial.  *See, e.g., Story,* 2021 WL 736962, at *13 ("Most class actions are inherently complex and settlement avoids the costs, delays, and multitudes of other problems associated with them."); *NASDAQ,* 187 F.R.D. at 477 ("There can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result.").

### c. The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation

Class Counsel undertook significant risk in accepting this case on a contingency basis. Accordingly, this factor too supports Plaintiffs' requested fee award. The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (citing *Goldberger*, 209 F.3d at 54). *See also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) ("Courts have repeatedly recognized 'that the risk of the

litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions.").

"'No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.'" *Cates v. Trustees of Columbia Univ. in City of New York*, 2021 WL 4847890, at *5 (S.D.N.Y. Oct. 18, 2021) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)). The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

"It is well-established that litigation risk must be measured as of when the case is filed," rather than with the benefit of hindsight. *Goldberger*, 209 F.3d at 55. As previously noted, at the time of filing of this litigation, there were many complex issues of fact and law that could potentially undermine Plaintiffs' ability to succeed on the merits.  But Plaintiffs also faced significant defenses to class certification. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). And even if Class were successful in moving for class certification, Defendant could have appealed the certification decision under Federal Rule of Civil Procedure 23(f) and argued for decertification. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").

"Counsel should be rewarded for undertaking [those risks] and for achieving substantial value for the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014). *See also Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012) ("[T]he risk of non-payment in cases prosecuted on a contingency basis where claims are not successful…can justify higher fees."). Because Class Counsel obtained valuable settlement benefits on behalf of Class members despite significant risks and obstacles, this factor supports Plaintiffs' requested fee award.

> d. *Class Counsel Provided (and Continue to Provide) High-Quality Representation*

The "quality of representation" factor also supports Plaintiffs' requested fee award. "To evaluate the 'quality of the representation,' courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). Here, Class Counsel obtained a $4.95 million common fund benefit for the Class, plus important remediation and security enhancements. These benefits are real and substantial. Courts recognize that "the quality of representation . . . may be measured in large part by the results that counsel achieved for the classes." *Payment Card*, 991 F. Supp. 2d at 441.

As for the background of the lawyers involved, Class Counsel are qualified class action attorneys who possess a long and proven track record of successfully prosecuting class actions, including data breach cases. *See* First Goldenberg Decl., ¶16; Second Goldenberg Decl., ¶23. Class Counsel's ability to obtain a substantial recovery from a well-funded opponent like Defendant represented by zealous and highly-competent counsel is a testament to the skill with which Class Counsel have prosecuted this case.

"The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *Fleisher v. Phoenix Life Ins. Co*., 2015 WL 10847814, at *22 (S.D.N.Y. Sept. 9, 2015) (internal quotes omitted). *See also NASDAQ*, 187 F.R.D. at 489 (approving fee award where defense counsel included "the nation's biggest and best defense firms"); *WorldCom*, 388 F. Supp. 2d at 357-58 (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country"); *In re Warner Comm'ns. Secs. Litig*., 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Defendant is represented by attorneys from King & Spalding, one of the largest and well-heeled law firms in the county with more than 1,200 lawyers in 22 offices globally.[10]  This factor too supports the requested fee award.

### e.   The Fee Request Is Reasonable in Relationship to the Settlement

The next *Goldberger* factor compares the requested fee award to the settlement. "Courts have interpreted this factor as requiring the review of the fee request in terms of the percentage it represents of the total recovery." *Cates,* 2021 WL 4847890, at *7 (finding class counsel's request for one-third of settlement fund, or $4,333,333.33, to be reasonable). *See also Wal-Mart Stores, Inc.*, 396 F.3d at ("the percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement" (internal quotes omitted)). As previously discussed, in non-megafund cases like this one, "[c]ourts in this District routinely approve fee awards of one-third of the common fund or more." *Cates*, 2021 WL 4847890, at *7 (S.D.N.Y. Oct. 18, 2021) (collecting cases).

### f.   Public Policy Supports Approval of the Fee

---

[10] https://www.kslaw.com/pages/about# (last visited Nov. 18, 2021)

The public policy factor also supports Plaintiffs' requested fee award. "In awarding attorneys' fees in common fund cases 'the Second Circuit and courts in this district ... also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.'" *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *3 (S.D.N.Y. Sept. 23, 2019) (quoting *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999)). "Attorneys' fees should 'reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Id.*  Fee awards "should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *Id.* (quoting *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *18 (S.D.N.Y. Mar. 24, 2014)).

"Here, Class Counsel obtained a favorable settlement in an efficient manner." *Story*, 2021 WL 736962, at *12 ("As such, this factor supports the requested award"). Without private counsel taking on the risk of this lawsuit and having the skill and resources to pursue the claims vigorously, the Settlement Class here would have recovered nothing, and important public interests would not have been vindicated. Awarding a reasonable percentage of the common fund properly motivates zealous enforcement of consumer protection laws and incentivizes skilled counsel to bring meritorious cases even where, at the outset, the prospect of any recovery is uncertain and the costs are daunting. *See WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

Class Counsel's efforts in this litigation were the only way Plaintiffs and the Class would receive any compensation. Plaintiffs' counsel in such cases are typically retained on a contingent

basis due to the huge commitment of time and expense required relative to the losses suffered by an individual representative plaintiff. Each of the firms representing Plaintiffs in this action agreed to do so on a wholly contingent basis.  Second Goldenberg Decl., ¶39.  Awards of reasonable attorneys' fees, such as the fee requested here, encourage "private attorneys to prosecute class actions on a contingent basis ... on behalf of those who otherwise could not afford to prosecute." *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 373 (S.D.N.Y. 2002). Class Counsel assumed substantial risk by undertaking this litigation and achieved a significant benefit to the Class. Second Goldenberg Decl., ¶40.   An important public policy interest is served by awarding attorneys' fees adequately compensating counsel. Accordingly, public policy supports Class Counsel's requested fee.

### 6.   The Reaction of Class Members Supports Class Counsel's Fee Request.

Finally, the reaction of Class members to the settlement and Class Counsel's fee request, which was disclosed in the Notice, confirms the reasonableness of Class Counsel's request. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014) ("In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the class to the fee request in deciding how large a fee to award."). The Notice informed members of the Settlement Class that Class Counsel intended to seek a fee award "not to exceed one-third (33.33%) of the Settlement Fund, or $1,649,835.00…." (ECF 131-1, Ex. 1, p. 7). This motion is consistent with the Notice provided to the Class.

The Settlement has been well received by the public. As of the filing of this fee request, there has been only one objection to the Settlement. This objection (partially redacted), attached as Exhibit Q to the Second Goldenberg Decl., argues that "the attorneys' fees are exorbitant and not commensurate with fees charged by other attorneys and/or firms practicing in the same

jurisdiction and area of the law." However, as previously discussed, attorneys' fees representing 33.33% of a common fund are commensurate with other awards approved by Court's in this Circuit where the attorneys agreed to represent their clients and the class on a contingent basis. If any other objections to the requested fee award are filed, Class Counsel will address them in a supplemental filing before the final approval hearing.[11]

### B. Class Counsel's Request for Reimbursement of Litigation Costs and Expenses is Reasonable.

Under Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Here, a cost award is authorized by both the Settlement Agreement and the common fund doctrine. ¶73 (authorizing Class Counsel to seek reimbursement of Litigation Costs and Expenses not to exceed $25,000); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class); Alba Conte, Attorney Fee Awards § 2.08, at 50-51 (3d ed. 2004); *In re Vitamin C Antitrust Litig*., 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." (internal quote omitted)).

"Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and computerized legal research." *Cates*, 2021 WL 4847890, at *8 (citing Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed. 2004)). *See also Fleisher*, 2015 WL 10847814, at *23 (noting as typical expenses in complex cases "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with th[e] litigation").

---

[11] The objection deadline is January 3, 2022.

Here, Class Counsel have incurred $21,091.31 in reasonable and necessary litigation costs and expenses. Second Goldenberg Decl., ¶22.  These expenses include all filing, general litigation, and mediation-related expenses that were incurred in the normal course of business and were essential to the successful prosecution of this lawsuit. None of Class Counsel's expenditures have yet been reimbursed. "The fact that Class Counsel was willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *19. These expenses have also been reviewed by Lead Class Counsel and were found to be reasonable. Second Goldenberg Decl., ¶42.   In sum, there is "no reason to depart from the common practice in this circuit of granting expense requests." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003). Class Counsel therefore respectfully request that litigation costs and expenses in the amount of $21,091.31 be reimbursed.

### C.  Plaintiffs' Request for Modest Service Awards is Reasonable.

An "incentive" or "service" award is common in class actions and serves to compensate a plaintiff for his or her time and effort pursuing claims for his or her benefit as well as for the benefit of the class. *See In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013). Service awards are within the discretion of the court and amounts awarded vary considerably depending on time spent and risks incurred by named plaintiffs and the size and scope of the recovery. *See, e.g., Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) ($2,500 to $85,000 may be reasonable depending on participation in the action).[12]

---

[12] *See also Guippone v. BH S&B Holdings, LLC*, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ($10,000 award approved in a settlement of approximately $900,000 for a class of approximately 300 members); *Sand v. Greenberg,* 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ($10,000 service award "reasonable" and "very similar to allocation plans that courts routinely approve in the context of settlement"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y.

Here, consistent with the Settlement Agreement, Class Counsel respectfully requests modest service awards of $2,000 for each of the named Plaintiffs for their active participation in this Action. "Courts in this Circuit have approved service awards for much more than the $2,000 requested here—$10,000 to $15,000 have been awarded to class representatives in class settlements in cases similar to this one." *Guippone v. BH S&B Holdings LLC*, 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016) (approving $2,000 service awards).

"In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time and effort expended by the named plaintiff in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights." *Id*. All three factors support the requested service awards. Plaintiffs agreed to bring this action in their name without any assurance that it would be successful. Second Goldenberg Decl., ¶43.  Plaintiffs also expended valuable time and effort in the ligation. Among other things, Plaintiffs carefully reviewed pleadings (including the complaint and amended complaint), regularly communicated with Class Counsel to keep abreast of the developments, and participated in settling of the case. *Id*.  Without Plaintiffs, the $4.95 million Settlement Fund could not have been possible.  *See Chen v. XpresSpa at Terminal 4 JFK LLC,* 2021 WL 4487835, at *8 (E.D.N.Y. Oct. 1, 2021) (approving $2,000 service awards for eight plaintiffs ($16,000 total) where plaintiffs were "actively involved at all stages of the litigation, including conferring with counsel, and producing documents and data that aided in counsel's evaluation of the risks of the case"); *In re Gen. Motors LLC Ignition Switch Litig*., 2020 WL 7481292, at *4 (S.D.N.Y. Dec. 18, 2020) (approving service awards between

2010) (awarding $25,000 to lead plaintiff in consumer class action and $5,000 to another plaintiff); *In re Currency Conversion Fee Antitrust Litig*., 263 F.R.D. 110, 131 (S.D.N.Y. 2009) ($45,000 and $35,000 service awards are "within the range of what other courts have found to be reasonable, although on the higher end").

$1,000 and $2,000, because the plaintiffs "devoted considerable time and effort to this litigation, including supervising counsel and responding to discovery. The result obtained for the Class would not have been possible without the participation of these Plaintiffs"); *McKenzie v. Schulte Roth & Zabel LLP,* 2012 WL 13059787, at *7 (S.D.N.Y. Aug. 1, 2012) (approving $2,000 service award).

Notably, the requested service awards equal approximately 0.36% of the Settlement Fund, and courts have approved service awards that represent a much larger percentage. *See, e.g., Reyes v. Altamera Group, LLC*, 2011 WL 4599822, at *1, *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards totaling $50,000, representing approximately 16.6% of the $300,000 settlement); *Parker v. Jekyll & Hyde Ent. Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (approving service awards totaling 11% of the total recovery); *Chen v. XpresSpa at Terminal 4 JFK LLC*, 2021 WL 4487835, at *8 (E.D.N.Y. Oct. 1, 2021) (approving service awards equal to 3.7% of settlement fund).

Accordingly, Class Counsel's request for $2,000 service awards for each of the Plaintiffs ($18,000 total) should be approved.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the request for: (i) the payment of attorneys' fees in the amount of one-third of the Settlement Fund, or $1,649,835; (ii) reimbursement of reasonable and necessary litigation expenses in the amount of $21,091.31; and (iii) a $2,000 service award for each of the named Plaintiffs ($18,000 total).

Dated: December 3, 2021                    Respectfully submitted,

By: */s/Jeffrey S. Goldenberg*

GOLDENBERG SCHNEIDER, L.P.A.

26

Jeffrey S. Goldenberg*
4445 Lake Forest Drive, Suite 490
Cincinnati, OH  45242
Phone: (513) 345-8297
Fax:    (513) 345-8294
jgoldenberg@gs-legal.com
**Interim Lead Counsel**

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox (S.D.N.Y. Bar FF9102)
850 Third Avenue
New York, NY 10022
Phone: (212) 687-1980
Fax:    (212) 687-7714
ffox@kaplanfox.com
**Interim Liaison Counsel**

LEVIN SEDRAN & BERMAN, LLP
Charles E. Schaffer*
510 Walnut Street – Suite 500
Philadelphia, PA  19106-3697
Phone: (215) 592-1500
cschaffer@lfsblaw.com
**Interim Executive Committee**

MORGAN & MORGAN
John A. Yanchunis*
201 North Franklin Street, 7th Floor
Tampa,  Florida 33602
Phone: (813) 275-5272
JYanchunis@ForThePeople.com
**Interim Executive Committee**

PEARSON, SIMON & WARSHAW, LLP
Melissa S. Weiner*
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Phone: (612) 389-0600
Fax:    (612) 389-0610
mweiner@pswlaw.com
**Interim Executive Committee**

CARLSON LYNCH LLP
Katrina Carroll*
111 W. Washington Street, Suite 1240
Chicago, IL  60602
Phone: (312) 750-1265
*kcarroll@carlsonlynch.com*
**Interim Executive Committee**

ZIMMERMAN LAW OFFICES, P.C.
Thomas A. Zimmerman, Jr.*
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Fax:     (312) 440-4180
tom@attorneyzim.com
**Interim Executive Committee**

MASON LIETZ & KLINGER LLP
Gary E. Mason*
5101 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Phone: (202) 640-1160
*gmason@masonllp.com*
**Interim Executive Committee**

CONSUMER PROTECTION LEGAL, LLC
Tiffany Marko Yiatras*
308 Hutchinson Road
Ellisville, Missouri  63011-2029
Phone: (314) 541-0317
*tiffany@consumerprotectionlegal.com*
**Interim Executive Committee**

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (S.D.N.Y. Bar LK7190)
Matthew B. George*
1999 Harrison Street, Suite 1560
Oakland, California 94612
Phone: (415) 772-4700
Fax:     (415) 772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

MORGAN & MORGAN
Amanda Peterson (Fed. Bar No. AP1797)
90 Broad Street, Suite 1011

New York, NY 10004
Phone: (212) 738-6299
*apeterson@forthepeople.com*

THE LYON FIRM, P.C.
Joseph M. Lyon*
2754 Erie Ave
Cincinnati, Ohio 45208
Phone: (513) 381-2333
*jlyon@thelyonfirm.com*

TYCKO & ZAVAREEI LLP
Hassan A. Zavareei*
Katherine M. Aizpuru (Fed. Bar No. 5305990)
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Phone: (202) 973-0900
Fax:     (202) 973-0950
*hzavareei@tzlegal.com*
*kaizpuru@tzlegal.com*

KOPELOWITZ OSTROW FERGUSON
   WEISELBERG GILBERT
Jonathan M. Streisfeld*
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Phone: (954) 525-4100
Fax:     (954) 525-4300
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*

DANNLAW
Javier L. Merino (Fed. Bar. No. JM4291)
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: (201) 355-3440
Fax:     (216) 373-0536
*notices@dannlaw.com*

DANNLAW
Marc E. Dann*
Brian D. Flick*
PO Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Fax:     (216) 373-0536

*notices@dannlaw.com*

FREED KANNER LONDON & MILLEN LLC
Jonathan M. Jagher*
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
*jjagher@fklmlaw.com*
*kjustice@fklmlaw.com*

EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
Daniel A. Edelman*
20 S. Clark Street, Suite 1500
Chicago, IL  60603
Phone: (312) 917-4502 (direct)
dedelman@edcombs.com

MEYER WILSON CO., LPA
Michael Joseph Boyle , Jr.*
Matthew Ryan Wilson*
305 W. Nationwide Blvd.
Columbus, OH 43215
Phone: 614-224-6000
Email: mboyle@meyerwilson.com
        mwilson@meyerwilson.com

*Attorneys for Plaintiffs and the Settlement Class*

*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December,  2021, I caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES, AND SERVICE AWARDS** with the Clerk of the Court for the Southern District of New York via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

Date: December 3, 2021                    */s/Jeffrey S. Goldenberg*