**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

PAUL CULBERTSON, KATHY NEAL,
KELLY ALLISON-PICKERING, JESSICA
HAIMAN, ALEXANDER CABOT, BRIANA
JULIUS, NICHELLE NEWLAND,
BERNADETTE NOLEN, ALEXANDRIA
POLICHENA, and MARK NIEDELSON,
*individually and on behalf of all others
similarly situated*,

                Plaintiffs,

   v.

DELOITTE CONSULTING LLP,

                Defendant.

**Case No.: 1:20-cv-3962-LJL**

JUDGE LEWIS J. LIMAN

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

Table of Authorities ............................................................................................... ii

INTRODUCTION ....................................................................................................1

BACKGROUND ......................................................................................................2

    A.    Filing and Consolidation of Cases ..............................................2

    B.    Legal Investigation and Settlement Negotiations .................4

    C.    The Settlement Agreement ..........................................5

    D.    Preliminary Approval and the Fairness Process ...................7

ARGUMENT ............................................................................................................8

I. PLAINTIFFS HAVE ARTICLE III STANDING.................................................8

II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE...................12

    A.    Judicial Policy Strongly Favors Settlement ..........................12

    B.    Courts Approve Fair, Reasonable and Adequate Class Action Settlements..........12

    C.    The Proposed Settlement is Procedurally Fair.......................13

        1.    Rule 23(e)(2)(A) – Plaintiffs and Class Counsel Have Adequately Represented the Class .................................13

        2.    Rule 23(e)(2)(B) – the Settlement Was Negotiated at Arm's Length .................................14

    D.    The Proposed Settlement is Substantively Fair ...................15

        1.    Rule 23(e)(2)(C)(i) – the Relief Provided to the Class is Superior to Continued Litigation.................................15

        2.    Rule 23(e)(2)(C)(ii) – the Claims Process Is Fair and Rational.................18

        3.    Rule 23(2)(C)(iii) – the Proposed Award of Attorneys' Fees Supports Final Approval .................................19

        4.    Rule 23(e)(C)(iv) – Any Agreements Required to Be Identified Under Rule 23(e)(3) .................................19

        5.    Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to One Another .................................19

III. NOTICE ADEQUATELY APPRISED CLASS MEMBERS OF THEIR RIGHTS ..............20

IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED............22

V. THE REACTION OF THE SETTLEMENT CLASS FAVORS APPROVAL........................24

CONCLUSION........................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ....................................................................17

*Attias v. Carefirst, Inc.*,
    865 F.3d 620 (D.C. Cir. 2017) ..........................................................................8

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)...............................................................25

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ......................................................................10, 11

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*
    *Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ...............................13, 15, 17

*City of Providence v. Aéropostale, Inc.*,
    No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)...................16

*Clapper v. Amnesty Int'l. USA et al.*,
    133 S. Ct. 1138 (2013)......................................................................................11

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13-md-2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 25, 2016) ...............19

*In re Drexel Burnham Lambert Grp., Inc.*,
    995 F.2d 1138 (2d. Cir. 1993)...........................................................................21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    File No., 05 Civ 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......19

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sep. 9, 2015)............16, 17

*Galaria v. Nationwide Mut. Ins. Co.*,
    663 F. App'x 384 (6th Cir. 2016) .......................................................................9

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................15

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................17

*Hutton v. Nat'l. Bd. Of Exam'rs in Optometry, Inc.*,
 F.3d 613 (4th Cir. 2018) ...........................................................................................11

*Krottner v. Starbucks Corp.*,
 628 F.3d 1139 (9th Cir. 2010) ....................................................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
 327 F.R.D. 483 (S.D.N.Y. 2018) ...........................................................................17, 18

*Marisol A. by Forbes v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997)......................................................................................23

*McLaughlin v. IDT Energy*,
 No. 14CV4107ENVRML, 2018 WL 3642627 (E.D.N.Y. July 30, 2018)..............................17

*McMorris v. Carlos Lopez & Associates, LLC*,
 995 F.3d 295 (2d Cir. 2021).................................................................................8, 9, 10

*McReynolds v. Richards-Cantave*,
 588 F.3d 790 (2d Cir. 2009).......................................................................................12

*Melito v. Am. Eagle Outfitters, Inc.*,
 No. 14-CV-2440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017), *aff'd
 in part, appeal dismissed in part sub nom. Melito v. Experian Mktg. Sols.,
 Inc.*, 923 F.3d 85 (2d Cir. 2019) ............................................................................13, 20

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
 246 F.R.D. 156 (S.D.N.Y. 2007) .................................................................................25

*In re Nassau Cty. Strip Search Cases*,
 461 F.3d 219, 227–28 (2d Cir. 2006)...........................................................................24

*In re NJOY Consumer Class Action Litig.*,
 120 F. Supp. 3d. 1050 (C.D. Cal. 2015) .......................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................................14

*In re Parking Heaters, Antitrust Litig.*,
 No. 15MC0940DLIJO, 2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) .................................12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019)....................................................................................17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 827 F.3d 223 (2d Cir. 2016)........................................................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05MD1720MKBJO, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .........................13, 24

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011)...............................................................................................10, 11

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) ....................................................................................................9

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)....................................................................................................23

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014) ..............................15, 16

*In re U.S. Off. Of Pers. Mgmt. Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019) ..................................................................................................10

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 22, 2012) .......................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).......................................................................................... *passim*

*In re WorldCom Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................................18

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008)......................................................................................25

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) .................................................................................................10

*Zeltser v. Merrill Lynch & Co.*,
  No. 13 CIV. 1531 FM, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ...................................24

**Other Authorities**

4 Rubenstein, Newberg on Class Actions § 12:15........................................................................19

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

Federal Judicial Center, *Judges' Class Action Notice and Claims Process
  Checklist and Plain Language Guide* (2010)..........................................................................22

iv

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d Ed. 2010) ...........................................................................................................22

## INTRODUCTION

Plaintiffs Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandra Polichena, and Mark Niedelson (collectively, "Plaintiffs")[1] respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement. If approved, the settlement will successfully resolve the claims of individuals in Illinois, Colorado, and Ohio who were notified that certain personal information they submitted to the Pandemic Unemployment Assistance ("PUA") Program in their respective states in connection with applying for pandemic-related unemployment claims may have been inadvertently exposed as a result of a data security incident (the "PUA Data Security Incident").

In the litigation, Plaintiffs alleged that Defendant Deloitte Consulting LLP ("Deloitte Consulting" or "Defendant") failed to use reasonable data security measures in designing, building, and maintaining web-based portals for the State Agencies through which individuals could apply for unemployment benefits. In the Settlement reached by the parties, Deloitte Consulting has agreed establish a Settlement Fund of $4.95 million, with no right to reversion, that will compensate Eligible Claimants, pay costs of notice and claims administration, and pay Court-approved reasonable attorneys' fees and costs and service awards to the class representatives.

On August 27, 2021, this Court entered an order preliminarily approving the Settlement and conditionally certifying a Settlement Class. *See* ECF 137. In doing so, the Court found that the proposed settlement was "fair, reasonable, and adequate," that the proposed notice plan

---

[1] Plaintiff Jessica Haiman has been voluntarily dismissed from the action. See Notice of Dismissal. ECF 134.

provided "the best notice practicable under the circumstances," and that the prerequisites for class treatment under Fed. R. Civ. P. 23 were satisfied. *Id.* ¶¶ 3, 6, 9.

The Court-approved notice plan has now been executed and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. Of the hundreds of thousands of potential class members who received direct notice of the proposed Settlement, only one has filed an objection and only ten have requested to be excluded. Declaration of Jenny Shawver of the Settlement Administrator, Angeion Group, LLC ("Angeion Decl.") ¶¶ 17-18. Because the Settlement is an excellent result for the Settlement Class, particularly in view of the risks and delays involved in continued litigation and the recovery per claimant, Plaintiffs respectfully request that the Court finally approve the Settlement, grant Plaintiffs' motion for attorneys' fees, expenses, and service awards, and enter a final judgment and order dismissing this case.

## **BACKGROUND**

### A.   **Filing and Consolidation of Cases**

On May 21, 2020, Plaintiffs Paul Culbertson, William Gibson, and Timothy Sylvester filed the present action against Deloitte Consulting. On the same day, Plaintiffs Daniel Bozin, Timothy Smith, and Alexandria Polichena filed a Class Action Complaint against Deloitte Consulting in the Cuyahoga County Court of Common Pleas, which Deloitte Consulting removed to the Northern District of Ohio. Case No. 1:20-cv-05070-LJL, ECF 1. On June 5, 2020, Deloitte Consulting filed a motion to transfer the case to the Southern District of New York due to the pending related matters in this Court. ECF 12.

On May 27, 2020, Plaintiff Janet Burns filed another Class Action Complaint against Deloitte Consulting. Case No. 1:20-cv-04077-LJL, Compl., ECF 1. The following day, Plaintiff Burns filed a Statement of Relatedness to the *Culbertson* matter. ECF 6. On May 29, 2020, Plaintiff

Melissa Alexander filed another Class Action Complaint against Deloitte Consulting. Case No. 1:20-cv-04129-LJL, Compl., ECF 1. Plaintiff Alexander filed a Statement of Relatedness to the *Culbertson* matter on the same day. ECF 4. On June 8, 2020, Kathy Neal filed another Class Action Complaint against Deloitte Consulting. Case No. 1:20-cv-04362-LJL, Compl., ECF 1. On June 10, 2020, Plaintiff Neal also filed a Statement of Relatedness to the *Culbertson* matter. ECF 6.

On June 23, 2020, the Court consolidated the *Culbertson*, *Alexander*, *Burns*, and *Neal* cases and directed counsel to make filings only under the case number of the Culbertson matter, 20-cv-3962. Case 1:20-cv-04129-LJL, ECF 13. On July 2, 2020, the Court consolidated the *Culbertson* matter with the *Bozin* matter and directed counsel to make filings only on the *Culbertson* docket. ECF 36.

On July 24, 2020, Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Jessica Haiman, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, and Alexandria Polichena, filed a Consolidated Class Action Complaint, asserting thirteen counts against Defendant for its alleged failure to protect Plaintiffs' and class members' personally identifiable information. ECF 61. On August 24, 2020, Defendant filed a Motion to Dismiss the Consolidated Class Action Complaint. ECF 68.

On September 15, 2020, the Court appointed interim class counsel. ECF 79. On September 18, 2020, Plaintiffs' counsel informed the Court that counsel for another similar action, *Niedelson*, dismissed their complaint on September 16, 2020, and Plaintiff Niedelson would be added as a party to the Consolidated Complaint to be filed on September 21, 2020. ECF 80.

On September 21, 2020, Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Jessica Haiman, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandria Polichena, and Mark Niedelson, through their counsel, filed a First Amended Consolidated Class

3

Action Complaint. ECF 82. The Complaint alleged thirteen counts, all related to Defendant's alleged failure to protect Plaintiffs' and class members' personally identifiable information, and the harm suffered due to the resulting data breach. On October 21, 2020, Defendant again moved to dismiss Plaintiffs' Amended Consolidated Class Action Complaint. ECF 88. Plaintiffs filed a memorandum opposing the motion to dismiss on November 23, 2020, ECF 103, and Defendant filed its reply in support of the motion to dismiss on December 21, 2020. ECF 111.

**B.**     **Legal Investigation and Settlement Negotiations**

Counsel for Plaintiffs in the consolidated action embarked on the settlement process jointly, with all counsel working together to analyze the legal landscape thoroughly – including issues related to tort remedies, contract remedies, and class certification – to fully evaluate the risks and benefits of potential early resolution. Declaration of Jeffrey S. Goldenberg In Support Of Motion For Preliminary Approval ("First Goldenberg Decl."), ECF 131 ¶ 6. Plaintiffs' Counsel analyzed topics including the value of personal identifying information; hacking; consequences of data breaches, including exposure of private financial account information and social security numbers; industry standards for data security; and Defendant's representations regarding its security features to protect personal identifying information, as well as detailed information about the PUA Data Security Incident. *Id*. ¶ 7. Interim Class Counsel also analyzed guides issued by the Federal Trade Commission intended to provide information and recommendations to businesses about basic security standards. *Id*. ¶ 8.

On January 29, 2021, the parties jointly moved to stay the consolidated action for 90 days to allow them to pursue settlement negotiations. ECF 117. Following a status conference and pursuant to the Court's request, Defendant filed a Notice of Withdrawal of its Motion to Dismiss Without Prejudice. ECF 116.

The settlement negotiations were conducted at arm's length over a period of several months. First Goldenberg Decl. ¶ 9. On April 28, 2021, the parties participated in mediation with Hon. Wayne Anderson (ret.) via Zoom. *Id*. ¶ 10. At that mediation, the parties reached an agreement in principle to resolve the action. *Id*. ¶ 11. The parties spent months working out the details of the settlement, which are the product of hard-fought, arm's length negotiations. *Id*. ¶ 12.

**C.    The Settlement Agreement[2]**

Under the Settlement Agreement, the parties agree to certify a Settlement Class consisting of the 237,675 individuals in Illinois, Colorado, and Ohio who were notified by the State Agencies that their personal information was subject to inadvertent exposure in the PUA Data Security Incident. ¶ 35.[3] The Settlement Agreement provides that Defendant will establish a Gross Settlement Fund in the amount of $4.95 million, which will pay all valid Claims, as well as any Attorneys' Fees, Costs, Service Awards, and Settlement Administration Costs that are approved by the Court. § II.

Settlement Class Members that submit valid claims will receive $20.00/hour for lost time they spent responding to the PUA Data Security Incident, provided they can demonstrate that this lost time is fairly traceable to the PUA Data Security Incident. Ex. A, ¶ 2. All Settlement Class Members may submit a claim for reimbursement of up to four (4) hours at $20.00 per hour for self-certified Attested Time. Settlement Class Members may also submit an additional request for up to eight (8) additional hours at $20.00 per hour for documented time that is supported by Reasonable Documentation. *Id*. Settlement Class Members may also make claims for

---

[2] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement (ECF 143-1).

[3] References to "§ _" or "¶ _" refer to the corresponding sections and paragraphs of the Settlement Agreement (ECF No. 143-1). References to "Ex. A" refer to the Claims Administration Protocol attached as Exhibit A to the Settlement Agreement.

reimbursement of expenses up to $120 for the purchase of identity protection or credit monitoring services occurring after receipt of the notice of the PUA Data Security Incident and before August 30, 2020. Ex. A ¶ 1. Settlement Class Members may submit claims electronically through a settlement website or by using a hard copy claim form. Ex. A ¶ 13.

In the event that the aggregate amount of all Settlement Payments (i.e., the costs of valid claims, attorneys' fees, service awards, and administrator expenses) exceeds the total amount of the Net Settlement Fund, then each Settlement Class Member's claim shall be proportionately reduced on a pro rata basis. Ex. A ¶ 13.a. However, if the aggregate amount of all Settlement Payments does not exceed the total amount of the Net Settlement Fund, then each Settlement Class Member's claim shall be proportionately increased on a pro rata basis (in other words, in equal amounts to each claimant) for an additional sum up to $200.00 per Settlement Class Member. Ex. A ¶ 13.b.

The Settlement Agreement also recognizes that Defendant has undertaken certain Remediation and Security enhancements related to the PUA Data Security Incident. ¶ 50. Defendant determined that a small number of unemployment claimants were inadvertently able to perform searches on a Correspondence Query page that was designed to be used only by PUA staff due to a role-to-function mapping error. *Id*. Working with the State Agencies, Defendant corrected the errant mapping within an hour of learning of the issue. *Id*. This step removed the ability for a claimant to run searches on the Correspondence Query page. *Id*. Defendant also determined that a small number of claimants were incorrectly presented with the option to navigate to the Correspondence Query page because the system lost context and defaulted to assuming that the user was a staff member. *Id*. Working with the State Agencies, Defendant remediated this by configuring the system to default to an error when it loses user type context about the user type

such that claimants can no longer navigate to the Correspondence Query page. *Id*. In addition to these remediation measures, Defendant, working with the State Agencies, also reviewed the role-to-function mappings in the PUA applications to confirm users have only necessary authorizations; and conducted data minimization reviews of the PUA applications to reduce the display of personal data and minimized the display of certain personal data. ¶ 50.

The Settlement Agreement authorizes Settlement Class Counsel to file an application for an award of attorneys' fees (not to exceed one-third (33.33%) of the Settlement Fund, or $1,649,835) and Litigation Costs and Expenses (not to exceed $25,000) to be paid from the Settlement Fund. § X; ¶ 73. The Settlement Agreement also authorizes Class Counsel to petition the Court for reasonable service awards for each named plaintiff, not to exceed $2,000 each, to be paid from the Settlement Fund as approved by the Court. § IX.

## D.    **Preliminary Approval and the Fairness Process**

On August 18, 2021, Plaintiffs moved the Court to grant preliminary approval of the settlement, approve the proposed Notice Plan as the best notice practicable under the circumstances, and schedule a Final Approval Hearing. ECF 130. Plaintiffs also moved to be appointed as representatives for the Settlement Class and for their counsel to be appointed as Settlement Class Counsel. *See* Fed. R. Civ. P. 23(g).

On August 27, 2021, the Court granted preliminary approval of the proposed settlement, finding the proposed settlement terms fair, reasonable, and adequate. ECF 137. Pursuant to the approved notice plan, on or about October 15, 2021 the Settlement Administrator began disseminating Notice to the members of the Settlement Class via U.S. mail and e-mail. *See* Angeion Decl. ¶¶ 9-10. On December 3, 2021, Plaintiffs filed a Motion for Attorneys' Fees, Litigation Costs and Expenses, and Service Awards. ECF 144. In doing so, Plaintiffs respectfully asked the Court to approve their request for $1,649,835 in attorneys' fees and $21,091.31 in

expenses they incurred to achieve this Settlement. *Id.* Plaintiffs further sought Court approval of service award payments of $2,000 for each of the nine Plaintiffs, for a total award of $18,000. *Id.*

The deadline for Class Members to exclude themselves or object to the proposed settlement passed on January 3, 2022 and only 10 exclusion requests and one objection have been received.[4] The claim deadline is January 17, 2022, and approximately 19,011 claims have been received to date. Angeion Decl. ¶¶ 17-19. The Final Fairness hearing is scheduled to be held on January 31, 2022. ECF 137 ¶ 21.

## ARGUMENT

### I.  PLAINTIFFS HAVE ARTICLE III STANDING

The Second Circuit's decision from *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295 (2d Cir. 2021), provides helpful guidance for this Court's standing analysis, and validates Plaintiffs' (and Settlement Class Members') Article III standing. *McMorris* requires courts to consider the following non-exhaustive factors: "(1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud." *Id.* at 303. The *McMorris* court reiterated that "determining standing is an inherently fact-specific inquiry that requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id.* at 302 (citation and marks omitted). Generally, when a claim satisfies two of these three factors, courts have found Article III standing. *See, e.g.*, *Attias v. Carefirst, Inc.*, 865

---

[4] Pursuant to the Court's Preliminary Approval Order, Plaintiffs will respond to the objections in a separate response to be filed no later than January 24, 2022.

F.3d 620 (D.C. Cir. 2017) (standing where Social Security numbers were exposed after an intentional breach); *see also Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (standing where Social Security numbers were exposed after an intentional breach); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) (standing where there was an intentional breach and evidence of actual misuse).

Here, Plaintiffs (and Settlement Class Members) satisfy the standard articulated in *McMorris*. First, it is undisputed that the type of PII at issue in the PUA Data Security Incident—including names, Social Security numbers, and some home addresses—is the type that can be used to perpetuate identity theft and fraud. Some Plaintiffs also alleged that they provided additional information to the web-based PUA portal, including dates of birth, phone numbers, bank routing numbers, and employment information. FAC ¶¶ 7, 13, 20, 26, 33, 40–42, 50, 59, 71, 79. This sensitive and confidential PII was the same type of PII at issue in *McMorris*, which made it "more likely that" victims will be subject to future identity theft or fraud." 995 F.3d at 302 (citing *Attias*, 865 F.3d at 628); *see also Galaria*, 663 F. App'x at 388 (Social Security numbers sufficiently sensitive for Article III standing analysis); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) (same).

Second, Plaintiffs have clearly alleged that their PII has been misused. 995 F.3d at 300–01. In the operative Complaint, Plaintiffs allege that they experienced actual and attempted identity theft and fraud after the PUA Data Security Incident.  This is exactly the type of injury associated with the exposure of sensitive and confidential PII. FAC ¶¶ 15, 23, 28, 36, 44, 45, 53–54, 62–64, 65, 82. Although the *McMorris* plaintiffs could not meet this requirement, chiefly because their PII was distributed intracompany and there was no evidence that the PII was accessed by non-employees, the *McMorris* court concluded that where this factor is present, "courts have been more

likely to conclude that plaintiffs have established" Article III standing. 995 F.3d at 301–02; *see In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (allegations that customers, other than plaintiffs, experienced fraud were sufficient to establish Article III standing); *see also In re U.S. Off. Of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 58 (D.C. Cir. 2019) ("*In re OPM*") ("[A] hacker's 'intent' to use breach victims' [PII] for identity theft becomes markedly less important where, as here, several victims allege that they have *already* suffered identity theft and fraud as a result of the breaches."). Although some Plaintiffs or Settlement Class Members may not have suffered actual identity theft or fraud, "where plaintiffs have shown a substantial risk of future identity theft or fraud, 'any expenses they have reasonably incurred to mitigate that risk likewise qualify as injury in fact.'" *McMorris*, 995 F.3d at 303 (citing *In re OPM*, 928 F.3d at 59).

Finally, an analysis and application of the last *McMorris* factor, whether the PUA Data Security Incident was a targeted effort to obtain Plaintiffs' and Class Members' sensitive and confidential PII, does not undermine Plaintiffs' standing in this case. The *McMorris* court applied a more binary analysis: did the data breach expose information only to the employees of the defendant or was it taken by third parties? *See* 995 F.3d at 301. Although targeted data breaches aid in building a case for Article III standing, the presence or absence of malicious actors targeting that data is not dispositive. *Id.* at 302 (holding that the factors are non-exhaustive and the trial court should conduct a fact-intensive examination). Contrasting targeted data breach cases, the *McMorris* court utilized examples of data breaches from *Beck v. McDonald*, 848 F.3d 262, 274–75 (4th Cir. 2017) and *Reilly v. Ceridian Corp.*, 664 F.3d 38, 44 (3d Cir. 2011) to find that some data breaches lack a sufficient factual bases to confer Article III standing due to speculation.

In *Reilly*, a payroll firm experienced a data breach, resulting in the *potential* exposure of PII, such as names, addresses, Social Security numbers, dates of birth, and bank account

information. 664 F.3d at 40. The *Reilly* plaintiffs, however, did not allege that any of that PII had been misused. *Id.* That dearth of misuse distinguished the *Reilly* plaintiffs from those in *Krottner* and other data breach cases that found Article III standing based, in part, on allegations of actual misuse. *Id* (comparing plaintiffs' allegations with those in *Krottner*, where actual misuse was alleged following the intentional theft of a laptop). Plaintiffs' case here is clearly distinguishable from *Reilly*, as they have alleged actual misuse (and actual negative consequences resulting therefrom) of the PII at issue in the PUA Data Security Incident.

In *Beck*, the plaintiffs alleged a stolen laptop containing their PII was sufficient to confer Article III standing without more. 848 F.3d at 274–75. The *Beck* plaintiffs had conducted "extensive discovery" but uncovered no evidence that their PII had been accessed or misused, or that any identity theft or fraud had occurred. *Id.* at 274. The *Beck* court thus reasoned that any injury fell into the "attenuated chain of possibilities" rejected in *Clapper v. Amnesty Int'l. USA et al.*, 133 S. Ct. 1138 (2013), and affirmed dismissal of plaintiffs' case. 848 F.3d at 275, 277–78. The Fourth Circuit's subsequent holding in *Hutton v. Nat'l. Bd. Of Exam'rs in Optometry, Inc.*, highlighted the differences between *Beck* and factual allegations akin to Plaintiffs in this case. 892 F.3d 613 (4th Cir. 2018). The *Hutton* court explained that, while in *Beck* "there was no evidence that [a] thief even stole [a] laptop with the intent to steal private information . . . the [*Hutton*] Plaintiffs allege[d] that their data ha[d] been stolen, accessed, and used in a fraudulent manner." *Id.* at 622. The fact that the *Hutton* plaintiffs did not allege a thief "targeted" their PII did not preclude the court from finding that plaintiffs had suffered injury-in-fact, because they had alleged that their PII—which they had provided to defendant—was misused. *Id.* at 623.

Appreciating the detailed analysis from *McMorris* (and the cases forming the foundation for that analysis), the Court should analyze the final factor in line with *Hutton*, *Krottner*, and other

cases where alleged actual misuse assuaged any lack of purposeful targeted intent from third parties.

## II.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.  Judicial Policy Strongly Favors Settlement

The settlement "of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).[5] The Second Circuit has acknowledged "the strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009). A settlement receives a "presumption of procedural fairness 'where a class settlement [is] reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" *In re Parking Heaters, Antitrust Litig.*, No. 15MC0940DLIJO, 2019 WL 8137325, at *3 (E.D.N.Y. Aug. 15, 2019) (quoting *McReynolds*, 588 F.3d at 803).

### B.  Courts Approve Fair, Reasonable and Adequate Class Action Settlements

Rule 23(e) requires that class action settlements must be "fair, reasonable and adequate." Rule 23(e)(2) deems a settlement to be "fair, reasonable, and adequate" if:

A. the class representatives and class counsel have adequately represented the class;
B. the proposal was negotiated at arm's length;
C. the relief provided to the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method for processing class-member claims;
    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
D. the proposal treats class members equitably relative to each other.

The first two prongs address the "procedural fairness" of the settlement, while the last two prongs

---

[5] In this section, unless otherwise noted, internal citations and quotations are omitted.

address the "substantive fairness." Fed. R. Civ. P. 23 Advisory Committee Note (2018).

The Second Circuit has generally considered the nine factors listed in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), known as the *Grinnell* factors, to assist in determining whether the settlement is substantively "fair, reasonable and adequate." *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("There is significant overlap between the Rule 23(e)(2) and the *Grinnell* factors," which courts in this Circuit have acknowledged complement one another). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Grinnell*, 495 F.2d at 463.

**C.    The Proposed Settlement is Procedurally Fair**

1.    Rule 23(e)(2)(A) – Plaintiffs and Class Counsel Have Adequately Represented the Class

First, the Court determines adequacy by considering whether "the class representatives' interests are aligned with the interests of the Settlement Class" because they suffered the same injuries as the other class members. *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 WL 3995619, at *8 (S.D.N.Y. Sept. 11, 2017), *aff'd in part, appeal dismissed in part sub nom. Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019). Adequacy must be assessed independent of the settlement's fairness, and the Court must look to whether the proposed settlement class is "sufficiently cohesive to warrant adjudication." *In re Payment Card Interchange*

*Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016). This Settlement Class is sufficiently cohesive because it comprises individuals affected in the same way from the same operative set of facts, *i.e.*, those who were notified via letter or email by the State Agencies that certain personal information may have been exposed in the PUA Data Security Incident. ¶ 35. The Settlement Class Representatives (¶ 11) were affected in the same way. Class Counsel have adequately represented the best interests of the Settlement Class. Through hard-fought, months-long settlement negotiations, Class Counsel achieved significant and meaningful results for the Settlement Class. *See, e.g.*, Settlement Agreement at 2. Moreover, Class Counsel comprises a diverse group of experienced class action attorneys with long records of exceptional representation in privacy litigation. Class Counsel has continued its top-shelf representation in all aspects of this Action, and thus Class Counsel has adequately represented the Settlement Class.

2. <u>Rule 23(e)(2)(B) – the Settlement Was Negotiated at Arm's Length</u>

The 2018 Amendments to Rule 23(e) reflect the Second Circuit's long-standing rule that "a strong initial presumption of fairness attaches to [a] proposed settlement," when the "integrity of the arm's length negotiation process is preserved." *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Here, each party, represented by sophisticated and capable counsel, engaged in a bona fide hard-fought negotiation process. The Settlement Agreement states:

> Plaintiffs and Deloitte Consulting have engaged in settlement negotiations pursuant to Federal Rule of Evidence ("FRE") 408 in order to avoid the expense and uncertainties of litigation, which included (a) informal settlement discovery, including conferences and discussions with the expert consultants; (b) an exchange of mediation briefs; and (c) engagement of the Honorable Wayne R. Andersen ("Judge Andersen") of JAMS, as a mediator; and
> ***
> following extensive, arm's length settlement negotiations that culminated in an all-day mediation session on April 28, 2021 conducted by Judge Andersen, the Parties reached a settlement in principle;

14

*Id.* at 2.

According to the 2018 Amendments, "the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 Advisory Committee Note (2018).. The Court should find that the Rule 23(e)(2)(B) element is satisfied because the negotiations resulting in the settlement were overseen by a neutral, Judge Anderson, and were hard fought and conducted over months at arm's length.  Thus, the Settlement is procedurally fair.

**D.**     **The Proposed Settlement is Substantively Fair**

At the final approval stage, courts need not "decide the merits of the case or resolve unsettled legal questions," nor "foresee with absolute certainty the outcome of the case." *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 21, 2014). Instead, courts "assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

1.     Rule 23(e)(2)(C)(i) – the Relief Provided to the Class is Superior
to Continued Litigation

The Second Circuit's *Grinnell* factors are effectively codified in Rule 23(e)(2)(C)(i), which guide the analysis of a proposed settlement's substantive fairness.[6]

---

[6] Seven of the *Grinnell* factors are covered by Rule 23(e)(2)(C)(i): the complexity, expense and likely duration of the litigation (factor 1); the risks of establishing liability (factor 4); establishing damages (factor 5); the likelihood of maintaining a class action through trial (factor 6); the ability of the defendants to withstand a greater judgment (factor 7); the range of reasonableness of the settlement fund in light of the best possible recovery (factor 8); and the amount of the settlement in light of all the attendant risks of litigation (factor 9).

        (a)     Settlement Avoids Significant Costs and Risks in Establishing Liability and Damages, Maintaining the Class Through Trial and on Appeal, and the Lengthy Delays of this Process

These factors warrant neither a dispositive analysis nor a quantification of Plaintiffs' chances of success; rather, it requires balancing "the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014).

First, by their very nature, class actions create substantial uncertainty. *See Shapiro*, 2014 WL 1224666, at *10 ("It has long been recognized that complex class actions are difficult to litigate. The legal and factual issues involved are always numerous and uncertain in outcome."); *see also*, *e.g.*, *In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d. 1050, 1117-22 (C.D. Cal. 2015) (denying certification of false advertising action for failure to show predominance in discussing difficulties and nuances of using surveys and statistical analyses to isolate the price premium and establish class-wide proof of damages).

        (b)     The Recovery is Reasonable Considering the Best Possible Recovery and Attendant Risks of Litigation

Courts often consider the range of reasonableness of the recovery in light of the best possible outcome and the attendant risks of continued litigation. In determining the reasonableness of a settlement, the analysis "does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher v. Phoenix Life Ins. Co*., No. 11-CV-8405 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sep. 9, 2015) (quoting *Massiah v. MliboretroPlus Health Plan, Inc*., No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012)). Indeed, the ratio of the settlement "to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *In re LIBOR-Based Fin. Instruments*

*Antitrust Litig.,* 327 F.R.D. 483, 495 (S.D.N.Y. 2018) (approving settlements where the plaintiffs did not provide total damages estimate). This is because "some risks would be attendant upon continuing to litigate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019). Accordingly, courts analyze "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119; *see also Fleisher*, 2015 WL 10847814, at *8 (the settlement amount should not be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Accordingly, the Settlement Fund of $4,950,000.00 (*see* ¶¶ 38, 43-44) is well within the range of reasonableness, particularly in view of Defendant's offer to provide "each notified claimant 12 months of free credit monitoring through Experian Identity Works" (Settlement Agreement at 1) and other remediation measures (*see* ¶ 50). *See Grinnell*, 495 F.2d at 455 & n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 48 (E.D.N.Y. 2019) (stating that the Second Circuit did not take issue with original settlement recovery of 2.5% of the largest possible class award).[7]

---

[7] *See also*, *e.g.*, *McLaughlin v. IDT Energy*, No. 14CV4107ENVRML, 2018 WL 3642627, at *13 (E.D.N.Y. July 30, 2018) (finding $1.9 million monetary recovery reasonable despite possible recovery exceeding $900 million); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) ("The dollar amount of the settlement by itself is not decisive in the fairness determination. The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate.").

Should the Court decline to approve the Settlement Agreement, this litigation would be complex, costly, and time-consuming. For example, there would surely be a contested class certification motion, as well as a drawn out battle of the experts, as well as potential dispositive motions, trial, and appeal. Plaintiffs expect that Defendant would vigorously defend itself on the merits, at each stage of litigation and likely on appeal. In view of the foregoing, Plaintiffs submit that this Settlement is reasonable under this factor.

(c)     While Defendant May Be Able to Sustain a Larger Judgment, that Factor Alone Does Not Undermine Final Approval

In an action against a large corporation, the defendant "is likely to be able to withstand a more substantial judgment." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at \*6 (E.D.N.Y. Oct. 22, 2012). However, this alone does not undermine the reasonableness of the settlement. *See id.*; *LIBOR*, 327 F.R.D. at 494 (settlement "fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement").

2.    Rule 23(e)(2)(C)(ii) – the Claims Process Is Fair and Rational

Under this factor, courts examine the proposed "method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Note (2018). "[T]he plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). The claim process under the Settlement Agreement (*see* Ex. A) is a fair, reasonable, and adequate method equitably distributing the Settlement Fund to Settlement Class Members who make valid claims under the straight-forward process (*i.e.*, simply

18

submitting a Claim Form supported by Reasonable Documentation for reimbursement of Out-of-Pocket Losses and Attested Time). The proposed allocation also represents a reasonable method to ensure that Settlement Class Members "get as much of the available damages remedy . . . as possible and in as simple and expedient a manner as possible." 4 Rubenstein, Newberg on Class Actions § 12:15 (5th Ed.) (Westlaw 2018); *see also In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 25, 2016) ("A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."). Numerous courts have held that "a plan of allocation need not be perfect" to warrant court approval. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, File No., 05 Civ. 10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

3.  Rule 23(2)(C)(iii) – the Proposed Award of Attorneys' Fees
    Supports Final Approval

Class Counsel applied for attorneys' fees in the amount of one-third of the Settlement Fund, or $1,649,835 on December 3, 2021. ECF 145. For purposes of final approval, the requested fee is firmly within the reasonable range of fees granted from comparable class settlements.[8]

4.  Rule 23(e)(C)(iv) – Any Agreements Required to Be Identified
    Under Rule 23(e)(3)

There are no agreements to be identified pursuant to Rule 23(e)(3).

5.  Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably
    Relative to One Another

This factor includes "whether the apportionment of relief among class members takes

---

[8] *See* Memorandum of Law in Support of Motion for Attorneys' Fees, Litigation Costs, and Service Awards, which discusses in detail the reasonableness of Plaintiffs' application for attorneys' fees and costs. ECF 145.

appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed R. Civ. P. 23, 2018 Advisory Committee Note. Settlement Class Members' individual share will be apportioned based upon their economic loss; for Out-of-Pocket Losses they may submit a claim for reimbursement of up to $120.00, and for self-certified Attested Time up to four hours at $20.00 per hour, as well as an additional request for up to eight hours at $20.00 for documented time that is supported by Reasonable Documentation. Under this protocol, Settlement Class Members' claims are appropriately apportioned through a uniform process and all Settlement Class Members are treated equitably relative to one another. Moreover, the Released Claims are narrowly tailored to the factual predicate for this Action. *See* ¶ 30, 66; *see also Melito*, 923 F.3d at 95 ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."); *Wal-Mart*, 396 F.3d at 109 (approving release of non-parties where the claims released are based on the same underlying factual predicate as the claims asserted against the parties, reasoning in part that "it is hard to imagine that defendants . . . would have settled without also releasing [the non-parties] from liability; to do so would have invited relitigation of the same factual allegations"). For the reasons described above, and because cash compensation to which eligible Settlement Class Members will be entitled is significant relative to economic damages incurred, Plaintiffs respectfully request that this Court find the Settlement to be substantively fair.

### III.  <u>NOTICE ADEQUATELY APPRISED CLASS MEMBERS OF THEIR RIGHTS</u>

Due process requires "the best notice practical under the circumstances." *In re Drexel Burnham Lambert Grp., Inc*., 995 F.2d 1138, 1144 (2d. Cir. 1993). It does not impose "rigid rules," but instead imposes a "reasonableness" standard that is satisfied when notice "fairly apprise[s] the

prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. Notice must explain the general terms of the settlement, proposed attorneys' fees, and the date, time and place of the fairness hearing, in a way that would be "understood by the average class member." *Id*. at 114. As detailed below, the Notice Plan satisfies due process.

First, as the Court preliminarily found, the substance of the Notices of Settlement satisfy the requirements of Rule 23(c)(2)(B), Federal Rules of Civil Procedure. Although "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23 requirements; the settlement notice must 'fairly apprise the perspective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The Notices of Settlement (sent directly to the Settlement Class Members): define the Settlement Class; explain all Settlement Class Member's rights, the scope and impact of the Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and describe in detail the monetary relief provided by the Settlement, including the procedures for allocating and distributing the Gross Settlement Fund amongst the Settlement Class Members, Plaintiffs, Interim Class Counsel, and the Settlement Administrator. They also informed Settlement Class Members of the time and place for the Final Approval hearing, and explain how Settlement Class Members may attend or participate in the Final Approval hearing. Finally, the Notices of Settlement detail the provisions for payment of Attorneys' Fees, Costs and Service Awards, and provide contact information for Class Counsel.

Second, the Settlement Administrator employed direct notice, sending the Notices of Settlement to Settlement Class Members directly via U.S. mail, with an additional email notice sent to those Settlement Class Members for which email addresses were available. *See* Angeion

Decl. 8-14. Although some guidelines counsel that as little as a 70% reach is reasonable for the purposes of satisfying due process, *see e.g.*, Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) at 3 ("It is reasonable to reach between 70-95%"); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d Ed. 2010) at 27 (explaining the "reach" of a proposed class action notice plan is normally within a range of 70-95%), here, the Notice program reached approximately 98%, far eclipsing the 70% mark. Angeion Decl. ¶ 13.

The above demonstrates that the Notice issued pursuant to the Settlement meets the requirements of due process and the Federal Rules of Civil Procedure, supporting final approval.

### IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

At the preliminary approval stage, this Court concluded that "the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate" (*see* ECF 137 ¶ 3) and found that the required Rule 23 elements were met:

> Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) Plaintiffs and Class Counsel . . . fairly and adequately represent the Settlement Class; (d) the claims of Plaintiffs are typical of those of Settlement Class Members; (e) common issues predominate over any individual issues affecting the members of the Settlement Class; (f) Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and (g) settlement of the Action on a class-action basis is superior to other means of resolving this matter.

*Id.* ¶ 6. Now at the final approval stage, the Court's preliminary conclusions remain appropriate.

More particularly, the Settlement meets the requirements of Rule 23(a). Regarding numerosity, the Settlement Class is defined as "the 237,635 individuals . . . who were notified" about the data breach. Given that 40 individuals would satisfy numerosity, there is no question that

237,635 does as well. Regarding commonality, whether Deloitte Consulting had a duty to protect class members' data and whether Deloitte Consulting breached that duty by failing to enact reasonable security measures are questions common to the class, the resolution of which would require evaluation under a single objective standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" Regarding typicality, because each named plaintiff, like each class member, received a notice regarding the PUA Data Security Incident from the State Agencies, the same alleged conduct by Deloitte Consulting was directed at, or affected, Plaintiffs and the members of the proposed Settlement Class. Thus, "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Regarding adequacy, because (1) Plaintiffs possess the same interests as the proposed Settlement Class Members because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly inadequate security measures and the same data breach, and (2) Class Counsel are qualified, experienced, and generally able, and have adequately conducted the litigation, there is adequacy of representation. *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

The Settlement meets the requirements of Rule 23(b). Here, questions of law and fact common to class members predominate over any questions affecting only individual members. The central common questions include whether Deloitte Consulting had a duty to the class to prevent exposure of their private data and whether Deloitte Consulting took reasonable actions to prevent the PUA Data Security Incident. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227–28 (2d Cir. 2006) (citation omitted). Next, a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy. As a result of the uncertainty of the cost to each Settlement Class Member of the potential exposure of their data, the expense and burden of litigation make it virtually impossible for the Settlement Class Members to seek redress on an individual basis. By contrast, in a class action, the cost of litigation is spread across the entire Settlement Class, thereby making litigation and recovery economically viable. "Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014). Plaintiffs respectfully request that this Court finally certify the Settlement Class for the reasons set forth above and as stated in their motion for preliminary approval. *See* Mot. for Prelim. Approval 18-26, ECF 130.

## V.   <u>THE REACTION OF THE SETTLEMENT CLASS FAVORS APPROVAL</u>

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the Settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *16. The Settlement Class's initial reaction to the settlement is favorable. *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."). To date, one objector has submitted an objection. Declaration of Jeffrey S. Goldenberg In Support Of Motion For Attorneys' Fees ("Second Goldenberg Decl."), ECF 146 ¶ 41. The objection merely interposes conclusory statements with no supporting explanation, e.g., "The amount of the Settlement should be larger given the damages suffered by the Class Members." Second Goldenberg Decl. Ex. Q, ECF 146-17. However, "[C]onclusory statements are not sufficient to weigh against approval of the

Settlement as fair and reasonable." *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 168 (S.D.N.Y. 2007); *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (providing that conclusory objections are insufficient to weigh against a finding that the proposed settlement is fair and reasonable, and can be overruled without engaging in a substantive analysis). This conclusory objection also does not satisfy the requirements of the Settlement Agreement, requiring, "a statement of the specific grounds for the objection, as well as any documents supporting the objection." Settlement Agreement ¶ 54, ECF 143-1. Plaintiffs believe—and have demonstrated—that the Settlement is fair, reasonable, and adequate. The parties spent months working out the details of the Settlement Agreement, which is the product of hard-fought, arm's-length negotiations. "The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008).

Claim data supports the granting of this motion. *See* Angeion Decl. ¶ 19 (stating that 19,011 claims have already been made). The current claim rate exceeds 8%, and Class Counsel anticipates it will approach 10% by the January 17, 2022 claim deadline. This claim rate is substantially higher than the average claim rate for comparable class action settlements, demonstrating the success of the notice program as well as the positive reception by Class Members.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement should be GRANTED.

Dated: January 10, 2022                           Respectfully submitted,


                                          By: /s/ *Jeffrey S. Goldenberg*

                                          **GOLDENBERG SCHNEIDER, L.P.A.**
                                          Jeffrey S. Goldenberg (*pro hac vice*)
                                          4445 Lake Forest Drive, Suite 490
                                          Cincinnati, OH 45242
                                          Phone: (513) 345-8297
                                          Fax: (513) 345-8294
                                          jgoldenberg@gs-legal.com
                                          **Lead Class Counsel**

                                          **KAPLAN FOX & KILSHEIMER LLP**
                                          Frederic S. Fox (S.D.N.Y. Bar FF9102)
                                          850 Third Avenue
                                          New York, NY 10022
                                          Phone: (212) 687-1980
                                          Fax: (212) 687-7714
                                          ffox@kaplanfox.com
                                          **Interim Liaison Counsel**

                                          **LEVIN SEDRAN & BERMAN, LLP**
                                          Charles E. Schaffer (*pro hac vice*)
                                          510 Walnut Street – Suite 500
                                          Philadelphia, PA 19106-3697
                                          Phone: (215) 592-1500
                                          *cschaffer@lfsblaw.com*
                                          **Interim Executive Committee**

                                          **MORGAN & MORGAN**
                                          **COMPLEX LITIGATION GROUP**
                                          John A. Yanchunis (*pro hac vice*)
                                          201 North Franklin Street, 7th Floor
                                          Tampa, Florida 33602
                                          Phone: (813) 275-5272
                                          *JYanchunis@ForThePeople.com*
                                          **Interim Executive Committee**

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (NY Reg No. 5547948)
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Phone: (612) 389-0600
Fax: (612) 389-0610
*mweiner@pswlaw.com*
**Interim Executive Committee**

**CARLSON LYNCH LLP**
Katrina Carroll (*pro hac vice*)
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
*kcarroll@carlsonlynch.com*
**Interim Executive Committee**

**ZIMMERMAN LAW OFFICES, P.C.**
Thomas A. Zimmerman, Jr. (*pro hac vice*)
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Fax: (312) 440-4180
*tom@attorneyzim.com*
**Interim Executive Committee**

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (*pro hac vice*)
5101 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Phone: (202) 640-1160
*gmason@masonllp.com*
**Interim Executive Committee**

**CONSUMER PROTECTION LEGAL, LLC**
Tiffany Marko Yiatras (*pro hac vice*)
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Phone: (314) 541-0317
*tiffany@consumerprotectionlegal.com*
**Interim Executive Committee**

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (S.D.N.Y. Bar LK7190)
Matthew B. George (*pro hac vice*)
1999 Harrison Street, Suite 1560

27

Oakland, California 94612
Phone: (415) 772-4700
Fax: (415) 772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

**MORGAN & MORGAN**
Amanda Peterson (Fed. Bar No. AP1797)
90 Broad Street, Suite 1011
New York, NY 10004
Phone: (212) 738-6299
*apeterson@forthepeople.com*

**THE LYON FIRM, P.C.**
Joseph M. Lyon (*pro hac vice*)
2754 Erie Ave
Cincinnati, Ohio 45208
Phone: (513) 381-2333
*jlyon@thelyonfirm.com*

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (Fed. Bar No. 5305990)
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Phone: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*
*kaizpuru@tzlegal.com*

**KOPELOWITZ OSTROW FERGUSON**
**WEISELBERG GILBERT**
Jonathan M. Streisfeld*
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Phone: (954) 525-4100
Fax: (954) 525-4300
*ostrow@kolawyers.com*

**DANNLAW**
Javier L. Merino (Fed. Bar No. JM4291)
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: (201) 355-3440
Fax: (216) 373-0536
*notices@dannlaw.com*

28

**DANNLAW**
Marc E. Dann (*pro hac vice*)
Brian D. Flick (*pro hac vice*)
PO Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Fax: (216) 373-0536
*notices@dannlaw.com*

**FREED KANNER LONDON & MILLEN LLC**
Jonathan M. Jagher (*pro hac vice*)
Kimberly A. Justice **
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
*jjagher@fklmlaw.com*
*kjustice@fklmlaw.com*

**EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC**
Daniel A. Edelman (*pro hac vice*)
20 S. Clark Street, Suite 1500
Chicago, IL 60603
Phone: (312) 917-4502 (direct)
dedelman@edcombs.com

**MEYER WILSON CO., LPA**
Michael Joseph Boyle , Jr. (*pro hac vice*)
Matthew Ryan Wilon (*pro hac vice*)
305 W. Nationwide Blvd.
Columbus, OH 43215
Phone: 614-224-6000
Email: mboyle@meyerwilson.com
mwilson@meyerwilson.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January,  2022, I caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** with the Clerk of the Court for the Southern District of New York via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

*/s/Jeffrey S. Goldenberg*

29