IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL CULBERTSON, KATHY NEAL, KELLY ALLISON-PICKERING, JESSICA HAIMAN, ALEXANDER CABOT, BRIANA JULIUS, NICHELLE NEWLAND, BERNADETTE NOLEN, ALEXANDRIA POLICHENA, and MARK NIEDELSON, *individually and on behalf of all others similarly situated*,<br><br>        Plaintiffs,<br><br>    v.<br><br>DELOITTE CONSULTING LLP,<br><br>        Defendant. | **Case No.: 1:20-cv-3962-LJL**<br><br>JUDGE LEWIS J. LIMAN |

**PLAINTIFFS' SUPPLEMENT TO MOTION FOR FINAL APPROVAL AND RESPONSE TO SETTLEMENT CLASS MEMBER OBJECTION**

Plaintiffs Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandra Polichena, and Mark Niedelson (collectively, "Plaintiffs") respectfully submit this supplemental memorandum in support of Plaintiffs' pending Motion for Final Approval of Class Action Settlement [Doc. 150] and to respond to the objection of John J. Kelley, III, the sole objection submitted in opposition to the proposed class action settlement. Given the absence of significant exclusions or objections—the rate of exclusion is approximately 0.00465% and the rate of objection is 0.00042%[1]—the reaction of the Class weighs strongly in favor of approval of the proposed Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (holding that the district court properly concluded that 72 exclusions (0.26%) and 18 objections (0.065%) from a class of 27,883 weighed in favor of settlement); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (holding that an otherwise appropriate settlement should not be deemed unfair even in the face of opposition by 36% of the total class).

## BACKGROUND

Plaintiffs initiated this litigation alleging that Defendant Deloitte Consulting LLP ("Deloitte Consulting" or "Defendant") failed to use reasonable data security measures in designing, building, and maintaining web-based portals through which individuals could apply for unemployment benefits in connection with the Pandemic Unemployment Assistance ("PUA") Program, and that as a result personal information of applicants from Illinois, Colorado, and Ohio was exposed in a data security incident. Under the proposed Settlement, Defendant has agreed to

---

[1] Eleven valid and timely exclusions and one objection out of the 236,494 Class Members who were sent postcard notices constitute approximately 0.00465% and 0.00042%, respectively.

establish a Settlement Fund of $4.95 million that will compensate Eligible Claimants, pay costs of notice and claims administration, and pay Court-approved reasonable attorneys' fees and costs and service awards to the class representatives.

On August 27, 2021, this Court entered an order preliminarily approving the Settlement and conditionally certifying a Settlement Class. *See* ECF 137. In doing so, the Court found that the proposed settlement was "fair, reasonable, and adequate," that the proposed notice plan provided "the best notice practicable under the circumstances," and that the prerequisites for class treatment under Fed. R. Civ. P. 23 were satisfied. *Id.* ¶¶ 3, 6, 9. Thereafter, the Court-approved notice plan was executed, and Plaintiffs moved the Court to grant final approval, demonstrating that nothing had changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. *See* ECF 151. As of January 10, 2022, when Plaintiffs moved for final approval, 19,011 claims, ten exclusion requests, and one objection had been received. See Declaration of Jenny Shawver of the Settlement Administrator, Angeion Group, LLC ("Angeion Decl.") [ECF No. 152], ¶¶ 17-19.

All relevant submission deadlines have now passed and Plaintiffs are pleased to report that 22,463 claims,[2] eleven valid exclusion requests, and one objection have been received. *See* Supplemental Declaration of Jenny Shawver of the Settlement Administrator, Angeion Group, LLC ("Suppl. Angeion Decl."), ¶¶ 3-5.[3] Moreover, as discussed herein, the sole objection received provides no basis to reject the Settlement. Because the Settlement is an excellent result for the Settlement Class, particularly in view of the risks and delays involved in continued litigation and

---

[2] This represents an estimated 9.5% claims rate. This is an exceptional claims rate for a consumer class action which often have claims rates ranging from 1-3%.

[3] Two exclusions received were postmarked after the exclusion deadline and are therefore invalid. Suppl. Angeion Decl., ¶3.

the recovery per claimant, Plaintiffs respectfully request that the Court finally approve the Settlement, grant Plaintiffs' motion for attorneys' fees, expenses, and service awards, and enter a final judgment and order dismissing this case.

## ARGUMENT

The settlement "of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotes omitted). The Second Circuit has acknowledged "the strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015) (internal quotes omitted). "A certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) (citing *In re Nasdaq Market-Makers Antitrust Lit.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("In litigation involving a large class, it would be extremely unusual not to encounter objections.")). So if only a small number of objections are received, that fact strongly suggests that the settlement is adequate. *See, e.g., Marisol A. v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y.1999) ("The Court views the small number of comments from a plaintiff class of over 100,000 children as evidence of the Settlement Agreements' fairness, reasonableness, and adequacy.").

Here, of the more than 235,000 class members who were sent email and/or postcard notice, only one has submitted an objection. Suppl. Angeion Decl. ¶ 4 Exh. B ("Objection"). This low rate

3

of objection (0.00042%) provides strong evidence that the Settlement is adequate and should be approved. *See D'Amato*, 236 F.3d at 86-87; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (18 objections out of 5 million class members supports approval); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (only two objections "weighs strongly in favor of confirming the Proposed Settlement"); *In re Telik, Inc., Sec. Litig.*, 576 F.Supp.2d 570, 593 (S.D.N.Y.2008) (finding "overwhelmingly positive reaction of the Class" where, out of 54,000 class members, three opted out and one objected to settlement); *McBean v. City of New York*, 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (approving settlement where, after notice was sent to 40,352 class members, only four objected and 36 opted out of settlement); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (one objection and 16 exclusions demonstrates "strong support" for the settlement).[4] The extraordinarily high 9.5% claims rate further validates the adequacy of the settlement, its benefits and the claims process.

Moreover, the Class Notice clearly instructs anyone wishing to submit an objection to "[s]tate with *specificity* the grounds for the objection, as well as any documents supporting the objection." Notice [ECF No. 136-1] at 8 (emphasis added). Yet Mr. Kelley's objection simply asserts in a conclusory fashion without elaboration or legal support three "grounds" for the

---

[4] *See also Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56 (E.D.N.Y. 2010) (class reaction favorable where less than 1% of class objected and only seven class members opted out); *Davis v. J.P. Morgan Chase & Co.*, 827 F.Supp.2d 172, 177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (granting final approval of the settlement where 7 out of 2,025 class members objected and 2 opted out); *Bellifemine v. Sanofi–Aventis U.S. LLC*, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 23 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Wright v. Stern*, 553 F.Supp.2d 337, 344–45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness").

objection: (1) the "amount of the Settlement should be larger"; (2) the attorneys' fees are "exorbitant" and "not commensurate" with fees charged in the jurisdiction; and the Class Representatives are "being overpaid." Objection at 1. Courts have made clear that such "conclusory statements are not sufficient to weigh against approval of the Settlement as fair and reasonable." *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 168 (S.D.N.Y. 2007); *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 264 n.3 (S.D.N.Y. 2012) (objection that notice plan is "too limited" and attorneys' fees "excessive" are "conclusory and bereft of factual or legal support"). Accordingly, Mr. Kelley's objection "can be overruled without substantive analysis." *Id*.

But the supposed "grounds" for Mr. Kelley's objection also fail on the merits. Mr. Kelley first simply asserts without elaboration or discussion that the "Settlement should be larger given the damages suffered by the Class Members." Objection at 1. However, "complaining that the settlement should be 'better'... is not a valid objection." *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013) (internal quotes omitted). *See also In re Merrill Lynch & Co., Inc.*, 246 F.R.D. at 168 (rejecting objection that settlement is "unreasonably low" and "not in the investors class' interests" as "conclusory"). "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair. Indeed, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *In re Bear Stearns Companies, Inc.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) (citations and internal quotation marks omitted). The propriety of a settlement must be assessed as

5

"a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)." *Id.*[5]

Here, as explained in Plaintiffs' final approval papers, there was a very real risk of complete non-recovery, and the recovery provided by the Settlement compares favorably to other data breach settlements. The possibility "that the settlement could have been better ... does not mean the settlement presented was not fair, reasonable or adequate," because "[s]ettlement is the offspring of compromise; the question... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (citation omitted).[6]

---

[5] *See also Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("[E]ven if, as Objector Morris claims, the best possible recovery was $125 million, it would not bar approval of the settlement, given the risk."); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246–47 (E.D.N.Y. 2010) ("[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved"); *Joel A. v. Giuliani*, 218 F.3d 132, 144 (2d Cir. 2000) ("a settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair").

[6] *See also In re Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*, 296 F.R.D. 351, 365–66 (E.D. Pa. 2013) ("These objections do not sufficiently appreciate the fact that this is a *settlement*, not an award that will necessarily make all of the claimants whole for any damages incurred. Indeed, the very nature of a 'settlement' is that it represents a compromise, not full compensation for all potential damages that could be awarded in a successful lawsuit.") (emphasis in original); *Henderson*, 2013 WL 1192479, at *8-9 ("This Court's role is to determine whether the proposed relief is fair, reasonable and adequate, not whether some other relief would be more lucrative to the Class. A settlement is, after all, not full relief but an acceptable compromise.'") (citations omitted); *In re: Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, 2016 WL 772785, at *11 (N.D. Ill. Feb. 29, 2016) ("It is true that something could always be added to

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. The gravamen of the litigation is that Deloitte Consulting violated its duty to class members by failing to undertake reasonable security measures, leading to the potential exposure of their personal and highly sensitive data. The remediation measures undertaken by Defendant—i.e., notifying the Class, rectifying the errors that led to the security incident, minimizing the display of data, review of the websites, and funding one year of credit monitoring—prevented further harm. But the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to economic damages incurred. Moreover, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Although ongoing litigation may not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure of resources by both Parties and the Court. Taking into account the risks and benefits, the Settlement falls within the "range of reasonableness."

Next, Mr. Kelley calls Class Counsel's requested attorneys' fees "exorbitant" and not "commensurate" with fees charged by other attorneys' in the jurisdiction. Objection at 1. But, again, Mr. Kelley provides no support or authority for his conclusory assertion. *See In re Bear Stearns Companies, Inc. Sec.*, 909 F. Supp. 2d at 264 n.3 (rejecting "excessive" attorneys' fees objection as "conclusory and bereft of factual or legal support"). Moreover, as Plaintiffs explained in the memorandum in support of their motion for attorneys' fees [ECF No. 145], the percentage of the fund method is the appropriate method for awarding fees in this case because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re*

---

every class action settlement to make it more favorable to class members, but that is not the standard by which class action settlements should be measured.") (internal quote omitted).

7

*Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell v. Bovis Lend Lease, Inc*, 2012 WL 1320124, at *10 (opining "[the percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); S*trougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (noting the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"). And the percentage requested (33.33%) is well within the range of typically awarded by courts. *See Hernandez v. Compass One, LLC*, 2021 WL 4925561, at *4 (S.D.N.Y. Oct. 21, 2021) (Liman, J.) ("[d]istrict courts in this Circuit typically approve fee requests between 30% and 33% of the settlement").

A lodestar "cross check" confirms the reasonableness of the requested fee award. Class Counsel have submitted declarations supporting the reasonableness of their rates, and the resulting lodestar multiplier (1.29) is within or below the range commonly awarded by courts throughout the District, as well as across the country. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (noting "lodestar multiples of over 4 are awarded by this Court"); *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (describing a 4.65 lodestar multiple as "modest" and "fair and reasonable"). In contrast, Mr. Kelley offers nothing more than an unsworn and conclusory statement that Class Counsel's requested fees are "exorbitant." Objection at 1. *See In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (finding "no

8

merit" to objection from retired attorney that class counsels' requested fee of $1.25 million was unreasonable in light of each class member's "nominal recovery").

Lastly, Mr. Kelley asserts that the "Class Representatives are being overpaid." Objection at 1. But "incentive" or "service" awards are common in class actions and serve to compensate plaintiffs for their time and effort pursuing claims for the benefit of the class. *See In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013). Here, Class Counsel respectfully request modest service awards of $2,000 for each of the named Plaintiffs for their active participation in this Action. "Courts in this Circuit have approved service awards for much more than the $2,000 requested here—$10,000 to $15,000 have been awarded to class representatives in class settlements in cases similar to this one*.*" *Guippone v. BH S&B Holdings LLC*, 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016) (approving $2,000 service awards). Notably, the requested service awards equal approximately 0.36% of the Settlement Fund, and courts have approved service awards that represent a much larger percentage.[7]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement should be GRANTED.

---

[7] *See, e.g., Reyes v. Altamera Group, LLC*, 2011 WL 4599822, at *1, *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards totaling $50,000, representing approximately 16.6% of the $300,000 settlement); *Parker v. Jekyll & Hyde Ent. Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (approving service awards totaling 11% of the total recovery); *Chen v. XpresSpa at Terminal 4 JFK LLC,* 2021 WL 4487835, at *8 (E.D.N.Y. Oct. 1, 2021) (approving service awards equal to 3.7% of settlement fund).

Dated: January 24, 2022						Respectfully submitted,


							By: /s/ *Jeffrey S. Goldenberg*

							**GOLDENBERG SCHNEIDER, L.P.A.**
							Jeffrey S. Goldenberg (*pro hac vice*)
							4445 Lake Forest Drive, Suite 490
							Cincinnati, OH 45242
							Phone: (513) 345-8297
							Fax: (513) 345-8294
							jgoldenberg@gs-legal.com
							**Lead Class Counsel**

							**KAPLAN FOX & KILSHEIMER LLP**
							Frederic S. Fox (S.D.N.Y. Bar FF9102)
							850 Third Avenue
							New York, NY 10022
							Phone: (212) 687-1980
							Fax: (212) 687-7714
							ffox@kaplanfox.com
							**Interim Liaison Counsel**

							**LEVIN SEDRAN & BERMAN, LLP**
							Charles E. Schaffer (*pro hac vice*)
							510 Walnut Street – Suite 500
							Philadelphia, PA 19106-3697
							Phone: (215) 592-1500
							*cschaffer@lfsblaw.com*
							**Interim Executive Committee**

							**MORGAN & MORGAN**
							**COMPLEX LITIGATION GROUP**
							John A. Yanchunis (*pro hac vice*)
							201 North Franklin Street, 7th Floor
							Tampa, Florida 33602
							Phone: (813) 275-5272
							*JYanchunis@ForThePeople.com*
							**Interim Executive Committee**

10

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (NY Reg No. 5547948)
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Phone: (612) 389-0600
Fax: (612) 389-0610
*mweiner@pswlaw.com*
**Interim Executive Committee**

**CARLSON LYNCH LLP**
Katrina Carroll (*pro hac vice)*
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
*kcarroll@carlsonlynch.com*
**Interim Executive Committee**

**ZIMMERMAN LAW OFFICES, P.C.**
Thomas A. Zimmerman, Jr. (*pro hac vice*)
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Fax: (312) 440-4180
*tom@attorneyzim.com*
**Interim Executive Committee**

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (*pro hac vice*)
5101 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Phone: (202) 640-1160
*gmason@masonllp.com*
**Interim Executive Committee**

**CONSUMER PROTECTION LEGAL, LLC**
Tiffany Marko Yiatras (*pro hac vice*)
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Phone: (314) 541-0317
*tiffany@consumerprotectionlegal.com*
**Interim Executive Committee**

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (S.D.N.Y. Bar LK7190)
Matthew B. George (*pro hac vice*)
1999 Harrison Street, Suite 1560

Oakland, California 94612
Phone: (415) 772-4700
Fax: (415) 772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

**MORGAN & MORGAN**
Amanda Peterson (Fed. Bar No. AP1797)
90 Broad Street, Suite 1011
New York, NY 10004
Phone: (212) 738-6299
*apeterson@forthepeople.com*

**THE LYON FIRM, P.C.**
Joseph M. Lyon (*pro hac vice*)
2754 Erie Ave
Cincinnati, Ohio 45208
Phone: (513) 381-2333
*jlyon@thelyonfirm.com*

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (Fed. Bar No. 5305990)
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Phone: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*
*kaizpuru@tzlegal.com*

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
Jonathan M. Streisfeld*
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Phone: (954) 525-4100
Fax: (954) 525-4300
*ostrow@kolawyers.com*

**DANNLAW**
Javier L. Merino (Fed. Bar. No. JM4291)
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: (201) 355-3440
Fax: (216) 373-0536
*notices@dannlaw.com*

**DANNLAW**
Marc E. Dann (*pro hac vice*)
Brian D. Flick (*pro hac vice*)
PO Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Fax: (216) 373-0536
*notices@dannlaw.com*

**FREED KANNER LONDON & MILLEN LLC**
Jonathan M. Jagher (*pro hac vice*)
Kimberly A. Justice **
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
*jjagher@fklmlaw.com*
*kjustice@fklmlaw.com*

**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
Daniel A. Edelman (*pro hac vice*)
20 S. Clark Street, Suite 1500
Chicago, IL 60603
Phone: (312) 917-4502 (direct)
dedelman@edcombs.com

**MEYER WILSON CO., LPA**
Michael Joseph Boyle , Jr. (*pro hac vice*)
Matthew Ryan Wilon (*pro hac vice*)
305 W. Nationwide Blvd.
Columbus, OH 43215
Phone: 614-224-6000
Email: mboyle@meyerwilson.com
mwilson@meyerwilson.com

*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

      I hereby certify that on this 24th day of January, 2022, I caused a true and correct copy of the foregoing **PLAINTIFFS' SUPPLEMENT TO MOTION FOR FINAL APPROVAL AND RESPONSE TO SETTLEMENT CLASS MEMBER OBJECTION** with the Clerk of the Court for the Southern District of New York via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

                                            */s/Jeffrey S. Goldenberg*