IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL CULBERTSON, KATHY NEAL, KELLY ALLISON-PICKERING, JESSICA HAIMAN, ALEXANDER CABOT, BRIANA JULIUS, NICHELLE NEWLAND, BERNADETTE NOLEN, ALEXANDRIA POLICHENA, and MARK NIEDELSON, *individually and on behalf of all others similarly situated*,<br><br>          Plaintiffs,<br><br>     v.<br><br>DELOITTE CONSULTING LLP,<br><br>          Defendant. | Case No.: 1:20-cv-3962-LJL<br><br>JUDGE LEWIS J. LIMAN |

**PLAINTFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES, AND SEVICE AWARDS**

Plaintiffs Paul Culbertson, Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Briana Julius, Nichelle Newland, Bernadette Nolen, Alexandra Polichena, and Mark Niedelson (collectively, "Plaintiffs") respectfully submit this supplemental memorandum in support of Plaintiffs' pending Motion for Final Approval of Class Action Settlement [Doc. 150] and Motion for Attorneys' Fees, Litigation Costs and Expenses, and Service Awards [Doc. 144]. On January 31, 2022, the Court held a final fairness hearing during which it requested additional briefing on certain specified topics. Those topics included Class Counsel's time and expense records, the scope of the Plaintiffs' involvement in the litigation, examples of service awards in other data

1

breach cases that settled relatively early in the litigation, and how Net Settlement Funds[1] are to be paid "pro rata" to claimants. Plaintiffs respectfully submit this memorandum in response to the Court's inquiries.

## BACKGROUND

Plaintiffs initiated this litigation alleging that Defendant Deloitte Consulting LLP ("Deloitte Consulting" or "Defendant") failed to use reasonable data security measures in designing, building, and maintaining web-based portals through which individuals could apply for unemployment benefits in connection with the Pandemic Unemployment Assistance ("PUA") Program, and that as a result personal information of some applicants from Illinois, Colorado, and Ohio was exposed in a data security incident. Under the proposed Settlement, Defendant has agreed to establish a Settlement Fund of $4.95 million that will compensate Eligible Claimants, pay costs of notice and claims administration, and pay Court-approved reasonable attorneys' fees and costs and service awards to the class representatives. From that fund, Plaintiffs have requested payment of (1) $1,649,835 for attorney fees (33.33% of the $4,950,000 common fund);[2] (2) $21,091.31 for reimbursement of expenses[3]; and (3) a $2,000 service award for each Plaintiff.

---

[1] "Net Settlement Fund" is defined by the Settlement Agreement as "the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (1) valid claims made by Settlement Class Members for Out-of-Pocket Losses and Attested Time fairly traceable to the Data Security Incident; (2) Settlement Notice and Administration Costs; (3) Attorneys' Fee Award and Costs; and (4) Service Awards." Settlement Agreement, ¶20

[2] During the January 31, 2022 hearing, Class Counsel John Yanchunis discussed other data breach settlements creating common funds where the Court awarded similar percentage fee requests. Class Counsel is aware of another relatively recent data breach settlement where the court granted final approval to a settlement that created a $2,275,000 common fund and awarded 33% of the fund ($750,000) as reasonable attorneys' fees. *See In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *1 (S.D. Fla. June 11, 2021).

[3] Plaintiffs now request $20,509.34 for expense reimbursement.

On January 31, 2022, the Court held a final fairness hearing for the proposed Settlement. During the hearing, the Court requested supplemental briefing on certain topics. More specifically, the Court requested (1) a breakdown by category of Class Counsel's time spent during the litigation; (2) a breakdown of Class Counsel's expenses by category; (3) declarations from Plaintiffs attesting to the time they spent on the litigation; (4) examples of service awards in other data breach settlements that settled early; and (5) guidance regarding how the parties intend to distribute Net Settlement Funds "pro rata" to the claimants.

## ARGUMENT

I.   **Breakdown of Class Counsel's Time Spent Litigating Case**

Plaintiffs previously provided the Court with charts summarizing Class Counsel's time entries broken down by attorneys and law firms. *See generally* Doc. 146. However, during the final fairness hearing, the Court asked Class Counsel to supplement the record with a chart breaking down Class Counsel's time entries by category. Accordingly, below is a more detailed chart that allocates Class Counsels' collective time into various categories:

**Class Counsel's Collective Lodestar By Category Reflected In December 3, 2021 Filing**

| CATEGORY | TOTAL HOURS | AMOUNT |
|---|---|---|
| Investigations/Factual Research | 171.20 | $105,147.70 |
| Complaint Drafting | 127.00 | $78,570.40 |
| Consolidated Amended Complaint Drafting | 156.15 | $115,012.14 |
| Briefing | 315.60 | $208,601.60 |
| Other Pleadings | 92.40 | $66,791.60 |
| Research | 88.50 | $54,963.10 |
| Motions for Settlement Approval | 186.20 | $124,620.64 |
| Settlement/Mediation | 275.7 | $218,414.35 |
| Communication/Strategy/Case Management | 411.05 | $264,608.39 |
| Miscellaneous | 108.7 | $45,752.58 |
| **TOTAL:** | **1,932.50** | **$1,282,482.50** |

Supplemental Declaration of Jeffrey S. Goldenberg ("Suppl. Goldenberg Decl."), ¶¶4-5.

Since Class Counsel provided their original lodestar to the Court on December 3, 2021, Class Counsel have spent an additional 206.7 hours implementing this settlement and marshalling it through the final approval process, equaling an additional $130,462.20 in fees. Suppl. Goldenberg Decl., ¶8. Class Counsels' total lodestar on this litigation is now $1,412,944.70. *Id*. at ¶9. Accordingly, the requested $1,649,835 fee represents the application of a 1.17 multiplier to Class Counsels' current updated lodestar. *Id* at ¶10.

## II. Breakdown of Class Counsel's Expenses

Similarly, Class Counsel provides the following chart breaking down Class Counsel's expenses by category:

| CATEGORY | AMOUNT |
|---|---|
| Filing Fees (includes Service of Process) | $6,290.00 |
| Experts | $2,383.34 |
| Mediators | $7,500.00 |
| Photocopies (.10 per copy) | $257.00 |
| Legal Research | $4,079.00 |
| TOTAL: | $20,509.34[4] |

Suppl. Goldenberg Decl., ¶6.

## III. Declarations of Class Representatives

As requested by the Court during the final fairness hearing, Plaintiffs respectfully submit declarations from Kathy Neal, Kelly Allison-Pickering, Alexander Cabot, Paul Culbertson, Briana Julius, Nichelle Newland, Alexandra Polichena, and Mark Niedelson for the Court's consideration.[5] These declarations, filed as Exhibits B through I to the Suppl. Goldenberg Decl.,

---

[4] The $20,509.34 updated expense request is about $582 less than Class Counsel's original expense request ($21,091.31). This is because all photocopy charges have been equalized to $0.10 per copy (the lowest amount charged by the firms involved in the litigation) and some other miscellaneous expenses have been removed. Suppl. Goldenberg Decl., ¶7.

[5] Class Counsel has not been able to reach Plaintiff Bernadette Nolen to request a declaration. However, Class Counsel do not believe a declaration is necessary for Ms. Nolan to receive a

4

reflect that each of these Class Representatives have spent meaningful amounts of time – as much as 45 hours – on the litigation. Although the case settled prior to formal discovery, Plaintiffs performed many important tasks necessary for the prosecution of the case. These tasks include investigating the data breach; contacting counsel to discuss legal options; retaining counsel; reviewing, organizing and producing documents to counsel; obtaining or attempting to obtain documents possessed by third parties; answering questions from counsel and filling out vetting questionnaires; reviewing original and amended complaints for accuracy before filing; receiving case updates from counsel by telephone and email throughout the litigation, including mediation; reviewing and executing declarations; conferring with counsel regarding the terms of the proposed settlement; and reviewing and approving the Settlement Agreement.

**IV.      Examples of Service Awards in Other Data Breach Settlements**

Service awards are common in class actions and serve to compensate plaintiffs for their time and effort pursuing claims for the benefit of the class. *See In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013). Here, Class Counsel respectfully request modest service awards of $2,000 for each of the named Plaintiffs for their active participation in this action. "Courts in this Circuit have approved service awards for much more than the $2,000 requested here—$10,000 to $15,000 have been awarded to class representatives in class settlements in cases similar to this one.*" Guippone v. BH S&B Holdings LLC*, 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016) (approving $2,000 service awards). The

---

service award. During the final fairness hearing, the Court asked whether declarations were required by *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014). That case, however, does not address service awards but rather proof required in private securities cases to receive reimbursement of lost wages pursuant to 15 U.S.C. § 78u-4(a)(4). Class Counsel is not aware of a similar requirement for class representative service awards. *See, e.g., Ford v. [24]7.AI, Inc.*, No. 518-cv-02770, Doc. 139 (N.D. Cal. Jan 28, 2022) (awarding $2,000 service award to plaintiffs who did not submit declarations).

requested service awards constitute only 0.36% of the Settlement Fund, and courts have approved service awards that represent a much larger percentage.[6]

During the final fairness hearing, the Court asked for examples of service awards in other data breach cases that settled early in the litigation, before significant formal discovery was conducted or class representatives deposed. Here are several such cases:

- *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. 1:16-cv-03025, 2019 WL 3183651, at *8 (D. Md. July 15, 2019) (granting final approval to data breach settlement that was reached approximately a month after the start of discovery and awarding $2,000 service awards to each class representative: "The thirteen Settlement Class Representatives stepped forward to represent the interests of the Settlement Class and consulted with counsel in the assertion of their claims and are, therefore, entitled to modest awards to compensate them for their time and effort on behalf of the Settlement Class.").[7]

- *Atkinson v. Minted, Inc.*, No. 3:20-CV-03869-VC, 2021 WL 6028374, at *4 (N.D. Cal. Dec. 17, 2021) (granting final approval to data breach settlement reached approximately four months after suit was filed and awarding $5,000 service awards to each class representative).[8]

- *Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-CV-1115-MMA BGS, 2013 WL 3864341, at *12 (S.D. Cal. July 24, 2013) (awarding $5,000 service award in data breach case that settled at mediation approximately a month after it was removed to federal court, where plaintiff "reviewed, for factual accuracy, all major pleadings filed with the Court, provided the factual background for the complaints filed in this Action, met with counsel on matters

---

[6] *See, e.g., Reyes v. Altamera Group, LLC*, 2011 WL 4599822, at *1, *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards totaling $50,000, representing approximately 16.6% of the $300,000 settlement); *Parker v. Jekyll & Hyde Ent. Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (approving service awards totaling 11% of the total recovery); *Chen v. XpresSpa at Terminal 4 JFK LLC,* 2021 WL 4487835, at *8 (E.D.N.Y. Oct. 1, 2021) (approving service awards equal to 3.7% of settlement fund).

[7] *See also* Motion, No. 1:16-cv-03025, Doc. 47, at 35 (D. Md. April 17, 2019) (arguing $2,000 service awards justified because plaintiffs made "difficult decision to put their name on a lawsuit," "provided detailed information of the circumstances of fraud," and "remained active in the case, communicating with Counsel during subsequent phases of the case").

[8] *See also* Motion, No. 3:20-cv-03869, Doc. 57, at 21 (N.D. Cal. July 16, 2021) (arguing $5,000 service awards justified because plaintiffs "accepted their responsibilities as class representatives," "gave their time on behalf of the class," provided information and documentation to counsel, and prepared for depositions that were never taken).

6

such as progress of the case and settlement, [and] review[ed] documents, among other things." (cleaned up)).[9]

- *Ford v. [24]7.AI, Inc.*, No. 518-cv-02770, Doc. 139 (N.D. Cal. Jan 28, 2022) (granting final approval to data breach settlement reached while motion to dismiss was pending and awarding $2,000 service awards to plaintiffs who were not deposed or subject to significant written discovery).[10]

- *Abdelmessih v. Five Below*, No. 2:19-cv-01487, Doc. 43 (E.D. Pa. Nov. 24, 2020) (awarding $1,500 service award in data breach case where the parties began settlement negotiations just days after filing of complaint and no discovery was served).[11]

- *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *1 (E.D. Pa. Sept. 24, 2019) (granting final approval to data breach settlement and awarding $1,000 service awards where the parties began settlement negotiations approximately a month after suit was filed and no discovery was served).[12]

To be sure, service awards tend to be higher in cases where the plaintiffs have been deposed or otherwise subjected to burdensome discovery obligations:

- *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *43 (N.D. Cal. July 22, 2020) (granting final approval to data breach settlement and awarding service awards in the amount of: (1) $7,500 for class representatives who were both deposed and whose devices were forensically imaged; (2) $5,000 for the class representatives who were only either deposed or whose devices were forensically imaged;

---

[9] *See also* Declaration, No. 3:12-cv-01115, Doc. 29-7, at 2-3 (S.D. Cal. June 10, 2013) (attesting that plaintiff spent approximately 30 hours retaining counsel, gathering records, reviewing the pleadings, meeting and communicating with counsel, and reviewing the settlement).

[10] *See also* Motion, No. 5:18-cv-02770, Doc. 134 (N.D. Cal. Oct. 18, 2021) ("Settlement Class Representatives lent their names to this case and thereby subjected themselves to public attention, including being forever linked to the litigation in any internet searches using their names, and publicizing the fact that their PII and PCD information had been stolen, bolstering any credibility that a nefarious actor might seek to gain by selling this information or using it for ill-gotten gains. In addition, each of them participated in numerous conferences with their attorneys, reviewed and authorized the filing of the class action complaints in this action, produced relevant documents and information to Class Counsel, and evaluated and supported the proposed settlement").

[11] *See also* Motion, No. 2:19-cv-01487, Doc. 35, at 23 (E.D. Pa. Aug. 21, 2020) (arguing that "the Class Representative in this case deserves this modest award for the substantial amount of benefits she helped Class Counsel achieve for other Class Members.").

[12] *See also* Motion, No. 2:18-cv-00274, Doc. 32-1, at 27 (E.D. Pa. June 24, 2019) (arguing that "the class representatives in this case deserve this modest award for the substantial amount of benefits they helped Class Counsel achieve for other Class Members").

and (3) $2,500 for the class representatives who participated in the instant case without being deposed or subjected to forensic imaging).[13]

- *First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506, Doc. 191 (W.D. Pa. Nov. 6, 2019) (granting final approval to data breach settlement and awarding service awards in the amount of (1) $7,500 to plaintiffs who were deposed; and (2) $2,500 to plaintiffs who were not).

But that is not to suggest that plaintiffs must participate in formal discovery to be entitled to a reasonable service award:

- *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (reducing requested service award from $7,500 to $5,000 for plaintiff who joined data breach litigation late, was not subject to written discovery, was not deposed, and did not participate in settlement conference).

V.   **Distribution of Net Settlement Funds**

Class Counsel estimate that at least $850,000 of the Settlement Fund will remain after payment of all valid claims, fees and expenses, service awards, and notice and administrative expenses. The Settlement Agreement provides that any Net Settlement Funds are to be paid "pro-rata" to valid claimants. During the final fairness hearing, the Court requested guidance as to whether it was appropriate to simply pay each claimant the same supplemental amount regardless of their original claim value (e.g., an additional $40 added to each valid approved claim) or whether each claimant's supplemental payment should be in relation to their original claim value (e.g., a claimant with an original claim valued at $160 should receive twice as much in their supplemental payment than a claimant with an original claim valued at $80).

Class Counsel has conferred with the Settlement Administrator, Angeion Group, regarding how other settlements have handled the issue, and Angein Group has indicated that Net Settlement

---

[13] *Cf. In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *30 (N.D. Cal. Aug. 17, 2018) (awarding service awards in the amount of: (1) $7,500 for class representatives who had their computers forensically examined; and (2) $5,000 for those who did not but otherwise engaged in discovery).

Funds can be distributed either way and that it is simply a matter of the parties' agreement. *See* Supplemental Declaration of Andre Mack of Angeion Group, LLC: Distribution of Remainder Funds, ¶¶4-5, attached as Exhibit A to Suppl. Goldenberg Decl. Some settlement agreements are drafted to distribute excess funds proportionally, while others are drafted to distribute excess funds equally. This is consistent with Class Counsel's experience as well. Suppl. Goldenberg Decl., ¶11.

Here, the parties have agreed to a Claims Administration Protocol, which is incorporated into the Settlement Agreement. *See* Exhibit A to Settlement Agreement [Doc. 143-1]. It in relevant part provides: "In the event that the aggregate amount of all Settlement Payments does not exceed the Net Settlement Fund, then each Settlement Class Member's payment shall be proportionately increased on a pro rata basis (**in other words, in equal amounts to each claimant)** for an additional sum up to $200.00 per Settlement Class Member." *Id*. at 21 (emphasis added). The Notice sent to the Class Members contains similar language. *See* Notice at 1 ("Should funds remain in the Settlement Fund after the amounts claimed, attorneys' fees, costs, service awards, and administration costs, then each Settlement Class Member's valid claim shall be proportionately increased on a pro rata basis (in other words, in equal amounts to each claimant) for an additional sum up to $200.00 per Settlement Class Member.").

Because the parties have agreed to distribute Net Settlement Funds equally to all claimants, and because the Class Members presumably relied on the language of the Settlement Agreement and Notice when deciding to submit claims, Plaintiffs respectfully suggest that the Net Settlement Funds should be distributed equally among the claimants as set forth in Settlement documents.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Litigation Costs and Expenses, and Service Awards should be granted.

Dated: February 10, 2022				Respectfully submitted,


					By: /s/ *Jeffrey S. Goldenberg*

					**GOLDENBERG SCHNEIDER, L.P.A.**
					Jeffrey S. Goldenberg (*pro hac vice*)
					4445 Lake Forest Drive, Suite 490
					Cincinnati, OH 45242
					Phone: (513) 345-8297
					Fax: (513) 345-8294
					jgoldenberg@gs-legal.com
					**Lead Class Counsel**

					**KAPLAN FOX & KILSHEIMER LLP**
					Frederic S. Fox (S.D.N.Y. Bar FF9102)
					850 Third Avenue
					New York, NY 10022
					Phone: (212) 687-1980
					Fax: (212) 687-7714
					ffox@kaplanfox.com
					**Interim Liaison Counsel**

					**LEVIN SEDRAN & BERMAN, LLP**
					Charles E. Schaffer (*pro hac vice*)
					510 Walnut Street – Suite 500
					Philadelphia, PA 19106-3697
					Phone: (215) 592-1500
					*cschaffer@lfsblaw.com*
					**Interim Executive Committee**

					**MORGAN & MORGAN**
					**COMPLEX LITIGATION GROUP**
					John A. Yanchunis (*pro hac vice*)
					201 North Franklin Street, 7th Floor
					Tampa, Florida 33602
					Phone: (813) 275-5272
					*JYanchunis@ForThePeople.com*
					**Interim Executive Committee**

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (NY Reg No. 5547948)
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Phone: (612) 389-0600
Fax: (612) 389-0610
*mweiner@pswlaw.com*
**Interim Executive Committee**

**CARLSON LYNCH LLP**
Katrina Carroll (*pro hac vice)*
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
*kcarroll@carlsonlynch.com*
**Interim Executive Committee**

**ZIMMERMAN LAW OFFICES, P.C.**
Thomas A. Zimmerman, Jr. (*pro hac vice*)
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Fax: (312) 440-4180
*tom@attorneyzim.com*
**Interim Executive Committee**

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (*pro hac vice*)
5101 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Phone: (202) 640-1160
*gmason@masonllp.com*
**Interim Executive Committee**

**CONSUMER PROTECTION LEGAL, LLC**
Tiffany Marko Yiatras (*pro hac vice*)
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Phone: (314) 541-0317
*tiffany@consumerprotectionlegal.com*
**Interim Executive Committee**

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (S.D.N.Y. Bar LK7190)
Matthew B. George (*pro hac vice*)
1999 Harrison Street, Suite 1560

Oakland, California 94612
Phone: (415) 772-4700
Fax: (415) 772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

**MORGAN & MORGAN**
Amanda Peterson (Fed. Bar No. AP1797)
90 Broad Street, Suite 1011
New York, NY 10004
Phone: (212) 738-6299
*apeterson@forthepeople.com*

**THE LYON FIRM, P.C.**
Joseph M. Lyon (*pro hac vice*)
2754 Erie Ave
Cincinnati, Ohio 45208
Phone: (513) 381-2333
*jlyon@thelyonfirm.com*

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (Fed. Bar No. 5305990)
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Phone: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*
*kaizpuru@tzlegal.com*

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
Jonathan M. Streisfeld*
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Phone: (954) 525-4100
Fax: (954) 525-4300
*ostrow@kolawyers.com*

**DANNLAW**
Javier L. Merino (Fed. Bar. No. JM4291)
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: (201) 355-3440
Fax: (216) 373-0536
*notices@dannlaw.com*

**DANNLAW**
Marc E. Dann (*pro hac vice*)
Brian D. Flick (*pro hac vice*)
PO Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Fax: (216) 373-0536
*notices@dannlaw.com*

**FREED KANNER LONDON & MILLEN LLC**
Jonathan M. Jagher (*pro hac vice*)
Kimberly A. Justice \*\*
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
*jjagher@fklmlaw.com*
*kjustice@fklmlaw.com*

**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
Daniel A. Edelman (*pro hac vice*)
20 S. Clark Street, Suite 1500
Chicago, IL 60603
Phone: (312) 917-4502 (direct)
dedelman@edcombs.com

**MEYER WILSON CO., LPA**
Michael Joseph Boyle , Jr. (*pro hac vice*)
Matthew Ryan Wilon (*pro hac vice*)
305 W. Nationwide Blvd.
Columbus, OH 43215
Phone: 614-224-6000
Email: mboyle@meyerwilson.com
mwilson@meyerwilson.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of February, 2022, I caused a true and correct copy of the foregoing with the Clerk of the Court for the Southern District of New York via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

                                            */s/Jeffrey S. Goldenberg*